1  Gregory A. Vega, Esq. (CABN 141477)
2  Ricardo Arias, Esq. (CABN 321534)
   Philip B. Adams, Esq. (CABN 317948)
3  SELTZER CAPLAN McMAHON VITEK
   A Law Corporation
4  750 B Street, Suite 2100
5  San Diego, California  92101-8177
   Telephone: (619) 685-3003
6  Facsimile: (619) 685-3100
7  E-Mail:     vega@scmv.com; padams@scmv.com;
               arias@scmv.com
8
9  Attorneys for Defendant DUNCAN D. HUNTER

10          **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12              (Hon. Thomas J. Whelan)

13  UNITED STATES OF AMERICA,          Case No.  18-CR-3677-W

14                  Plaintiff,          **MEMORANDUM OF POINTS AND**
15                                      **AUTHORITIES IN SUPPORT OF**
                                        **MOTION TO DISMISS INDICTMENT**
16          v.                          **FOR VIOLATION OF SPEECH OR**
                                        **DEBATE CLAUSE OF THE**
17  DUNCAN D. HUNTER,                   **CONSTITUTION**

18                  Defendant.          Date:        July 1, 2019
19                                      Time:        10:00 a.m.
                                        Courtroom:   3C
20                                      Judge:       Hon. Thomas J. Whelan

21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................ 6

II.  STATEMENT OF FACTS ...................................................... 7

III. ARGUMENT ..................................................................... 9

     A.   The Speech or Debate Clause Guarantees Legislative Branch
          Independence ............................................................. 9

          1.   Scope of the Clause ............................................. 11

          2.   Application of the Clause ....................................... 12

     B.   The Speech or Debate Clause Privilege Applies Equally to
          Congressional Staff ................................................... 15

     C.   The Speech or Debate Clause Provides for Both Immunity from Suit
          and a Non-Disclosure Privilege .................................... 16

     D.   The Speech or Debate Clause Protects Against the Presentation of
          Legislative act evidence to the grand jury in order to obtain an
          Indictment ............................................................. 18

     E.   Courts Must Look Beyond the Indictment to Determine if Speech or
          Debate Clause is Implicated ........................................ 20

IV.  CONCLUSION ................................................................ 21

2

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barr v. Matteo*
   360 U.S. 564 (1959).................................................................... 13

*Brown & Williamson Tobacco Corp. v. Williams*
   62 F.3d 408 (D.C. Cir. 1995)............................... 12, 13, 14, 15, 17

*Consumer Union of U.S., Inc. v. Periodical Correspondents Ass'n*
   515 F.2d 1341 (D.C. Cir. 1975) .................................................. 12

*Dennis v. Sparks*
   449 U.S. 24 (1980)...................................................................... 13

*Doe v. McMillan*
   412 U.S. 306 (1973).................................................................... 11

*Eastland v. US* Servicemen's *Fund*
   421 U.S. 491 (1975) ................................. 10, 11, 12, 13, 14, 21

*Fremont Energy Corp. v. Seattle Post Intelligencer*
   688 F.2d 1285 (9th Cir. 1982) ................................................... 15

*Gravel v. US*
   408 U.S. 606 (1972)................................... 10, 11, 12, 13, 14, 15, 18

*Hearst v. Black*
   87 F.2d 68 (D.C. Cir. 1936) ....................................................... 13

*Helstoski v. Meanor*
   442 U.S. 500 (1979).................................................................... 11

*Hill v. Colorado*
   530 U.S. 703 (2000).................................................................... 21

*In re Grand Jury Subpoenas*
   571 F.3d 1200 (D.C. Cir. 2009) ...................................... 14, 15, 16

*In re Winship*
   397 U.S. 358 (1970).................................................................... 21

*Johnson v. Louisiana*
   406 U.S. 380 (1972).................................................................... 21

*Kilbourn  v. Thompson*
   103 U.S. 168 (1881).............................................................. 11, 18

*Maddox v. Williams*
   855 F. Supp. 406 (D.D.C. 1994)................................................ 13

*McAdams v. McSurely*

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

3

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO       18-CR-3677-W
DISMISS INDICTMENT**

438 U.S. 189 (1978) ........................................................................ 12

*McGrain v. Daugherty*
273 U.S. 135 (1927) ........................................................................ 12

*McSurely v. McClellan*
553 F.2d 1277 (D.C. Cir. 1976) ...................................... 11, 12, 13, 16

*Miller v. Transamerican Press, Inc.*
709 F.2d 524 (9th Cir.1983) ..................................................... 13, 15

*MINPECO, S.A. v. Conticommodity Serv., Inc.*
844 F.2d 856 (D.C. Cir. 1988) .............................................. 13, 15, 17

*Pentagen Technologies Int 'l, Ltd. v. Committee on Appropriations*
20 F. Supp.2d 41, 43-44 (D.D.C. 1998), aff'd, 194 F.3d 174 (D.C. Cir.
1999) ............................................................................................... 13

*Powell v. McCormack*
295 U.S. 486 (1969) ........................................................................ 19

*S.E.C. v. Committee on Ways and Means*
161 F. Supp. 3d 199 (S.D.N.Y. 2015) ............................................. 11

*Tavoulareas  v. Piro*
527 F. Supp. 676  (D.D.C. 1981) ..................................................... 12

*U.S. v. Brewster*
408 U.S. 501 (1972) ........................................................................ 21

*U.S. v. Helstoski*
442 U.S. 477 (1979) .................................................................. 13, 21

*U.S. v. Peoples Temple of the Disciples of Christ*
515 F. Supp. 246 (D.D.C. 1981) ................................................ 13, 18

*United States v. Biaggi*
853 F.2d 89 (2d Cir. 1988) .............................................................. 16

*United States v. Dowdy*
479 F.2d 213 (4th Cir. 1973) ........................................................... 20

*United States v. Durenberger*
No. 3-93-65, 1993 WL 738477, at *5 (D. Minn. Dec. 3, 1993) ............ 19

*United States v. Eilberg*
465 F. Supp. 1080 (E.D. PA. 1979) ................................................ 12

*United States v. Helstoski*
635 F.2d 200 (3d Cir. 1980) ........................................................... 19

*United States v. Johnson*
383 U.S. 169 (1966) ............................................................ 10, 11, 18

*United States v. Myers*

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

4

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO**        **18-CR-3677-W**
**DISMISS INDICTMENT**

635 F.2d 932 (2nd Cir. 1980) .......................................................... 10, 11

*United States v. People's Temple*
515 F. Supp. 246 (D.D.C.1981)......................................................... 17

*United States v. Rayburn House Office Building, Room 2113, Washington, DC*
20515 497 F.3d 654 (2007)...................................................... 9, 14, 15, 17

*United States v. Renzi*
651 F.3d 1012 (9th Cir. 2011) .................................................. 17, 19, 20

*United States v. Rostenkowski*
59 F.3d 1291 (D.C. Cir. 1995)................................................... 18, 19, 20

*United States v. Swindall*
971 F.2d 1531 (11th Cir. 1992) ...................................................... 19, 20

*United Trans. Union v. Springfield Terminal Ry. Co.*
113 Lab. Cas. ,r 11,643 (D. Maine 1989) ............................................... 12

*Webster v. Sun Co., Inc.*
561 F. Supp. 1184 (D.D.C. 1983).................................................... 12

*Wilkinson v. O'Neil*
1983 WL 30230 (D. Guam App. Div. ............................................... 12

*Youngblood v. DeWeese*
352 F.3d 836 (3rd Cir. 2003) ...................................................... 10

**Other Authorities**

18 U.S.C. section 371................................................................. 7

**Treatises**

Federal Rule of Criminal Procedure 12(b)(3)(A)(v) ..................................... 9

**Regulations**

United States Constitution, Article I, section 6 clause 1 ............................... 10

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**          **18-CR-3677-W**

COMES NOW Defendant DUNCAN D. HUNTER, by and through his attorneys, Gregory A. Vega, Ricardo Arias and Philip B. Adams and respectfully moves the Court to Dismiss the Indictment for Violation of  the Speech or Debate Clause of the Constitution.

## I.   <u>INTRODUCTION</u>

This case concerns the Speech or Debate Clause of the United States Constitution: "for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other place."  U.S. Const., art. I, § 6, cl. 1.  This Clause – which applies to all activities within the "legislative sphere" and, among other things, privileges Members of Congress absolutely from having to disclose legislative materials – is a fundamental pillar of Congress's independence and critically important relationship with the other branches of the government.  The issue arises as a result of the Government's search and seizure of paper and electronic records from the district congressional office of California Congressman Duncan D. Hunter ("Congressman Hunter") on February 23, 2017 without the Congressman having the opportunity to segregate privileged material.  That same day, grand jury subpoenas were also issued in this matter, including one on Congressman Hunter's El Cajon congressional office and to individual members of his congressional staff.  The grand jury subpoena to the Congressional Office of Duncan Hunter demanded production of the report from the Office of Congressional Ethics ("OCE") and its related exhibits. The indictment must be dismissed because the Speech or Debate Clause protects the Member and his staff from producing legislative act materials or being questioned in any other place. In the discovery produced to date, members of Hunter's Congressional staff were specifically questioned about the Congressman's response to the OCE report and other legislative acts.

The Speech or Debate Clause is a fundamental component of our constitutional system of Separation of Powers. The Clause does not immunize Members of Congress from the consequences of criminal misconduct or otherwise place them above the law.

SELTZER CAPLAN MCMAHON VITEK
750 B Street, Suite 2100
San Diego, California 92101-8177

6

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO         18-CR-3677-W DISMISS INDICTMENT**

But as the Supreme Court has held, it does protect them from prosecution for their legislative activities and from having to disclose legislative records, absent their consent.

## II.   STATEMENT OF FACTS

Congressman Hunter was indicted on August 21, 2018, in a 60 count Indictment with offenses related to violating rules of the House of Representatives ("House") and the Federal Election Commission ("FEC") on the personal use of campaign funds and related offenses involving attempts to conceal the personal use in FEC filings.  The indictment alleges the personal use of campaign funds over the course of a six year period (2010-2016).  Count 1 charges Hunter and his wife, Margaret Hunter[1] with conspiracy in violation of 18 U.S.C. § 371; Counts 2-44 charge wire fraud in violation of 18 U.S.C. §§ 1343 and 2; Counts 45-57 charge false filings with the FEC in violation of 18 U.S.C. §§ 1519 and 2; and Counts 58-60 charge Prohibited Use of Campaign Contributions in violation of 52 U.S.C. §§ 30109(b) and 30114(b)(1) and 18 U.S.C. § 2.

In 2016, Congressman Hunter became aware of expenditure issues confronting his campaign committee, Duncan D. Hunter for Congress ("Campaign").  He initially reimbursed the Campaign $17,310.92 and, through counsel, commenced an independent financial review of the Campaign.  Out of an abundance of caution, he took corrective action in consultation with the Federal Election Commission ("FEC") and, ultimately, the Hunters personally repaid the Campaign an additional $48,650.98.   As the Campaign's Treasurer reported to the FEC:

> Duncan D. Hunter for Congress has undergone an independent financial review of all expenditures for the 2015-2016 cycle and identified unauthorized expenditures that have been deemed personal in nature. In addition, out of an abundance of caution, the campaign has deemed any expense without adequate support as necessary for reimbursement. As a result, Congressman Hunter has personally paid the campaign $48,650.98

---

[1] Margaret Hunter pleaded  guilty to one Count of Conspiracy (18 U.S.C. § 371) on June 13, 2019.

SELTZER CAPLAN MCMAHON VITEK
750 B Street, Suite 2100
San Diego, California 92101-8177

7

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**          **18-CR-3677-W**

for these items inadvertently charged on the campaign card. The campaign has also implemented structural changes to ensure any errors will not be repeated.

Under advice from the Reports Analysis Division, the Committee will report that payment on November 4, 2016 as a Line 15 Other Receipt.[2]

To fund the repayment, Congressman Hunter sold his home.

Contemporaneous with the FEC dialogue, the Office of Congressional Ethics ("OCE") initiated a review of the Campaign following a complaint from the watchdog group Citizens for Responsibility and Ethics in Washington ("CREW"). The OCE was created by the U.S. House of Representatives ("U.S. House") in March of 2008 as an "independent, non-partisan office governed by a Board comprised of private citizens."[3] While described as "independent," the OCE is still a committee of the U.S. House:  it receives its entire budget from the U.S. House, and all of the staff are U.S. House employees.  Congressman Hunter declined to provide any information to the OCE during its inquiry in light of the then ongoing conversations and consultations with the FEC, and informed the House Ethics Committee that he stood ready to cooperate with it.

Through materials provided in discovery, it appears that the government began its criminal investigation in early 2016, shortly after Congressman Hunter became the first sitting member of Congress to endorse the Presidential candidacy of Donald J. Trump on February 24, 2016.  As the investigation progressed, the government obtained and executed search warrants, issued grand jury subpoenas, conducted interviews, took testimony, and engaged in covert investigative techniques.

On February 23, 2017, FBI Agents executed search warrants at a number of locations, including Congressman Hunter's Congressional Offices located at 1611 N.

---

[2] *See* Misc. Report to FEC, Nov. 16, 2016 (http://docquery.fec.gov/cgi-bin/forms/C00433524/1126269/)(visited on June 19, 2019).
[3] *See* https://oce.house.gov/about/ (visited on June 19, 2019).

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**                    **18-CR-3677-W**

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

1  Magnolia Avenue, Suite 310, El Cajon, CA. 92020.[4]  The search warrant authorized the

2  seizure of:

3       1.     All computer systems, software, peripherals, and data storage devices;

4       2.     All documents, including all temporary and permanent electronic files and records, relating to the commission of the federal crimes listed above;

5

6       3.     User-attribution data to include data reflecting who used or controlled the computer or electronic storage device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, including registry information, computer logs, user profiles, and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user created documents, including metadata.

7

8

9

10       Joseph Kasper, Michael Harrison, Thomas Marquez, and Ricardo Terrazas,

11  members of Hunter's congressional staff were interviewed by the agents executing the

12  search warrant.   The government also took and imaged their cell phones.   The

13  government also interviewed and obtained evidence from family members of Hunter,

14  friends of Hunter, and supporters of Hunter.   These individuals and members of

15  Hunter's congressional staff were also subpoenaed to appear before the Grand Jury

16  (Staff subpoenas).   The evidence obtained from the Congressional office of Hunter

17  pursuant to the grand jury subpoena included the OCE Report and exhibits and also,

18  testimony from congressional staff regarding the response to the OCE Report.

19  ### III.   ARGUMENT

20  ### A.   The Speech or Debate Clause Guarantees Legislative Branch Independence

21       Federal Rule of Criminal Procedure 12(b)(3)(A)(v) permits a defendant to move

22  to dismiss an indictment based on "an error in the grand jury proceeding."   The grand

23  ───────────────────

24  [4] Prior and subsequent to the FBI's search of Congressman Bill Jefferson's

25  congressional office in 2006, "it appears that no warrant to search a congressional office has ever been sought or obtained before."   Morton Rosenberg et al, Congressional

26  Research Service Memorandum, Legal and Constitutional Issues Raised by Executive

27  Branch Searches of Legislative Offices (June 30, 2006) at 3. That search was rendered

28  unconstitutional. *United States v. Rayburn House Office Building, Room 2113, Washington, DC  20515* (497 F.3d 654) (2007).

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**          **18-CR-3677-W**

jury subpoenaed and was presumably presented with the OCE Report and exhibits obtained from the Congressional Offices of Congressman Hunter in violation of the Speech or Debate Clause.

The Speech or Debate Clause (Art. I, §6 cl.1) provides: "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." The Member is thus protected for his legislative acts. The purpose of the Clause is:

> [T]o insure that the legislative function the Constitution allocates to Congress may be performed independently.

> [T]he "central role" of the Clause is to "prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary...."

*Eastland v. US*  Servicemen's *Fund*, 421 U.S. 491, 502 (1975) (quoting *Gravel v. US*, 408 U.S. 606, 617 (1972)). " In the American governmental structure the clause serves the additional function of reinforcing the separation of powers so deliberately established by the Founders." *United States v. Johnson*, 383 U.S. 169, 178 (1966). *See also Youngblood v. DeWeese*, 352 F.3d 836, 839 (3rd Cir. 2003) ("Ensuring a strong and independent legislative branch was essential to the framers' notion of separation of powers .... The Speech or Debate Clause is one manifestation of this practical security for protecting the independence of the legislative branch."); *United States v. Myers*, 635 F.2d 932, 935-36 (2nd Cir. 1980).

The Speech or Debate Clause protects more than just words spoken on the floor of the House however, it extends to all matters that are "an integral part of the deliberative and communicative processes by which Members participate in their constitutional duties. *Gravel v. United States*, 408 U.S. 606, 625 (1972) ("The Speech or Debate Clause was designed to assure a co-equal branch of government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch. It thus protects Members against prosecutions that directly impinge upon or threaten the legislative process.")  The Speech or Debate Clause protections extend to

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

10

committee investigations; legislative fact finding; and other matters within the legislative purview. *S.E.C. v. Committee on Ways and Means*, 161 F. Supp. 3d 199, 236 (S.D.N.Y. 2015) (The protections of the Speech or Debate Clause also extend to Congressional information gathering activities …because [a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change); See also, *McSurely v. McClellan*, 553 F.2d 1277, 1286-87 (D.C. Cir. 1976). Legislative acts are defined as those which are "an integral part of the deliberative and communicative processes by which Members participate in committee or House proceedings with respect to the consideration and passage or rejection of proposed legislation *or with respect to other matters which the Constitution places within the jurisdiction of either House. Gravel*, 408 U.S. at 625 (emphasis added)

When the Speech or Debate Clause privilege applies, the protection is absolute. Eastland, 421 U.S. at 509. The Speech or Debate Clause … serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressman. *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980)

Because "the guarantees of th[e] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor,* 442 U.S. 500, 506 (1979). Accordingly, the Supreme Court has"[w]ithout exception ... read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. See also *Doe v. McMillan,* 412 U.S. 306, 311 (1973); *Gravel*, 408 U.S. at 624; *Johnson*, 383 U.S. at 180; *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881).

### 1.    Scope of the Clause.

The courts, broadly construing the concept of legislative activity, "have plainly not taken a literalistic approach in applying the privilege.... Committee reports,

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

11

resolutions, and the act of voting are equally covered," *Gravel*, 408 U.S. at 617; as are committee investigations and hearings, *Eastland*, 421 U.S. 491; as is information gathering in furtherance of legislative responsibilities because "'[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'"   *Id.* at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)).

This includes informal information gathering. *See, e.g., Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) (documents delivered to committee voluntarily by private citizen protected); *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc), cert. granted, 434 U.S. 888 (1977), cert. dismissed sub nom. *McAdams v. McSurely*, 438 U.S. 189 (1978).[5]

The scope of the Speech or Debate Clause also includes communications by a Member in furtherance of the House's constitutional prerogative to make and enforce its own Rules. *Consumer Union of U.S., Inc. v. Periodical Correspondents Ass'n*, 515 F.2d 1341, 1351(D.C. Cir. 1975). The OCE Report and a Members response would clearly come within the scope of the privilege. See *United States v. Eilberg*, 465 F. Supp. 1080, 1082-1083 (E.D. PA. 1979).

### 2. Application of the Clause.

In practice, the Speech or Debate privilege has three broad components. First, the Clause provides immunity for all actions "within the 'legislative sphere,'… even though the [ ] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *McMillan*, 412 U.S. at 312-13 (quoting *Gravel*, 408 U.S. at 624-25). Second, the Clause bars the prosecutor in a criminal case - and parties to a civil suit- against a Member of Congress from

---

[5] *See also United Trans. Union v. Springfield Terminal Ry. Co.,* 113 Lab. Cas. ,r 11,643 (D. Maine 1989); *Webster v. Sun Co., Inc.,* 561 F. Supp. 1184, 1189-90 (D.D.C. 1983), vacated and remanded on other grounds, 731 F.2d 1 (D.C. Cir. 1984); *Wilkinson v. O'Neil*, 1983 WL 30230 (D. Guam App. Div. 1983); *Tavoulareas  v. Piro*, 527 F. Supp. 676, 680  (D.D.C. 1981).

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**          **18-CR-3677-W**

advancing their case by "[r]evealing information as to a legislative act." *U.S. v. Helstoski*, 442 U.S. 477,490 (1979).   Third, the Clause provides a non-disclosure privilege. *Gravel*, 408 U.S. 606. This aspect of the privilege protects Members against having to testify as to privileged matters and having to produce privileged documents.[6] The Supreme Court draws no distinctions between these three components.  Rather, it has stated unequivocally that when the Speech or Debate applies, it is "absolute." *Eastland,* 421 U.S. at 501, 503, 507, 509-10, 510 n.16; *Gravel,* 408 U.S. at 623 n.14; *Barr v. Matteo*, 360 U.S. 564, 569 (1959).

In *Brown & Williamson*, a tobacco company subpoenaed from two House committee Members documents that apparently had been taken from the company's law firm. The company had no apparent interest in "testimonial inferences." Instead, the company wanted the documents for use in a tort case against the individual who allegedly took the documents, and to assist it in responding to a committee investigation of tobacco health and safety issues.  *Maddox v. Williams*, 855 F. Supp. 406 (D.D.C. 1994), aff'd sub nom. *Brown & Williamson*, 62 F.3d 408. The Court said no:

> We do not accept the proposition that the testimonial immunity of the Speech or Debate Clause only applies when Members or their aides are personally questioned. Documentary evidence can certainly be as revealing as oral communications - even if only indirectly when, as here, the documents in question ... do not detail specific congressional actions. *But indications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do and this is true whether or not the documents are sought for the purpose of inquiring into (or frustrating) legislative conduct or to advance some other goals.*

*Brown & Williamson*, 62 F.3d at 420 (emphasis added).

---

[6] Testimony:   *Dennis v. Sparks,* 449 U.S. 24, 30 (1980)  (dicta); *Gravel*, 408 U.S. at 615-16; *Miller v. Transamerican Press, Inc*., 709 F.2d 524, 528-29 (9th Cir.1983). Documents: *Brown & Williamson*, 62 F.3d 408; *MINPECO, S.A. v. Conticommodity Serv., Inc*., 844 F.2d 856, 859-61 (D.C. Cir. 1988); *McSurely,* 553 F.2d at 1296-97; *Hearst v. Black,* 87 F.2d 68, 71-72 (D.C. Cir. 1936); *Pentagen Technologies Int 'l, Ltd. v. Committee on Appropriations,* 20 F. Supp.2d 41, 43-44 (D.D.C. 1998), aff'd, 194 F.3d 174 (D.C. Cir. 1999) (per curiam); *U.S. v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246, 248-49 (D.D.C. 1981).

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**                    **18-CR-3677-W**

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

The Court also explicitly rejected the company's argument, derived from an earlier Third Circuit case, that "even though the Speech or Debate Clause bars the use of documents as evidence against Members, it does not privilege them against 'discovery'":

> To the extent that the Third Circuit has adopted a special rule for the testimonial use of documents, we therefore disagree. None of the Supreme Court's opinions acknowledges such a distinction....[and] our own circuit precedent precludes our making this distinction between documentary and oral testimony.... [T]he nature of the use to which documents will be put - testimonial or evidentiary- is immaterial if the touchstone is interference with legislative activities. That is the rationale attributed to the Clause in our most apposite precedents, and it necessarily governs our decision today.

*Id.* at 420-21 (emphasis added). The Court could not have been clearer that the Clause bars absolutely the disclosure of legislative records where a Member has not consented.[7] The Court later held that in accordance with "the Constitution and the Supreme Court's case law, courts must protect, without qualification, a Member's speech in an official congressional disciplinary proceeding." *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1207 (D.C. Cir. 2009). The Court held that the "Member's communications constitute "Speech ... in either House" and thus fall within the "heart of the Clause." *Gravel*, 408 U.S. at 625, 92 S.Ct. 2614." *Id.* at 1207.

As the D.C. Circuit has also held: "The bar on compelled disclosure is absolute, see *Eastland*, 421 U.S. at 503, and there is no reason to believe that the bar does not apply in the criminal as well as the civil context." *United States v. Rayburn House Office Building, Room 2113, Washington, DC 20515* (497 F.3d 654) (2007) at 660. Further:

[C]ompelled disclosure clearly tends to disrupt the legislative process:

---

[7] *Brown & Williamson* also contradicts the lower court's effort to ground its holding on the notion that "[t]he purpose of the Speech or Debate Clause is not to promote or maintain secrecy in legislative activity." 432 F. Supp.2d at 112. "We do not share the Third Circuit's conviction that democracy's 'limited toleration for secrecy' is inconsistent with an interpretation of the Speech or Debate Clause that would permit Congress to insist on the confidentiality of investigative files." 62 F.3d at 420.

14

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**   **18-CR-3677-W**

exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters may legitimately involve frank or embarrassing statements; the possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity. This chill runs counter to the Clause's purpose of protecting against disruption of the legislative process.

*Id.* at 661; *see also In re Grand Jury Subpoenas*, 571 F.3d at 1203 (reversing lower court order that declined to quash subpoena, directed to Member's lawyers, for Member records); *Brown & Williamson*, 62 F.3d at 421 ("A party is no more entitled to compel congressional testimony – or production of documents – than it is to sue congressmen."); *MINPECO*, 844 F.2d at 859-61 (affirming lower court order quashing document subpoena to House subcommittee); *Miller*, 709 F.2d at 528-30 (indicating in dicta that legislative records protected); *Fremont Energy Corp. v. Seattle Post Intelligencer*, 688 F.2d 1285, 1286 (9th Cir. 1982) (noting with no disapproval district court's quashal, on Speech or Debate grounds, of subpoena duces tecum to former Congressman "insofar as the subpoena related to [former Member's] legislative activities").

## B.   The Speech or Debate Clause Privilege Applies Equally to Congressional Staff

The Member and his aides are to be treated as one.  *Gravel*, 408 U.S. 606 at 616. As such, the protections arising under the Clause must apply equally, and extended to, staff who perform legislative activities on behalf of the representative. Id.  Speech or Debate protections cannot be waived by staff. *Gravel*, 408 U.S. at 621-622.

In addition to issuing a subpoena to the Congressional Offices of Congressman Hunter, the government also interviewed members of his Congressional staff.  Joseph Kasper, Chief of Staff to Congressman Hunter was impermissibly questioned about his role in drafting Congressman Hunter's response to the OCE Report and in attempting to secure a fact-finding visit of the Navy's Sixth Fleet in Naples, Italy for Congressman Hunter.   The inspection of military bases is legislative activity for Congressional members of House Committees and Subcommittees. In *United States v. Biaggi*, 853

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

15

F.2d 89, 103 (2d Cir. 1988) the Second Circuit concluded that even informal legislative fact-finding conducted by Congressman Biaggi during his Florida trips was protected under the Speech or Debate Clause.  See also, *McSurely*, 553 F2d at 1286-87 (We have no doubt that information gathering, whether by the issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation …"The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly.")

The budgeting process for the military is a matter that the Constitution places solely within the jurisdiction of Congress.  As such, legislative fact-finding trips to inspect military bases is a central part of a Members role in the budgeting process, which is solely within the purview of Congress.  Consequently, the interview of Kasper and his role in drafting Congressman Hunter's response to the OCE Report and in attempting to secure the approval for the fact-finding visit implicated the Speech or Debate Clause.  *In re Grand Jury Subpoenas*, 571 F.3d 1200 (D.C. Cir. 2009)

The information provided by Joseph Kasper to the government of conversations he had with Congressman Hunter in drafting Congressman Hunter's response to the OCE Report and in attempting to arrange a legislative fact-finding mission of the Navy's Sixth Fleet in Naples, Italy was undoubtedly a legislative act for which the Speech or Debate Clause was meant to protect.  The Government here investigated whether Congressman Hunter abused his official powers, specifically, his power to conduct legislative fact-finding.  Congressman Hunter did not waive his Speech or Debate Clause Privilege to permit Kasper to be interviewed by the government regarding his response to the OCE Report or the scheduling of a fact-finding trip.

## C.   The Speech or Debate Clause Provides for Both Immunity from Suit and a Non-Disclosure Privilege

There is a split in the Circuits on whether the Speech or Debate Clause protects a privilege not to disclose documents that fall within the sphere of legitimate legislative

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**          18-CR-3677-W

activity, as opposed to a privilege that merely bars the evidentiary use of such documents. The D.C. Circuit has determined that the Speech or Debate Clause provides a broad non-disclosure privilege for documents that fall within the sphere of legitimate legislative activity. See, *MINPECO, S.A. v. Conticommodity Service, Inc.* 844 F.2d 856 (D.C. Cir. 1988)  The broad Speech or Debate Clause non-disclosure privilege has also been confirmed in *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) These cases stand for the proposition that it should not matter whether a Congressman is being investigated for criminal activity, the clause does not offer less protection where the Executive Branch is investigating, a legislator's allegedly illegal activity.   The bar on compelled disclosure is absolute…. *United States v. Rayburn House Office Building, Room 2113, Washington D.C. 20151*, 497 F.3d 654, 660 (D.C. Cir. 2007).   See also, *United States v. People's Temple*, 515 F. Supp. 246, 248-49 (D.D.C.1981) (granting motion to quash subpoena for documents concerning House committee's investigation of congressman's death in Guyana; "Once it is determined … that [a Member's] actions fall within the legitimate legislative sphere, judicial inquiry is at an end…)

The Ninth Circuit, however, created an outlier in *United States v. Renzi*, 651 F.3d 1012 (9th Cir. 2011) a decision that is profoundly flawed for multiple reasons.  Renzi was a Congressman charged with extortion, wire fraud and other crimes who had entered into a <u>quid</u> <u>pro</u> <u>quo</u> arrangement with two private citizens to obtain repayment of a loan for a future promise related to support for public land exchange legislation. Renzi argued that improper "legislative act" evidence had been presented to the grand jury.  The Ninth Circuit rejected Renzi's argument and held that the Speech or Debate Clause did not provide a non-disclosure privilege. *Renzi*, 651 F. 3d at 1032.

The decision in *Renzi* is at odds with clear Supreme Court precedent.  As the Supreme Court makes clear:

> It is true that the Clause itself mentions only 'Senators and Representatives,' but prior cases have plainly not taken a literalistic approach in applying the

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**          **18-CR-3677-W**

1
2
3
4

privilege…. Committee reports, resolutions, and the act of voting are equally covered; '(i)n short, . . . things generally done in a session of the House by one of its members in relation to the business before it.' *Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L.Ed. 377 (1881), quoted with approval in *United States v. Johnson*, 383 U.S., at 179, 86 S.Ct., at 755.

5

*Gravel*, at 617.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

The Government subpoenaed records from Congressman Hunter's Congressional Office and interviewed congressional staff related to his response to the OCE Report and his legislative fact-finding responsibilities.  The records necessarily included details of his response to the OCE Report and legislative fact-finding/oversight activities, and in accordance with *Gravel* and consistent Supreme Court case law is protected from disclosure under the Speech or Debate Clause.  Legislative fact-finding is "an act which is an integral part of the deliberative budgeting process that is exclusively within the purview of the Congress.  The mere possibility that executive branch agents could search for records of a Member of Congress, by itself, significantly chill Congress' exercise of its budgetary oversight function to the detriment of the American people. *See Peoples Temple*, 515 F. Supp. at 249.  It could also obstruct the normal give and take between House committees and the executive branch.   If the Court gives the government carte blanche to issue a subpoena, like the one at issue here, the government would have little incentive to work with Congress in matters related to criminal investigations and likely will have less respect for inter-branch comity. The result inevitably would be heightened tension and strain between the branches.

22
23

**D.    The Speech or Debate Clause Protects Against the Presentation of Legislative act evidence to the grand jury in order to obtain an Indictment**

24
25
26
27
28

The key purpose of the Speech or Debate Clause is "to 'prevent intimidation by the executive and accountability before a possibly hostile judiciary,' and to ensure 'that legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions.'"  *United States v. Rostenkowski*, 59 F.3d 1291, 1297-98 (D.C. Cir. 1995) (quoting *United States v. Johnson*, 383 U.S.

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

18

169, 181 (1974) and *Powell v. McCormack*, 295 U.S. 486, 505 (1969)) (internal citations omitted).   To give full effect to this purpose, a number of courts have concluded that "the Clause protects not only against the reference to Speech or Debate material on the face of the indictment but also against its use before the grand jury, at least under some circumstances."   *Id.* at 1298; *see United States v. Renzi*, 651 F.3d 1012, 1031 (9th Cir. 2011); *United States v. Swindall*, 971 F.2d 1531, 1546-47 (11th Cir. 1992); *United States v. Helstoski*, 635 F.2d 200, 203-05 (3d Cir. 1980) ("*Helstoski II*"); *United States v. Durenberger*, No. 3-93-65, 1993 WL 738477, at *5 (D. Minn. Dec. 3, 1993).

As the Third Circuit observed in *Helstoski II*, "the mere threat of an indictment is enough to intimidate the average congressman and jeopardize his independence. Yet, it was to prevent just such overreaching that the speech or debate clause came into being." *Helstoski II*, 635 F.2d at 205; *see also Swindall*, 971 F.2d at 1547 (noting "[i]t was an indictment, not a conviction, that hung over Swindall's head when he lost his reelection bid").   Because the purpose of the Speech or Debate Clause could be vitiated by the use of Speech or Debate material before a grand jury, "[i]nvocation of the constitutional protection at a later stage cannot undo the damage.   If it is to serve its purpose, the shield must be raised at the beginning."   *Helstoski II*, 635 F.2d at 205.   In other words, "[w]hen a violation occurs in the grand jury phase, a member's rights under the privilege must be vindicated in the grand jury phase."   S*windall*, 971 F.2d at 1546-47.

The *Swindall* case is particularly illustrative of the protections afforded by the Speech or Debate Clause before the grand jury.   In that case, a former Member of Congress was convicted of making false statements to the grand jury based on his concealment of his involvement in a money-laundering scheme.   *Id.* at 1534.   A key portion of the government's evidence against Swindall (both before the grand jury and at trial) was that, by virtue of his position as a member of the House Banking and Judiciary Committees, he must have known that the transactions at issue were criminal, contradicting his testimony before the grand jury.   *Id.* at 1539.   In essence, the

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

19

government's presentation allowed the "permissive inference . . . that Swindall performed legislative *acts* to acquire knowledge" about legislation criminalizing the transactions. *Id.* at 1546. The Eleventh Circuit held that the presentation of this evidence violated Swindall's privilege under the Speech or Debate Clause, by introducing evidence of Swindall's committee memberships "to prove that he performed a legislative act to acquire knowledge of the contents of the bills," the government "virtually compel[led] Swindall to justify his legislative actions," "which is precisely what the clause prohibits." *Id.* Because the Speech or Debate material used against Swindall was "critical evidence leading to his indictment," the court dismissed those counts affected by the violation. *Id.* at 1547.

**E.** **Courts Must Look Beyond the Indictment to Determine if Speech or Debate Clause is Implicated**

In order to fully secure the purpose of the legislator not having to be distracted from or hindered in his performance of his legislative tasks courts should look beyond the face of the indictment. See *United States v. Renzi*, 651 F.3d 1012, 1029 (9th Cir. 2011) (holding that it may be necessary "to go behind the face of the indictment " because "[a] court cannot permit an indictment that depends on privileged material to stand …"); accord *United States v. Rostenkowski*, 59 F.3d 1291, 1298 (D.C Cir. 1995), Citing, *United States v. Dowdy*, 479 F.2d 213, 223 (4th Cir. 1973). ("If the speech or debate clause … is to be given any meaning, the validity of an indictment must be determined in the context of the proof which is offered to sustain it, or in the context of the facts adduced on a motion to dismiss it").

Courts must look beyond the face of the indictment in determining if the Speech or Debate Clause is implicated by the government's actions for the reason so eloquently stated by the D.C. Circuit; … "Otherwise, a prosecutor could with impunity procure an indictment by inflaming the grand jury against a Member upon the basis of his Speech or Debate, subject only to the necessity of avoiding any reference to the privileged material on the face of the indictment." *Rostenkowski*, 59 F.3d at 1298 (D.C. Cir. 1995)

20

## IV.   CONCLUSION

The Speech or Debate Clause protects Members of Congress from being prosecuted or sued for legislative activities; bars prosecutors and private parties from using legislative acts to indict, convict or establish the liability of a Member; and prohibits disclosure of a Member's legislative activities without his consent, either by way of testimony or through disclosure of records.

There are, of course, potential costs associated with this broad constitutional protection. "[W]ithout doubt the exclusion of [past legislative acts] will make prosecutions more difficult." *Helstoski,* 442 U.S. at 488. "[T]he broad protection granted by the Clause creates a potential for abuse." *Eastland,* 421 U.S. at 510. Notwithstanding, the Supreme Court and lower courts have repeatedly held that the Speech or Debate Clause must be broadly construed and applied because that was "'the conscious choice of the Framers' buttressed and justified by history." *Id*. (quoting *U.S. v. Brewster*, 408 U.S. 501, 516 (1972)).[8]

That the Framers' "conscious choice" was a wise one is evidenced not only by the enduring vigor of our system of checks and balances, but also by the fact that, notwithstanding the Clause, the Department of Justice for more than 200 years has successfully investigated, charged and convicted Members of Congress who violated the law. In the last 30 years, for example, the Department has managed to convict over 25

---

[8] Speech or Debate is hardly the only constitutional principle that we, as Americans, value and protect, notwithstanding potential costs. "[W]e ...      have always held that in criminal cases we would err on the side of letting the guilty go free rather than sending the innocent to jail. We have required proof beyond a reasonable doubt as 'concrete substance for the presumption of innocence.'" *Johnson v. Louisiana*, 406 U.S. 380, 393 (1972) (quoting *In re Winship*, 397 U.S. 358, 363 (1970)). And we tolerate offensive speech because we value free speech more. The "suppression of uncongenial ideas is the worst offense against the First Amendment." *Hill v. Colorado*, 530 U.S. 703, 746 (2000).

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT**                    **18-CR-3677-W**

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

1  Members of Congress - without overstepping its constitutional bounds as would be the

2  case should this Court Deny this motion.

3

4                                    Respectfully submitted,

5  Dated: June 24, 2019              SELTZER CAPLAN McMAHON VITEK
                                     A Law Corporation
6

7

8                                    By:    *s/ Gregory A. Vega*
                                            Gregory A. Vega
9                                           Ricardo Arias
                                            Philip B. Adams
10                                   Attorneys for Defendant, DUNCAN D. HUNTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

22

**POINTS & AUTHORITIES IN SUPPORT OF MOTION TO         18-CR-3677-W
DISMISS INDICTMENT**