Gregory A. Vega, Esq. (CABN 141477)
Ricardo Arias, Esq. (CABN 321534)
Philip B. Adams, Esq. (CABN 317948)
SELTZER CAPLAN McMAHON VITEK
A Law Corporation
750 B Street, Suite 2100
San Diego, California  92101-8177
Telephone: (619) 685-3003
Facsimile: (619) 685-3100
E-Mail:     vega@scmv.com; padams@scmv.com;
            arias@scmv.com

Attorneys for Defendant DUNCAN D. HUNTER

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

(Hon. Thomas J. Whelan)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DUNCAN D. HUNTER,<br><br>Defendant. | Case No.  18-CR-3677-W<br><br>**MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**<br><br>Date:     July 1, 2019<br>Time:    10:00 a.m.<br>Judge:   Hon. Thomas J. Whelan |

Defendant DUNCAN D. HUNTER ("Hunter"), by and through his attorneys, Gregory A. Vega, Ricardo Arias and Philip B. Adams hereby submits this Motion to Strike Surplusage from Indictment and respectfully moves this Court to strike certain language, namely paragraphs fourteen (14), fifteen (15), sixteen (16), and seventeen (17), from the indictment in this case as surplusage pursuant to Criminal Rule of Federal Procedure 7(d). These paragraphs relate to Hunter's "financial background" and should be struck as surplusage because they contain no material information relevant to the

charged offenses and serve no purpose other than to prejudice the jury against Hunter by implicitly providing a motive for the alleged crimes.

## I.  FACTUAL BACKGROUND

Hunter is a United States Representative representing California's 50th Congressional District.  Hunter was charged on August 21, 2018, in a 60 count indictment, with offenses related to violating rules of the House of Representatives ("House") and the Federal Election Commission ("FEC") on the personal use of campaign funds and related offenses involving attempts to conceal the personal use reported in FEC filings. Hunter was first elected to serve as a United States Representative in 2008, and has been re-elected 5 times, serving from January 2009 to the present.  The indictment alleges Hunter used campaign funds for personal purposes over the course of a six year period (2010-2016).  Count 1 charges Hunter and his wife, Margaret Hunter, with conspiracy in violation of 18 U.S.C. § 371; Counts 2-44 charge wire fraud in violation of 18 U.S.C. §§ 1343 and 2; Counts 45-57 charge false filings with the FEC in violation of 18 U.S.C. §§ 1519 and 2; and Counts 58-60 charge Prohibited Use of Campaign Contributions in violation of 52 U.S.C. §§ 30109(b) and 30114(b)(1) and 18 U.S.C. § 2.

## II.  ANALYSIS

The Court should strike paragraphs 14, 15, 16, and 17 as surplusage because they do not set forth material information establishing any element of the charged crimes and merely contain unnecessary and prejudicial allegations designed to supply a motive for Hunter's purported offenses.

Federal Rules of Criminal Procedure 7(d) empowers district courts to strike surplusage from an indictment upon a defendant's motion. Fed. R. Crim. Proc. 7(d); *See United States v. Ramirez*, 710 F.2d 535, 544–45 (9th Cir.1983). Rule 7(d) was enacted to "introduce [] a means of protecting the defendant against immaterial or irrelevant allegations in an indictment … which may, however, be prejudicial. Fed. R. Crim. Proc.

7(d), Advisory Committee Notes, 1944 adoption; *see also Federal Practice and Procedure* § 128 ("The purpose of 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts.") Accordingly, language within an indictment that is not essential to the charged offenses and either irrelevant or immaterial to the overall scheme alleged should be stricken as surplusage. *See United States v. Caruso*, 948 F. Supp. 382, 392 (D.N.J. 1996). Indeed, "[n]umerous decisions have recognized the power of the district court to redact from an indictment… superfluous language which unfairly prejudices the accused." *United States v. Vastola*, 899 F.2d 211, 231 n.25 (3d Cir. 1990), *vacated on other grounds*, 497 U.S. 1001 (1990).

The district court has broad discretion in ruling on a motion to strike surplusage. *See Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008); *See also United States v. Terrigno,* 838 F.2d 371, 373 (9th Cir.1988). In the Ninth Circuit, a district court may properly grant a defendant's motion to strike surplusage from the indictment when the indictment contains "prejudicial or inflammatory allegations that are neither relevant nor material to the charges. *See e.g.*, United States v. Terrigno,* 838 F.2d at 373 (9th Cir.1988) (quoting *United States v. Ramirez*, 710 F.2d 535, 544-45 (9th Cir. 1983)). Furthermore, a defendant has no "obligation arising from the rules of evidence to explain that which [does] not appear to have any necessary or natural connection with the offense imputed to him." *Williams v. United States*, 168 U.S. 382, 397 (1897)

Paragraphs 14-17 of the indictment in this case have no material or necessary connection to the charged offenses and serve no purpose other than to prejudice the jury against Hunter. These superfluous paragraphs read as follows:

> 14. Throughout the relevant period, Defendants DUNCAN HUNTER and MARGARET HUNTER maintained both a joint checking and joint savings account. The checking account was used as their primary bank account for paying virtually all family bills ("the HUNTER family bank account"). The HUNTERS rarely used the joint savings account and maintained a minimal balance in that account. DUNCAN HUNTER maintained separate personal checking and savings accounts into which he

3

**MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**  Case No. 18-CR-3677-W

made small monthly deposits for his own personal use ("HUNTER's personal bank accounts").

15.  As reflected in his U.S. House of Representatives Annual Financial Disclosure Statements, DUNCAN HUNTER had less than $1,000 in reportable assets for each of the years 2009 through 2016.

16.  Throughout the relevant period, the HUNTERS spent substantially more than they earned. They overdrew their bank account more than 1,100 times in a seven-year period resulting in approximately $37,761 in "overdraft" and "insufficient funds" bank fees. Their credit cards were frequently charged to the credit limit, often with five-figure balances, resulting in approximately $24,600 in finance charges, interest, and other fees related to late, over the limit, and returned payment fees.

17.  By virtue of these delinquencies — as well as notifications of outstanding debts and overdue payments from their children's school, their family dentist, and other creditors — the HUNTERS knew that many of their desired purchases could only be made by using Campaign funds.

First, paragraph 14, which simply discloses the existence of "the HUNTER family bank account" and "HUNTER's personal bank accounts," is neither relevant nor material to the charged offenses; Hunter is no more likely to have committed the charged crimes due to the existence of these bank accounts than he would be had he kept money under his mattress. In addition, the government's strategically worded contention that Hunter maintained separate bank accounts for "his own personal use" unduly prejudices Hunter because it suggests, incorrectly, that Hunter was hiding funds from his wife, and it sends a subliminal message to the jury that Hunter was predisposed to converting funds for his personal use.

Second, paragraphs 15 and 16, which allege that Hunter "had less than $1,000 in reportable assets for each of the years 2009 through 2016" yet ran up tens of thousands of dollars in overdraft fees and credit card charges, are clearly designed to suggest that Hunter had a motive for committing the alleged offenses. Furthermore, these allegations are not relevant to any element of the charged offenses, and they are prejudicial because

they imply that Hunter knowingly lived beyond his means, despite ample evidence to the contrary.

Third, the government's conclusory allegation in paragraph 17 that because the Hunters had outstanding debts and overdue payments they "knew that many of their desired purchases could only be made by using campaign funds" is inherently speculative and prejudicial. Moreover, highlighting the cumulative amount of bank fees and finance charges incurred by the Hunters over a seven year span is prejudicial because it grossly exaggerates Hunter's actual debt at any particular moment during that time span, and it implicitly invites the jury to make improper conclusions (i.e. that Hunter was in so much debt that he must have used campaign funds for personal expenditures) based upon inflated numbers that are not relevant to the alleged offenses.

Therefore, paragraphs 14-17 constitute prejudicial allegations that are neither relevant nor material to the charges and should be struck from the indictment. At a minimum, the Court should strike the government's prejudicial commentary about Hunter's reportable assets and the Hunters' spending habits but permit the government to reference the accounts in paragraph 14.

### III.  CONCLUSION

In sum, the Court should strike paragraphs 14-17 as surplusage because they do not set forth material information relevant to any of the charged crimes and merely assert unnecessary and prejudicial allegations designed to supply a motive for Hunter's purported offenses.

Respectfully submitted,

Dated: June 24, 2019

SELTZER CAPLAN McMAHON VITEK
A Law Corporation

By:  *s/ Gregory A. Vega*
Gregory A. Vega
Philip B. Adams
Ricardo Arias
Attorneys for Defendant, DUNCAN D. HUNTER

5
MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT                Case No. 18-CR-3677-W