1  DAVID D. LESHNER
   Attorney for the United States
2  Acting under Title 28, U.S.C. Section 515
3  EMILY W. ALLEN (Cal. Bar No. 234961)
   W. MARK CONOVER (Cal. Bar No. 236090)
4  PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
5  BRADLEY G. SILVERMAN (D.C. Bar No. 1531664)
   Assistant United States Attorneys
6  U.S. Attorney's Office
7  880 Front Street, Room 6293
   San Diego, CA 92101
8  Telephone: (619) 546-6345
9  Email: bradley.silverman@usdoj.gov

10 Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DUNCAN D. HUNTER,<br><br>    Defendant. | Case No. 18CR3677(1)-W<br><br>**UNITED STATES' MOTIONS IN LIMINE TO:**<br>(1) Exclude Advice of Counsel Defense<br>(2) Allow Leading Questions of Certain Witnesses<br>(3) Admit Defendant's Statements<br>(4) Admit Prior Testimony as Substantive Evidence<br>(5) Allow Witnesses to be Recalled<br>(6) Allow Expert Testimony About Computer Forensics<br>(7) Admit Business and Public Records<br>(8) Admit Electronic Evidence<br>(9) Admit Summaries and Charts<br>(10) Allow Use of Exhibits in Opening Statements<br>(11) Allow Attorney-Conducted Voir Dire<br>(12) Preclude Certain Defense Evidence<br>(13) Order Schedule for Pre-Trial Disclosures |

The United States of America, through its counsel, David D. Leshner, Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515, and Emily W. Allen, W. Mark Conover, Phillip L.B. Halpern, and Bradley G. Silverman, Assistant U.S. Attorneys, hereby files its motions in limine.

## I.
## STATEMENT OF FACTS

On August 21, 2018, Duncan D. Hunter ("Hunter" or "the defendant") and Margaret Hunter were indicted and charged with one count of conspiracy against the United States, in violation of 18 U.S.C. § 371; 43 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; 13 counts of falsification of records related to campaign finance, and three counts of prohibited use of campaign contributions, in violation of 52 U.S.C. §§ 30109(d) and 20114(b)(1) and 18 U.S.C. § 2.  On June 13, 2019, Margaret Hunter entered a guilty plea to Count One of the indictment, pursuant to a plea agreement.

Trial against Hunter is set to begin on September 10, 2019.  By these motions, the United States seeks to preclude certain improper defense evidence and arguments, and to alert the Court and the defendant of its intent to introduce certain evidence.  The particular facts relevant to each motion are set forth in more detail below.

## II.
## ARGUMENT

**(1)   Motion to Exclude Advice of Counsel Defense Evidence and Argument**

On April 4, 2016, the Federal Election Commission ("FEC") sent a letter to the treasurer of the Duncan D. Hunter for Congress Campaign Committee, asking for clarification about campaign payments to the Hunters' children's private school and the online gaming company Steam Games.  As a result of this inquiry, the very next day, news media in San Diego and around the country began to report on the questionable charges made by Hunter and his campaign.  In response, on April 8, 2016, Hunter and Margaret Hunter repaid several thousand

dollars to the campaign.

By November 2016, public scrutiny and media attention to the Hunters' improper campaign spending had not receded. Perhaps in an effort to deflect that attention, Hunter announced to the press that he planned to repay another $49,000 to his campaign, for charges he described as "primarily unauthorized by the campaign." Morgan Cook, *Hunter Repays Campaign $49,000 in Personal Expenses*, San Diego Union-Tribune (Nov. 3, 2016).[1] According to Hunter and Hunter's spokesmen, this reimbursement was the result of a financial audit conducted by an outside law firm hired by his campaign. Morgan Cook, *Ethics Complaints Highlight Hunter's Italy Trip*, San Diego Union-Tribune (Apr. 28, 2016).[2]

Based on these and other public comments, the United States believes Hunter may attempt to introduce evidence or argument that he relied on counsel as an affirmative defense against the alleged crimes. The Court should exclude this evidence because the defendant, who has yet to provide any reciprocal discovery, failed to provide notice that he intends to rely on "advice of counsel" as a defense to the charges at trial.

Advice of counsel is not a separate and distinct defense, but is a circumstance indicating good faith, which the trier of fact may consider in determining intent. *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 961). To establish reliance on the advice of counsel, the defendant must: (1) in good faith seek the advice of counsel; (2) fully and honestly lay out all of the facts before his counsel; and (3) in good faith and honestly follow the advice, relying on it and believing it to be correct. *Id.* at 719-20; *see also, e.g., United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987) (defense requires full disclosure, advice received as to the specific course of conduct and relied upon in good faith); *United States v. Clairborne*, 765 F.2d 784, 798 (9th Cir. 1985) (defense requires good faith reliance on a qualified professional after full disclosure) (overruled on other grounds). Evidence that Hunter sought or received

---

[1] Available at https://www.sandiegouniontribune.com/news/watchdog/sd-me-hunter-repay-20161103-story.html.

[2] Available at https://www.sandiegouniontribune.com/news/watchdog/sdut-hunter-italy-2016apr28-htmlstory.html.

an attorney's advice should not be admitted at trial until he has met the foundational elements. *See, e.g., Bush,* 626 F.3d at 539-40; *In re Maring,* 338 Fed. Appx. 655, 658 (9th Cir. 2009).

Hunter has not provided notice that he intends to use this defense, nor has he produced any reciprocal discovery. If Hunter intends to raise an advice of counsel defense during trial without such notice, he will seriously impede the Court's ability to evaluate whether his defense meets threshold required by *Bisno*. Before Hunter is permitted to raise this defense, the Court should require that he first identify the attorney, waive attorney-client privilege, and set forth exactly what facts were disclosed to that attorney, along with the advice the attorney provided in return. Without these preliminary disclosures and threshold findings, the introduction of this evidence risks at a minimum confusing and misleading the jury—and, at worst, could result in a mistrial.

### (2) Motion to Allow Leading Questions of Certain Witnesses

Several of the witnesses called by the United States will be close associates of Hunter who were or remain his friends, family members, employees, or colleagues. Some of these witnesses have understandably expressed their unwillingness or their displeasure at being required to answer questions related to Hunter's conduct. In eliciting their testimony at trial, the United States may request permission to conduct the examination using leading questions, as permitted by Rule 611(c) of the Federal Rules of Evidence. Conversely, in instances where the United States' witnesses are clearly friendlier to Hunter, the United States may request that the Court require the defense to examine these witnesses by means of non-leading questions.

Rule 611(c) provides that "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading question." The Rule "vests broad discretion in trial courts." *Miller v. Fairchild Industries*, 885 F.2d 498, 514 (9th Cir. 1989). Reversal on the basis of an exercise of discretion under this Rule will occur "only if the judge's action amounted to or contributed to the denial of a fair trial." *Id*. "The term 'witness identified with an adverse party' is intended to apply broadly to an identification

4

based upon employment by the party or by virtue of a demonstrated connection to the opposing party." Glen Weissenberger, Federal Evidence 1996 Courtroom Manual 134 (1995).

Before Rule 611(c) was adopted, the use of leading questions on direct examination required either a showing of actual hostility or a determination that the witness being examined was an adverse party, or an officer, director, or managing agent of an adverse party. *Ellis v. City of Chicago*, 667 F.2d 606, 612 (7th Cir. 1981). The drafters of the Rule recognized that these limitations presented "an unduly narrow concept of those who may safely be regarded as hostile[.]" Fed. R. Evid.611(c) Advisory Committee Notes. The revised Rule was thus designed to enlarge the categories of witnesses who are subject to interrogation by leading questions without further showing of actual hostility.

Rule 611(c) also states, "Ordinarily, the court should allow leading questions…on cross-examination[.]" But the "right of a cross-examiner to employ leading questions is not absolute under Rule 611(c)." *Morvant v. Construction Aggregates Corporation*, 570 F.2d 626, 635, n.12 (6th Cir. 1978). "Generally, when a witness identified with an adverse party is called, the roles of the parties are reversed. Leading questions would be appropriate on direct examination but not on cross examination." *Alpha Display Paging v. Motorola*, 867 F.2d 1168, 1171 (8th Cir. 1989). The Advisory Committee Notes clarify that the use of the word "ordinarily" was meant to "furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact," giving the example of an insured defendant who proves to be friendly to the plaintiff. In this case, the United States may call witnesses so closely aligned with Hunter, such as close friends, family members, and present and former employees who could suffer negative career effects as a result of Hunter's conviction, that his cross-examination would be in form only, and leading questions would be inappropriate.

**(3)    Motion to Admit Defendant's Statements**

Following the storm of public scrutiny of Hunter's campaign spending that began in April 2016 and continues to this day, Hunter has made a number of statements about his and

5

his wife's use and misuse of campaign funds. These include recorded statements Hunter has made in public events and to various media outlets, where he has volunteered statements or answered questions about the campaign's finances and improper spending that benefited Hunter's family. Hunter's comments began almost immediately, and continue to this day.

The United States may seek to introduce some of these statements, along with transcripts to assist the jury, in its case-in-chief. Federal Rule of Evidence 801(d)(2)(A) provides that a party's own statement is nonhearsay directly admissible against the party. *United States v. Matlock*, 415 U.S. 164, 172 (1974) (A party's "own out-of-court admissions…surmount all objections based on the hearsay rule…and [are] admissible for whatever inferences the trial judge [can] reasonably draw."). Hunter's statements described above are admissible when presented by the United States.

On the other hand, Hunter himself may not elicit testimony or present recordings of his own statements without affording the United States the opportunity for cross-examination. Such evidence is improper "self-serving" hearsay when offered by the defendant. *See*, *e.g.*, *United States v. Ortega*, 203 F.3d 675, 679 (9th Cir. 2000); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam). While Hunter may invoke his right to remain silent at trial, he is not also entitled to present his own hearsay statements to the jury without subjecting those statements to the rigors of cross-examination. *See Fernandez*, 839 F.2d at 640 ("It seems obvious defense counsel wished to place [the defendant's] statement…before the jury without subjecting [the defendant] to cross examination, precisely what the hearsay rule forbids."). Any attempts to do so should be excluded.

Defendants cannot sidestep the prohibition against hearsay by invoking the so-called "rule of completeness." Rule 106 provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." This rule is designed to prevent "misunderstanding or distortion" caused by the introduction of only part of a document or recorded statement that could only be cured by admission of the full record. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). It

does not allow adverse parties to introduce any unedited statement merely because the proponent party has offered an edited or excerpted version. Indeed, as the Ninth Circuit maintained, "it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them." *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). It is only designed to cure what might otherwise present the jury with a misleading impression created by taking something from the statement out of context. The rule simply does not provide for the admission of otherwise-inadmissible hearsay; that is, if a party's out-of-court statements "do not fall within an exception to the hearsay rule, they are inadmissible, regardless of Rule 106." *Collicott*, 92 F.3d at 983.

The Ninth Circuit has confirmed that the rule of completeness is not intended to allow defendants to bootstrap their self-serving hearsay statements onto the government's proper admission of a defendant's redacted statement. In *United States v. Vallejos*, the defendant argued that redacted portions of his statement to investigators should be admitted "to show the jury the 'flavor of the interview,' the 'humanize' [the defendant], to prove his 'character,' and to convey to the jury the voluntariness of the statement." 742 F.3d 902, 905 (2014). The Ninth Circuit found this unpersuasive, pointing out that defendants are not entitled to introduce such evidence when it is not specifically designed to correct a misleading impression created because a particular statement was taken out of context. *Id.*

Here, the United States will not offer any misleading statements or remove admissions from important context such that clarification is necessary, and the rule of completeness therefore does not apply. There is no danger of misleading the jury by preventing the defense from bootstrapping self-serving statements simply because they were made during the same conversation as other admissible statements.

**(4)    Motion to Admit Prior Testimony as Substantive Evidence**

Several of the witnesses who will testify for the government have previously testified about this matter. In the event that the trial testimony of such a witness is inconsistent with

7

the testimony given in prior proceedings under oath, that witness can be impeached by use of the prior transcript. Under Rule 801(d)(1)(A) of the Federal Rules of Evidence, the relevant portion of the transcript itself may be read and admitted as substantive evidence before the jury. *United States v. Champion International Corporation*, 557 F.2d 1270, 1274 (9th Cir.1977); *United States v. Morgan*, 555 F.2d 238, 241-242 (9th Cir.1977).

### (5)   Motion to Allow Certain Witnesses to be Recalled

The allegations in this case span eight years, involve thousands of individual transactions that took place over the course of hundreds of different days by multiple people often operating thousands of miles apart (or around the world). The evidence required to prove each single unlawful transaction may be taken from dozens of different sources. And each source of evidence requires its own foundation and grounds for admission at trial. Many will require testimony by percipient witnesses, campaign staff, and vendor representatives, in addition to an investigator who can describe business records and financial documents and discuss particular transactions. In order to streamline what could otherwise be a lengthy trial, and to present the evidence in the form most convenient and simple to follow, the United States intends to present most of the evidence in this case in a chronological fashion.

For example, in order to prove Hunter's use of campaign funds on a personal ski weekend getaway with "Individual 14," the United States might call: (1) a government witness to describe the hotel, car rental, and other expenses, as well as charges made to Hunter's personal cards; (2) a representative of the hotel or other vendor to explain any aspects of the expenses that cannot be gleaned from business records alone; (3) Individual 14, to describe the purpose of the weekend; and/or (4) a representative from the Hunter campaign to describe any comments or explanations provided to justify the trip. Each individual expense must be proved in a similar fashion. Accordingly, to save time and avoid confusing the jury by presenting evidence out of sequence, the United States intends to call the same investigator witnesses multiple times during the trial.

The United States' proposed method of presenting the evidence will serve the two purposes contemplated by Rule 611(a) governing the mode and order of examining witnesses and presenting evidence. That Rule provides: "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to…make those procedures effective for determining the truth [and] avoid wasting time[.]" Rather than presenting the jury with a jumbled morass of evidence covering years of transactions with the hope that they will be able to compartmentalize and sort it as they hear it, the United States proposes to present its case in a much more understandable format.[3]

### (6) Motion to Allow Expert Testimony About Computer Forensics[4]

The United States intends to introduce evidence obtained from computers, cell phones, servers, and other electronic devices, including email correspondence and text messages. The United States has inquired whether the defense will stipulate to the authenticity of these records, but has not yet confirmed whether such a stipulation is possible. In the event no stipulation is reached, in order to authenticate these records, the United States intends to call forensic computer analysts from the FBI's Regional Computer Forensics Laboratory ("RCFL") to testify about the extraction of data from computers, cell phones, and other electronic data. In addition, the United States anticipates that a case agent will testify about the extraction of data, using Cellebrite technology, from defendant Hunter and his wife Margaret Hunter's cell phones.[5] These agents and analysts will explain the process and

---

[3] Further, if the Court allows the United States to proceed with its case-in-chief presentation as set forth above, the United States requests a pretrial order that the subject of cross-examination of the United States witnesses will "be limited to the subject matter of their direct examination and matters affecting [those witnesses'] credibility." Fed. R. Evid. 611(b).

[4] The United States submits this Motion, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), of notice of its intent to admit expert testimony at trial and the written summary of the intended testimony.

[5] The Second Circuit has analyzed testimony regarding Cellebrite extraction specifically, and concluded that a case agent's testimony about the retrieval of data from a cell phone using this method does not require expert certification. *United States v. March*, 568

9

procedure employed to extract the documents from the devices, which may require the explanation of technical computer and Internet terms.

Analysts with the RCFL obtain specialized training and experience in computer forensics. They work on hundreds of criminal cases, attend industry and law enforcement conferences concerning the extraction and preservation of electronic evidence and investigative techniques, and they routinely testified in federal criminal trials. The United States has not yet identified the specific RCFL analysts it will call to testify at the September 10, 2019 trial, but once those witnesses are identified, their curriculum vitae will be provided to defense counsel.

The United States anticipates that if a stipulation is not reached, each will testify regarding his or her: (1) knowledge, skill, training, and experience with computers; (2) involvement in the investigation of this case; (3) examination of the electronic devices in this case, as well as the data obtained from these devices; (4) knowledge of technical terms relating to the forensic evaluation of computer evidence; (5) interpretation of time stamps associated with each electronic record, including created, modified, sent, received, and accessed dates and times; (6) receipt of computers and the process used to copy data for analysis; (7) examinations of the data using Cellebrite, Forensic Toolkit (FTK) or EnCase software and the results of these examinations; and (8) the location of files on the electronic devices.

Testimony from these witnesses who will lay the foundation for electronic evidence is admissible under Federal Rule of Evidence 702. RCFL analysts are "qualified as [] expert[s] by knowledge, skill, experience, training, or education." *Id.* Further, their presentation of "technical, or other specialized knowledge will assist the trier of fact to understand the evidence" in this case. *Id.* The computer analysts will not offer any opinions regarding the

---

Fed. Appx. 15, 17 (2nd Cir. 2014) (unpublished). The court cited its conclusion from *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007), which found that "[a] witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise[.]" *March*, 568 Fed. Appx. at 17.

weight of the evidence or the substantive contents of the records, but instead will share with the jury some basic concepts surrounding the forensic evaluation of computer data, and testify that records seized from certain devices and servers are what they claim to be. To the extent the computer forensics testimony ventures into the realm of opinion under Rule 702, it will be based on the witnesses' education and years of practice and experience in the field of computer forensics. Their testimony will be based on sufficient facts and data, will be the product of reliable principles and methods, and will reliably apply those principles and methods to the facts of this case.

**(7) <u>Motion to Admit Business and Public Records</u>[6]**

At trial, the United States intends to offer records documenting the regularly-conducted activity of businesses or organizations including banks, campaign support organizations, retail establishments, restaurants, medical offices, and other businesses. Moreover, the United States intends to introduce public records, including records of the San Diego Gas & Electric utility, the Padre Dam Municipal Water District, and the San Diego County Recorder's Office.

Under Federal Rule of Evidence 803(6) and (8), such records documenting regularly-conducted activity and public records are not excluded by the rule against hearsay. Moreover, Rule 902(1), (2), (4), and (11) allows for the self-authentication of public and business records with a suitable certification. The United States has or is in the process of obtaining certifications from the relevant custodians of each set of records described here, and those certifications have been and will continue to be produced to the defense in discovery. Those certifications serve to self-authenticate the records to be admitted under Rule 803(6) and (8).

---

[6] The United States submits this Motion as notice to the defendant, pursuant to Rule 902(11), of its intent to offer at trial certified records of regularly conducted activity including bank and credit card records, purchase receipts, invoices, correspondence with business entities and their representatives, and loan records. These records will be identified with particularity, along with certifications of the custodian or other qualified person that the record meets the requirements of Rule 803(6), in the exhibit list to be exchanged according to the Court's scheduling order.

The United States has asked whether the defense will stipulate to the authenticity of these records, but the defense has not yet indicated whether they are willing to enter such a stipulation. In the event the defense will not so stipulate, the Court should admit these records as self-authenticating under the Federal Rules of Evidence.

### (8) Motion to Admit Electronic Evidence[7]

At trial, the United States expects to introduce evidence drawn from the Hunters' email or user accounts on social media platforms such as Facebook and Instagram—for example, messages they sent and photos they posted. Messages and photos drawn from email and social media platforms are self-authenticating business records under Rule 902(11) and 902(13) to show that they originated: (1) from particular user accounts; (2) on particular days and; (3) at particular times, and thus do not require witness testimony to authenticate for these "technical" purposes. *See United States v. Browne*, 834 F.3d 403, 410-11 (3d Cir. 2016) ("[T]he records custodian employed by the social media platform can attest to the accuracy of only certain aspects of the communications exchanged over that platform, that is, confirmation that the depicted communications took place between certain Facebook accounts, on particular dates, or at particular times.").

This, of course, does not mean that social media postings are self-authenticating as to whether any particular user account was operated by any particular individual. Instead, at trial, the United States will offer extrinsic evidence or identify such postings' distinctive characteristics to establish the users of any relevant social media accounts. *See United States v. Farrad*, 895 F.3d 859, 878 (6th Cir. 2018) (photos drawn from Facebook properly

---

[7] As above, the United States submits this Motion as notice to the defendant, pursuant to Rule 902(11), of its intent to offer at trial certified records of regularly conducted activity including records generated by an electronic process or system that produces an accurate result, as defined at Rule 902(13), or data copied from an electronic device, storage medium, or file, as defined at Rule 902(14). These records will be identified with particularity, along with certifications of the custodian or other qualified person that the record meets the requirements of Rule 803(6), in the exhibit list to be exchanged according to the Court's scheduling order.

authenticated because they "appeared to show Farrad, his tattoos, and (perhaps most probatively) distinctive features of Farrad's apartment, as confirmed by police investigation"); *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) ("the prosecution had satisfied its burden under Rule 901(a) by tracking the Facebook pages and Facebook accounts to Hassan's and Yaghi's mailing and email addresses via internet protocol addresses.").

### (9) Motion to Admit Summaries and Charts

The United States intends to introduce charts and other records summarizing the content of voluminous records that cannot be conveniently examined in court. Summaries of the voluminous financial records, bank statements, credit card records, and receipts reflecting purchases that are the subject of the indictment will help the jury track the thousands of campaign transactions over the course of nearly a decade of spending. These summaries will also help distill the Hunters' personal finances, again over the course of eight years, into a format that will help the jury to review and comprehend the defendant's and his coconspirator's spending.

These summaries and charts are admissible under Federal Rule of Evidence 1006, because they distill voluminous writings and recordings that are admissible in evidence but cannot be conveniently examined in court. The underlying business records the United States will use to create the summaries have all been provided in discovery and are admissible in evidence, even though the United States may streamline its presentation of evidence by electing not to do so. *See United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988); *see also United States v. Johnson,* 594 F.2d 1253, 1255 (9th Cir. 1979). The United States will provide the defendants with advance copies of the summaries it intends to use at trial according to the Court's scheduling order.

### (10) Motion to Allow Use of Exhibits in Opening Statements

The United States requests the Court's permission to display trial exhibits in its opening statement that it expects will be admitted at trial. As the Court will likely instruct the jury, an opening statement is not evidence in itself, but serves "to give the jury the broad outlines of

13

the case to enable the jury to comprehend it." *Government of the Virgin Islands v. Turner*, 409 F.2d 102, 103 (3d Cir.1969). In that vein, a discussion of the evidence is permissible, as long as the opening statement avoids references to matters that cannot be proved or would be inadmissible. *See Maxworthy v. Horn Electric Service, Inc.*, 452 F.2d 1141, 1143-44 (4th Cir. 1972). Even conclusory demonstratives aids may be used in opening. *See, e.g., United States v. De Peri*, 778 F.2d 963, 978–79 (3d Cir. 1985) (allowing a demonstrative chart describing the alleged conspiracy, over objection that the conspiracy had not yet been proven).

The United States has a good faith basis to believe that each of the documents, records, charts, and other exhibits it intends to present in opening will be admitted during the trial, and submits that discussion of those items during opening statement would assist the jury's comprehension of the trial. The United States will confer with defense counsel in advance of trial. Should the defense object, the United States will seek a preliminary determination of admissibility before using the exhibits.

### (11) Motion to Allow Attorney-Conducted Voir Dire

The United States requests that the parties be allotted time for attorney-conducted voir dire. Finding an unbiased jury in this case will take care. This matter has received widespread pretrial publicity beginning even before the indictment was returned; media attention is unlikely to wane in the weeks preceding trial and as the trial proceeds. In addition, as detailed in a separate motion, Hunter has made numerous public statements—including, most recently, after his wife and codefendant Margaret Hunter pleaded guilty—asserting that his prosecution is politically motivated, which have the potential to inflame jurors' emotions. Allowing the parties to conduct voir dire will help to uncover biases and ensure the jury's impartiality. *See, e.g., United States v. Inzunza*, No. 03CR2434 JM, 2005 WL 8160881, at *9 (S.D. Cal. Mar. 10, 2005) (Miller, J.) (granting motion to conduct attorney-conducted voir dire in case involving "pretrial publicity"); *United States v. Bales*, No. 3:11-CR-147, 2012 WL 6566696, at *2 (N.D. Ind. Dec. 17, 2012) (granting additional time for attorney-conducted voir dire in case involving "political overtones, and extensive pretrial publicity"); *United States v.*

*Jayasundera*, No. CIV.A. 11-20078, 2011 WL 6307865, at *1 (E.D. Mich. Dec. 15, 2011) (attorney-conducted voir dire appropriate where it will "assist the Court or counsel in selecting a fair and impartial jury"). If the Court grants this request, the United States requests that each party be allotted the same amount of time.

### (12) Motion to Preclude Certain Defense Evidence

At this time, Hunter has not provided any reciprocal discovery. The United States, on the other hand, has provided and will continue to produce discovery, including reports of witness interviews and other Jencks Act materials, well in advance of trial and significantly above and beyond any obligation set forth in the Federal Rules or the Constitution. And as described more below, the United States has proposed a schedule for the exchange of pre-trial disclosures well in advance of trial.

This Court should preclude evidence the defense seeks to introduce at trial if it is not produced to the United States promptly and in advance of trial. Both the Supreme Court and the Ninth Circuit have upheld the exclusion of evidence when the defense has failed to produce discovery prior to trial. *See Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) (excluding evidence that was not identified by the defendant until the middle of trial); *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (upholding the exclusion of defense exhibits because they were not disclosed until after the jury was sworn in).

The United States also requests that the Court order the defendant to comply before trial with Federal Rule of Criminal Procedure 26.2, which requires the production of prior statements of all witnesses other than the defendant. In particular, if the defense has met with witnesses and obtained statements and information, the United States is entitled to such material under Rule 26.2. The United States has turned over agents' notes of interviews, and expects that Hunter will turn over the notes of his defense team, including investigators or paralegals. The United States will ask this Court to exclude any testimony of witnesses whose prior statements have not been provided to the United States in advance of trial according to the schedule ordered by this Court.

Rule 16(b)(1)(C) and Federal Rules of Evidence 702, 703, and 705 also require defendants to provide notice of and disclosures relating to expert witnesses, including written summaries describing the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. To date, Hunter has not provided notice of any expert witness, any summaries of testimony, or reports by expert witnesses. Accordingly, unless that information is produced promptly, the United States seeks an order pursuant to Fed. R. Crim. P. 16(d)(2)(C) precluding the defense from offering any expert testimony at trial.[8]

### (13) Motion for Scheduling Order Governing Pre-Trial Disclosures

In light of the length of the trial, the number of witnesses, and the volume of exhibits the United States anticipates will be introduced at trial, the early exchange of pre-trial disclosures by both sides will help avoid surprise and delay in the long-scheduled September 10 trial. Recognizing this, as early as August 31, 2018, the United States proposed to Hunter that the parties agree to the early exchange of pre-trial disclosures. Although the United States attempted to renew this discussion on May 30, 2019, and again on June 13, 2019, Hunter has yet to weigh in with any objections or alternative proposals.

Accordingly, the United States moves for an Order from the Court setting out dates and deadlines for the parties' exchange of pre-trial disclosures, as follows:

a. All available reciprocal discovery provided by the defense to the United States eight weeks in advance of trial;

b. Witness lists, and materials subject to 18 U.S.C. § 3500, Rule 26.2 and *Giglio* exchanged six weeks in advance of trial;

c. Exhibit lists and summary charts exchanged four weeks in advance of trial;

---

[8] If the Court determines that the defendants may introduce expert testimony, the United States requests a hearing to determine the expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). *See United States v. Rincon*, 11 F.3d 922 (9th Cir. 1993) (affirming exclusion of defendant's proffered expert testimony).

  d. Marked exhibits exchanged two weeks in advance of trial; and

  e. Exhibits to be used in opening statements exchanged three days in advance of trial.

In the event this Court loses jurisdiction as the result of an interlocutory appeal of any pre-trial rulings, *see United States v. Hickey*, 580 F.3d 922, 926-27 (9th Cir. 2009), these timetables would be suspended.

## III.
## CONCLUSION

  For the foregoing reasons, the United States respectfully requests that this Court grant its motions in limine.

DATED: June 24, 2019

             Respectfully submitted,

             DAVID D. LESHNER
             Attorney for the United States

             *s/ Bradley G. Silverman*
             EMILY W. ALLEN
             W. MARK CONOVER
             PHILLIP L.B. HALPERN
             BRADLEY G. SILVERMAN
             Assistant U.S. Attorneys