DAVID D. LESHNER
Attorney for the United States
Acting under Title 28, U.S.C. Section 515
EMILY W. ALLEN (Cal. Bar No. 234961)
W. MARK CONOVER (Cal. Bar No. 236090)
PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
BRADLEY G. SILVERMAN (D.C. Bar No. 1531664)
Assistant United States Attorneys
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-6345
Email: bradley.silverman@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 18CR3677(1)-W |
|---|---|
| Plaintiff, | |
| v. | **MOTION TO EXCLUDE IMPROPER EVIDENCE AND ARGUMENT CONCERNING HUNTER'S CHARACTER AND GOOD ACTS** |
| DUNCAN D. HUNTER, | |
| Defendant. | |

As Federal Rule of Evidence 404 spells out, evidence of a defendant's character—good or bad—is typically prohibited in federal trials. While certain exceptions apply, the Rules make clear that character evidence must be introduced only in appropriately limited means. By this motion, the United States moves to exclude evidence and argument concerning defendant Duncan D. Hunter's ("Hunter" or "the defendant") good character, including his military service and his volunteerism. Such evidence is inadmissible under the Federal Rules of Evidence because it is irrelevant to any fact of consequence in this case (Rule 401), does

not relate to any pertinent trait (Rule 404) or element of the charged crimes (Rule 405), and would be designed only to appeal to the jury's emotion (Rule 403).

## I.
## FACTS

Hunter is charged with crimes relating to his and his wife's improper conversion of campaign funds to personal use. Over the course of several years beginning in 2009, the Hunters used more than $250,000 belonging to the Duncan D. Hunter for Congress Campaign Committee and donated by constituents and supporters to pay for a wide variety of personal expenses that they could not otherwise afford. These include family vacations to Italy, Hawaii, Arizona, and Idaho; private school tuition; family dental work; theater tickets; and domestic and international travel for almost a dozen relatives. The Hunters also spent tens of thousands of dollars on more mundane purchases, including fast food, movie tickets, golf outings, video games, coffee, groceries, home utilities, and expensive meals. To conceal the theft, they filed false or misleading reports with the Federal Election Commission describing the payments as legitimate campaign expenses.

Hunter may seek to combat the evidence of his misdeeds by attempting to introduce evidence of his past good conduct and character. Long before the conspiracy began, when Hunter was just shy of his 25th birthday, he joined the United States Marine Corps. Hunter has described that he quit his job and joined the Marine Corps shortly after the September 11, 2001 terrorist attacks. *See Biography*, Congressman Duncan Hunter (available at https://hunter.house.gov/biography). He graduated in March 2002 from Officer Candidates School (OCS) at Marine Corps Base, Quantico, Virginia, and was commissioned as a second lieutenant. As Hunter describes in his House of Representatives biography:

> Over the course of his service career, Hunter served three combat tours overseas: two in Iraq and one in Afghanistan. In 2003, Hunter deployed to Iraq with the 1st Marine Division. Hunter completed his second tour in 2004, where he and his fellow Marines were at the center of combat operations in Fallujah, Iraq.

*Id*. Hunter received a number of medals and commendations for his service. He was honorably discharged from active duty in September 2005 at the rank of first lieutenant, but continued serving as a reserve officer, and in 2006 he was promoted to the rank of Captain. In 2007, Hunter was recalled to active duty and deployed to Kabul, Afghanistan. Throughout his military career, Hunter's service records show that he received glowing remarks from his commanding officers. In recent years, Hunter has advocated for various veterans' causes, and he has performed volunteer service for nonprofit organizations.

## II.
## ANALYSIS

Evidence of Hunter's particular good acts, service, patriotism, awards, devotion to his family, or instances of commendable behavior are not relevant and therefore not admissible under any theory. Evidence may only be admitted if it tends to make a fact of consequence to the case more (or less) probable than it would be without the evidence. Fed. R. Evid. 401. The facts of consequence in this trial relate to the circumstances under which Hunter and his wife spent funds belonging to Hunter's campaign between 2009 and 2016. Certainly, wholly unrelated matters such as Hunter's performance on military duty are not relevant to the questions before the jury.[1]

"For the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes." *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014). Such evidence is irrelevant and its use at trial is inappropriate. *See United States v. Dobbs*, 506 F.2d 445,

---

[1] In the event Hunter testifies, some amount of background information, including some description of his military or volunteer service, would be appropriate. *See United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (in mail theft case where defendant postal employee testified, some amount of testimony about his college education and service in the U.S. Marine Corps "was properly received as background. It told the jury something about the defendant as a person, and his experience in life.").

447 (5th Cir. 1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant").

Evidence of a defendant's character for a "pertinent trait," on the other hand, may be admissible provided it adheres to the strictures of Rules 404 and 405. *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) ("[I]t is familiar ground that while a criminal defendant can put character in issue, the evidence can concern only a 'pertinent trait of character,' Fed. R. Evid. 404(a)(1), and even then may be excluded if 'its probative value is substantially outweighed by the danger of unfair prejudice[.]'"). Because Hunter is charged with embezzlement and falsifying reports, his truthfulness and veracity are "pertinent traits" that are implicated by the specific crimes charged. On the other hand, Hunter's courage, patriotism, bravery, or community spirit are "hardly 'pertinent' to the crimes of which [he] is accused," and as a result such evidence must be excluded. *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) ("proof of commendations received… in military service and as a police officer" properly excluded as not pertinent to the charged perjury and fraud conspiracy charges). For the same reasons, Hunter cannot offer evidence designed only to show that he is "a dedicated family" man, as that trait is not pertinent to the charges against him either. *See Harris*, 491 F.3d at 447 (barring evidence designed "purely or mainly to cast [defendant] in the sympathetic light of a dedicated family man").

Even within these constraints, Hunter may only offer evidence of pertinent traits through character witness testimony about his reputation or the witness's opinion. Fed. R. Evid. 405(a). He may not offer evidence of specific instances of conduct consistent with his character—even if the traits he aims to demonstrate are those of truthfulness and veracity— because those traits are not essential elements of the charged crimes.[2] Fed. R. Evid. 405(b);

---

[2] Were Hunter to offer commendations, awards, medals, or other such evidence of specific instances of good conduct, he would also have to overcome significant hearsay hurdles. *See United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987) (letters of commendation concerning defendant, a lieutenant in the naval security police, properly excludable on hearsay grounds).

*see French v. United States*, 232 F.2d 736, 740 (5th Cir. 1956) (district court's "refusal to admit [defendant's] service record in the United States Army as evidence of his good character" was proper "because it was not permissible to show good character by evidence of particular and specific facts, such as battle citations and the awarding of the Purple Heart"); *United States v. Warren*, No. CRIM 10-154, 2010 WL 4668345, at *4 (E.D. La. Nov. 4, 2010) (photos of rescue missions in the wake of Hurricane Katrina and police commendations are specific instances of conduct and were therefore inadmissible in obstruction and false statements trial).

Finally, any evidence Hunter might offer to demonstrate prior good acts cannot have sufficient probative value to outweigh the significant danger of unfair prejudice and appeal improperly to the jury's emotions. *See id.* at *5 (finding that even if police commendations and photos of hurricane rescue operations were relevant and otherwise admissible, their probative value would be substantially outweighed under Rule 403). The evidence is therefore also inadmissible under Rule 403.

### III.
### CONCLUSION

For the foregoing reasons, this Court should exclude evidence and argument concerning Hunter's character traits that are not pertinent to the charges of embezzlement and false statements.

DATED: June 24, 2019

Respectfully submitted,

DAVID D. LESHNER
Attorney for the United States

*s/ Bradley G. Silverman*
EMILY W. ALLEN
W. MARK CONOVER
PHILLIP L.B. HALPERN
BRADLEY G. SILVERMAN
Assistant U.S. Attorneys