DAVID D. LESHNER
Attorney for the United States
Acting under Title 28, U.S.C. Section 515
EMILY W. ALLEN (Cal. Bar No. 234961)
W. MARK CONOVER (Cal. Bar No. 236090)
PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
BRADLEY G. SILVERMAN (D.C. Bar No. 1531664)
Assistant United States Attorneys
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-9738
Email: emily.allen@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18CR3677(1)-W |
| Plaintiff, | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT** |
| v. | |
| DUNCAN D. HUNTER, | |
| Defendant. | |

    Evidence of the defendant Duncan D. Hunter's ("Hunter" or "the defendant") financial circumstances is properly alleged in the indictment because it is relevant and material to Hunter's motive and intent to embezzle campaign funds, his knowledge that Margaret Hunter was doing the same, and his motive and intent to enable and facilitate her fraudulent purchases. The defendant's motion to strike surplusage from the indictment (Doc. No. 42) (filed Jun. 24, 2019) (hereinafter, "Def. Mtn.") must therefore be denied.

# I.

# STATEMENT OF FACTS

The indictment in this case alleges a series of objective facts relating to the Hunters' campaign and personal finances throughout the period of the charged conspiracy and related crimes. As background to the description of the conspiracy and related crimes, the indictment sets out aspects of the Duncan D. Hunter for Congress campaign committee's structure and management, including the paid and volunteer staff, the office locations, and the various bank accounts the organization maintained. Indictment (Doc. No. 1) at 2-3. The indictment describes Hunter's control over the expenditure of campaign funds, "including through Campaign debit cards, credit cards, and reimbursements for funds expended on behalf of the campaign." *Id*. at 2. As further background to the conspiracy, the indictment also describes the Hunters' personal financial circumstances, setting out details about their joint checking account (the primary family bank account), as well as a joint savings account and Hunter's separate accounts into which he made small deposits each month. *Id.* at 6. The indictment continues by describing the minimal funds available to the Hunters in these personal accounts during the relevant period, as well as their other liabilities and assets. *Id.* In addition, the overt acts include specific allegations of Hunters' lack of available personal funds at specific times—when they opted instead to use campaign funds to pay for personal expenses. *See*, *e.g.*, *id*. at 22, ¶67 (describing that on the same day Hunter used campaign funds to buy a pair of shorts, his family bank account had a negative balance "and had incurred six insufficient funds fees, one overdraft fee, and one returned item fee (totaling $253) during the prior six days.").

The United States intends to introduce evidence supporting these allegations to demonstrate Hunter's motive and intent to commit the charged offenses, his knowledge that Margaret Hunter was also using campaign funds to benefit their family, and his motive for enabling her—over numerous objections and warnings from his staff—to continue misusing campaign funds for the family's benefit. The most salient facts the United States must establish, and that Hunter will dispute, are that Hunter *knew* about the personal expenditures

of campaign funds, *intended* to use campaign funds for his and his family's benefit, and *agreed* with his wife to allow the theft to continue for many years. As set forth in detail in the United States' Motion to Admit Evidence of Hunter's Personal Financial Circumstances (Doc. No. 48) (filed Jun. 24, 2019), evidence that the Hunters could not afford to buy the things they wanted with their own money—and that he knew they could not afford them—is extremely probative of Hunter's knowledge, intent, and motive to instead raid his campaign's money.

## II.

## ANALYSIS

The purpose of a motion to strike under Federal Rule of Criminal Procedure 7(d) is to protect a defendant against "prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Terrigno*, 838 F.2d 371, 373 (1988) (citation and quotation marks omitted). But to be stricken, language in the indictment must be both "prejudicial or inflammatory" *and* irrelevant or immaterial. *Id.* Allegations that address a defendant's motive to commit the charged crimes are relevant and material to the case. Courts will therefore deny motions to strike even prejudicial allegations in an indictment when they relate to the defendant's motive. In *Terringo*, for example, the Ninth Circuit upheld the court's refusal to strike allegations that, although "somewhat prejudicial, [we]re all relevant and material to the charge of embezzlement because the Government had to prove that [the defendant] had an intent to convert money belonging to an agency of the United States." *Id.*

In *United States v. Caruso*—a case the defendant cites in support of his motion—the district court evaluated and in fact rejected a similar request to strike what the defendant called "surplusage." 948 F.Supp. 382, 391 (D.N.J. 1996). The indictment in that case included a reference "to the defendant's '$1.7 million home in Bryn Mawr, Pennsylvania[;]'" the defendant argued that was designed to make him seem unsympathetic by "tarring him" as wealthy and greedy. *Id*. But the government intended to introduce evidence about the defendant's expensive home because that was the "ultimate destination for defrauded funds"—that is, it provided a motive to commit the charged fraud. *Id*. at 392. The court found the language appropriate and "deline[d] to strike the language[.]" *Id.* (noting also that

3

concerns about prejudice can be addressed through jury instruction that an indictment does not prove any inference of guilt).

In this case, evidence of Hunter's personal financial circumstances, including his minimal assets, frequent overdraft fees, and the full scope of the fees incurred throughout the conspiracy, is properly alleged in the indictment because the evidence is highly probative of Hunter's motive and intent to embezzle campaign funds, his knowledge that his coconspirator wife was doing the same, and his motive and intent to enable and facilitate her fraudulent purchases.  In his motion, Hunter even acknowledges that evidence of his personal financial circumstances is "designed to suggest that Hunter had a motive for committing the alleged offenses." Def. Mtn. (Doc. No. 42-1) at 4.  But he then inexplicably asserts that this very same evidence of motive is "not relevant to any element of the charged offenses." *Id*.  Hunter is mistaken; his motive is highly probative of his knowledge and intent to commit the crimes. Knowledge and intent are essential elements of the charged crimes, and they are the very facts in dispute in this case.

Hunter takes issue with the indictment's allegation that "the Hunters knew that many of their desired purchases could only be made by using campaign funds[,]" Indictment at 6, arguing that this statement of Hunter's knowledge is "conclusory" and speculative.  Def. Mtn. (Doc. No. 42-1) at 5.  But the indictment is the proper forum for allegations of misconduct, and must include assertions of Hunter's state of mind in a case where intent and knowledge are elements of the charged crimes.  There is nothing "inflammatory" about a charging document making allegations about the defendant's state of mind in committing the very crimes he is charged with committing.

Finally, the indictment's objective and entirely factual statement that Hunter used separate personal checking and savings accounts "for his own personal use" is merely descriptive of the spending the evidence shows from those accounts in Hunter's sole name. The distinction between "personal" spending and campaign- or congressional-related spending will be a constant theme throughout the trial, and will constitute a large part of the

jury's determination in this case. This phrasing carries no undue prejudice and will send no "subliminal" messages to the jury. Hunter's concern is unwarranted.

### III.
### CONCLUSION

For the foregoing reasons, the defendant's motion to strike surplusage from the indictment should be denied.

DATED: June 27, 2019

Respectfully submitted,

DAVID D. LESHNER
Attorney for the United States

*s/ Emily W. Allen*
EMILY W. ALLEN
W. MARK CONOVER
PHILLIP L.B. HALPERN
BRADLEY G. SILVERMAN
Assistant U.S. Attorneys