DAVID D. LESHNER
Attorney for the United States
Acting under Title 28, U.S.C. Section 515
EMILY W. ALLEN (Cal. Bar No. 234961)
W. MARK CONOVER (Cal. Bar No. 236090)
PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
BRADLEY G. SILVERMAN (D.C. Bar No. 1531664)
Assistant United States Attorneys
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-9738
Email: emily.allen@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>DUNCAN D. HUNTER,<br><br>  Defendant. | Case No. 18CR3677(1)-W<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY AND MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS** |

The United States has provided and will continue to provide broad discovery in this case, well beyond its obligations under the law. In his Motion for Discovery and Motion for Leave to File Additional Motions (Doc. No. 41) (filed Jun. 24, 2019), defendant Duncan D. Hunter ("Hunter" or "the defendant") asks for a host of discovery materials that have already been produced early on in this case. The United States has offered to make other materials, such as Jencks Act materials, available to the defense long before the trial is set to begin. For the reasons that follow, the defendant's motion should be denied.

1

# I.

# STATEMENT OF FACTS

On August 21, 2018, Hunter and his wife and coconspirator Margaret Hunter[1] were indicted and charged with one count of conspiracy against the United States, in violation of 18 U.S.C. § 371; 43 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; 13 counts of falsification of records related to campaign finance, and three counts of prohibited use of campaign contributions, in violation of 52 U.S.C. §§ 30109(d) and 20114(b)(1).

On August 29, 2018, upon the parties' joint motion, this Court entered a Protective Order regarding discovery. (Doc. No. 18.) Just two days later, August 31, 2018, the United States delivered a vast initial production of discovery to the defendant, along with indexes detailing each and every category of the materials. To the extent possible, these records were provided in native, text-searchable form, such that the records could be loaded and reviewed in any number of document review platforms. Throughout the pretrial period, the United States has continued to provide additional discovery to the defense as materials become available. On several occasions, the United States has offered assistance to defense counsel in searching through the discovery and ensuring that the materials were contained in a format useable by the defendant's preferred document vendor.

The discovery materials provided to date include, among other things, email correspondence from internet service providers, text message communications, financial records, business records from a host of third-party vendors, social media correspondence and photos, evidence seized through a number of search warrants (including at the Hunters' home and campaign headquarters and his district office), agents' reports (and handwritten notes) of interviews, surveillance photographs, and ex parte pleadings (including sealed search warrant affidavits).

---

[1] On June 13, 2019, Margaret Hunter entered a guilty plea to Count One of the indictment, pursuant to a plea agreement.

## II.

## ARGUMENT

The United States has complied and will continue to comply with its Constitutional and statutory discovery obligations, including Rule 16 of the Federal Rules of Criminal Procedure ("Rules"); the Jencks Act, 18 U.S.C. § 3500 *et seq.*; *Brady v. Maryland*, 373 U.S. 83 (1963); and *Giglio v. United States*, 405 U.S. 150 (1972). The United States has provided broad and early discovery, far beyond any legal requirement. Therefore, the United States respectfully requests that the Court decline the defendant's request for orders compelling specific discovery by the United States at this time.

As to each category of discovery the defendant requests, the United States has provided or will provide to the defense the requested materials, as follows:

(A) <u>Oral, Written, or Recorded Statements</u>. Pursuant to Rule 16(a)(1)(A) and (B), the United States has provided and will continue to disclose any relevant written or recorded statements of the Defendant, or the substance of any relevant oral statements, as provided by the Rules. These include reports of interviews with the Federal Bureau of Investigation as well as recordings of interviews where available. On occasion, the United States has even provided recordings and transcripts of public statements Hunter has made to the news media relating to this case.

(B) <u>Criminal Record</u>. The defendant's criminal history report has previously been provided to the defendant.

(C) <u>Pre-trial Disclosure of 404(b) Evidence</u>. At this time, the United States does not intend to introduce evidence of "other acts" pursuant to Rule 404(b). Should that change, however, the United States will provide notice to the defense at least three weeks in advance of trial or as ordered by the Court, but reserves the right to supplement that notice in response to evidence or argument advanced by the defense at trial.

(D) <u>Description of Alleged Prior or Subsequent Bad Acts Both Charged and Uncharged</u>. To the extent the United States is aware of prior or subsequent "bad acts" it intends to introduce at trial, materials relating to those acts has previously been provided to

the defendant. In addition, the United States provided descriptions of some evidence it intends to introduce at trial as part of the charged conduct in its pretrial motions filed on June 24, 2019. *See*, *e.g.*, Motion to Admit Evidence of Use of Campaign Funds to Pursue Personal Relationships (Doc. No. 49).

(E) <u>Production of Evidence Seized and Inspection of All Tangible Objects</u>. The United States has previously produced evidence seized through a number of search warrants issued by this court, as well as the sealed affidavits in support of those warrants. In addition, the United States has produced evidence obtained from cooperating witnesses and through other sources, including subpoenas. The United States has not only afforded the defendant the opportunity to inspect these materials, but has gone to lengths to copy, index, and organize these materials in a way that makes their review most convenient for the defense.

(F) <u>Review of All Personnel Files of Each Government Agent Involved in the Case</u>. Hunter requests the United States review the individual personnel files of each agent involved in this case for impeachment material or material favorable to the defense. The United States will comply with its obligations under *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991). Any information the United States receives regarding potential impeachment material of anticipated witnesses will be disclosed to defense in a timely manner. However, to the extent the defendant seeks personnel files of non-witness agents who are simply "involved" in the investigation, this request is overbroad and not consistent with any discovery obligation known to the United States.

(G) <u>Preservation of Evidence</u>. The United States does not object to the preservation of evidence in its possession and control, and has requested that government agents maintain rough notes or seized physical evidence relating to the investigation of this case.

(H) <u>Summaries of All Testimony of Experts the Government Intends to Use in Its Case-in-Chief</u>. The United states has and will continue to comply with its expert notice requirements under FRCP 16(a)(1)(G). To that end, disclosure of any potential expert's qualifications and bases for his or her opinion will be provided in compliance with Federal

Rules of Evidence 702, 703, and 705. The United States requests that any expert notice by either party be exchanged eight weeks in advance of trial.

(I) <u>*Giglio* Material</u>. To the extent any material discoverable under *Giglio* has not already been produced, the United States has proposed that this material be produced at the exchange of witness lists six weeks in advance of trial, or as ordered by the Court. *See* United States' Motions in Limine (Doc. No. 46) (filed Jun. 24, 2019), at p.16.

(J) <u>All Information Regarding Informants and Cooperating Witnesses</u>. As set forth above, the United States has produced and will continue to produce statements of witnesses relating to this case, and will provide the defendant with additional information relating to the Jencks Act and *Giglio* upon the exchange of witness lists in advance of trial.[2]

(K) <u>Jencks Act Material</u>. As noted above, to the extent any material discoverable under Jencks Act has not already been produced, the United States has proposed that this material be produced at the exchange of witness lists six weeks in advance of trial, or as ordered by the Court.

(L) <u>All Statements by Both Charged and Uncharged Co-Conspirators</u>. The indictment charges the defendant and his sole coconspirator, Margaret Hunter, with, among

---

[2] To the extent the defendant seeks disclosure of information relating to non-witness government informants, that request is overbroad. It is well settled that the "government has a qualified privilege to withhold from disclosure the identity of persons who furnish information" to law enforcement. *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2001) (collecting cases). Generally, an informant's identity need only be revealed if it would "be relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60-61. The defendant "bears the burden of demonstrating the need for disclosure, and a mere suspicion that the information will prove helpful will not suffice." *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990) (citations omitted). Even where the defendant "makes a minimal threshold showing that disclosure would be relevant to at least one defense," the district court nevertheless "must hold an in-camera hearing" to balance the defendant's and government's interests in disclosure." *Henderson*, 241 F.3d at 645 (internal quotation marks omitted).

other things, conspiracy to convert campaign funds to personal use. Margaret Hunter pled guilty to the conspiracy. *See* Margaret Hunter Plea Agreement (Doc. No. 34) (filed June 13, 2019). The United States has produced coconspirator statements in discovery, and will continue to do so as they become available. In addition, the United States has provided a detailed summary, along with exhibits, of the types of coconspirator statements it will seek to introduce at trial pursuant to Rule 801(d)(2)(E). *See* United States' Motion to Admit Coconspirator Statements and Spousal Testimony (Doc. No. 47) (filed Jun. 24, 2019).

(M)  Government's Compliance with the Ogden Memorandum. As described above and detailed in well-organized indexes and in text-searchable form, the United States has provided the defendant with voluminous discovery, including reports by law enforcement, interviews with witnesses and others, business records, and other documents not required to be produced by any discovery rule. In an internal memorandum to Department of Justice employees, the then-Deputy Attorney General issued "guidance for prosecutors regarding criminal discovery." This so-called "Ogden Memo" created no new rights or obligations relating to discovery, but simply set forth recommended steps for prosecutors to "consider thoroughly how to meet their discovery obligations." *See* Memorandum for Department Prosecutors, Jan. 4, 2010, *available at* https://www.justice.gov/archives/dag/memorandum-department-prosecutors; *see also United States v. Caceres*, 440 U.S. 741, 755 (1979) (declining to require adherence to internal executive branch regulations in criminal prosecution).

(N)  Information that May Result in a Lower Sentence. The United States has provided and will continue to provide information as required under *Brady*, including materials relating to the defendant's sentence.

(O)  Governments Witness List. The United States has on multiple occasions attempted to solicit the defendant's agreement to exchange witness lists in advance of trial, and has proposed doing so six weeks in advance of trial. *See* Motions in Limine, at 16. The defense has not responded to any of those inquiries, nor has the defendant objected to the proposed timeline for disclosures. The United States has asked the Court for a pretrial

disclosures scheduling order to address this topic. To the extent the defendant seeks a "list of percipient witnesses to the events in the indictment, who the Government does not intend to introduce at trial," this request is unnecessary, unwieldy, and unwarranted in this case. The defense is not entitled to any such list, and *United States v. Cadet* does not require any such disclosure. 727 F.2d 1453, 1469 (9th Cir. 1984) (upholding district court's discretionary order to produce names of "witness[es] to a crime whose testimony may be exculpatory"). In any event, the United States has produced reports of interviews with any number of witnesses, including a number of individuals who have been interviewed by federal agents and the United States at this time may not intend to call to testify at trial.

(P) <u>Statements of All Witnesses the Government Intends to Use at Trial in Its Case-in-Chief</u>. The United States has produced and will continue to produce reports of interviews and statements of witnesses. It has also voluntarily produced notes taken by government agents during those interviews.

(Q) <u>All Impeachment Materials and Information of Government's Witnesses</u>. As noted above, to the extent any material discoverable under *Giglio* or *Brady* has not already been produced, the United States has proposed that this material be produced at the exchange of witness lists six weeks in advance of trial, or as ordered by the Court.

(R) <u>Names of Favorable Witnesses and Any Statements Relevant to his Defense</u>. As noted above, the United States has produced and will continue to produce materials pursuant to *Brady*, including favorable witness statements.

(S) <u>Subpoenas, Intercepts, Warrant Information, Including Warrant Affidavits, and Evidence Related to this Case</u>. As stated previously, the United States has provided search warrants and affidavits, evidence seized pursuant to those searches, and other court-sanctioned process, including applications and evidence collected pursuant to 18 U.S.C. § 2703, to the defense.

(T) <u>Residual Discovery and All Other Relevant Material</u>. As noted, the United States has complied and will continue to comply with its discovery obligations in this case.

The United States will continue to provide the defendant with discovery materials as they become available.

(U)   <u>Exculpatory Evidence</u>. As noted above, the United States has produced and will continue to produce exculpatory materials pursuant to *Brady*.

### III.
### CONCLUSION

For the reasons set forth above, this Court should deny the defendant's motion for discovery. To the extent the defendant is given leave to file further motions, the United States requests that it be permitted to file further motions on the same grounds.

DATED: June 27, 2019

Respectfully submitted,

DAVID D. LESHNER
Attorney for the United States

*s/ Emily W. Allen*
EMILY W. ALLEN
W. MARK CONOVER
PHILLIP L.B. HALPERN
BRADLEY SILVERMAN
Assistant U.S. Attorneys