Gregory A. Vega, Esq. (CABN 141477)
Ricardo Arias, Esq. (CABN 321534)
Philip B. Adams, Esq. (CABN 317948)
SELTZER CAPLAN McMAHON VITEK
750 B Street, Suite 2100
San Diego, California  92101-8177
Telephone: (619) 685-3003
Facsimile: (619) 685-3100
Email: vega@scmv.com; arias@scmv.com
padams@scmv.com

Attorneys for Defendant DUNCAN D. HUNTER

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

# (HON. THOMAS J. WHELAN)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DUNCAN D. HUNTER,<br><br>    Defendant. | Case No.  18-CR-3677-W<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF HUNTER'S PERSONAL FINANCIAL CIRCUMSTANCES**<br><br>DATE:             July 1, 2019<br>TIME:             10:00 a.m.<br>COURTROOM:  3C<br>JUDGE:           Hon. Thomas J. Whelan |

Defendant DUNCAN D. HUNTER ("Mr. Hunter"), by and through his attorneys, Gregory A. Vega, Ricardo Arias, and Philip B. Adams, hereby submits this response in opposition to the Government's motion to admit evidence of Hunter's personal financial circumstances.

## I.      INTRODUCTION

The Court should deny the Government's motion to admit evidence of Hunter's personal financial circumstances ("Motion") because evidence of the Hunters' poor financial circumstances is not relevant to whether Mr. Hunter converted campaign funds to his personal use, and the high danger of unfair prejudice substantially outweighs any minimal probative value it may provide.

## II. RESPONSE IN OPPOSITION

### A. Evidence Showing the Hunters' Impecunious Financial Circumstances Has Negligible Probative Value

Evidence demonstrating the Hunters' chronic financial woes have little probate value precisely because they remained in such poor financial condition throughout the duration of the alleged conspiracy, with no abrupt or unexplained change in circumstances for the better. *See United States v. Mitchell*, 172 F.3d 1104, 1108 (9th Cir. 1999). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which cannot meet this standard is inadmissible. Fed. R. Evid. 402. "To determine whether evidence of impecuniousness has relevance, and that its probative value is not outweighed by the risk of unfair prejudice, it is necessary to consider the facts of the particular case." *Mitchell*, 172 F.3d at 1108.

The Government cites *United States v. Mitchell* in support of its claim that "[f]or over a century, the Ninth Circuit has recognized that "evidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime of financial gain." *Id.* (quoting *United States v. Feldman*, 788 F.2d 544, 557 (9th Cir. 1987). The Government's reliance on *Mitchell*, however, is misplaced. In *Mitchell*, the court directly considered the language cited above, yet determined that evidence of the bank robbery defendant's habitually dire financial circumstances was of little probative value precisely because the defendant was regularly in such poor financial circumstances. Noting that the "living beyond his means" language from *Feldman* cited by the Government was actually a quote from *United States v. Jackson,* 882 F.2d 1444 (9th Cir.1989). The *Mitchell* court examined the factual circumstances in *Jackson* and determined that the *Jackson* court admitted the financial circumstances evidence was because it demonstrated an "abrupt change of circumstances" for the defendant. Indeed, the court held the "abrupt change in circumstances" made the evidence probative. *Id.* at

1108. In contrast, the defendant in *Mitchell:*

> [w]as chronically overdrawn, before and after the robbery, whether he had cash or not, his overdraft did not show lack of money to pay the rent. Nor did the evidence establish desperation. There is no reason why a man who has maintained an empty, overdrawn checking account would suddenly need to rob one bank to cover his small overdraft at another.

*Id*. at 1109. Thus, in light of the fact that the proffered evidence demonstrated no "abrupt change" in circumstances for the defendant, the *Mitchell* court determined the evidence of the defendant's impecunious financial circumstances was of "negligible probative value." *Id.* at 1100.

Here, as in *Mitchell*, the Hunters' habitually impecunious financial circumstances have negligible probate value because the evidence fails to demonstrate any "abrupt change in circumstances" for the better. *See, Mitchell*, 172 F.3d at 1108-1110. Notwithstanding the Government's attempt to portray Mr. Hunter as a defendant "living beyond his means" akin to the defendant in *Jackson*, it overlooks the fact that the *Jackson* court only admitted evidence of the defendant's financial circumstances because the defendant's sudden access to substantial sums of cash "showed an unexplained and abrupt change in [] status for the better." *Jackson,* 882 F.2d at 1449-50. As the Government concedes, however, the "Hunters remained in a state of continuous personal debt" from Mr. Hunter's very first year in Congress, "had less than $1,000 available in any one bank account," and regularly "overdrew their bank account." Thus, comparing the Hunters' financial circumstances to the circumstances of the *Jackson* defendant and the *Mitchell* defendant, the Hunters' circumstances more closely align with the "chronically overdrawn" and impecunious financial circumstances of the *Mitchell* defendant than the "abrupt change of circumstances" evidenced by the suddenly cash flush defendant in *Jackson. See, Mitchell*, 172 F.3d at 1108-1110. Accordingly, the Court should view the evidence of the Hunters' personal financial circumstances similarly to the view expressed by the *Mitchell* court under such circumstances and treat the evidence as having negligible probative value. *Id.*

Moreover, even if the Court determines this evidence has slight probative value, it should still deny the Motion on the grounds that the high danger of unfair prejudice substantially outweighs the minimal probative value under Rule 403. *See, Id.*; *See also United States v. Bailey* 696 F.3d 794, 799 (9th Cir. 2012).

**B.    The Minimal Probative Value of The Hunters Poor Financial Condition is Substantially Outweighed by the Risk of Unfair Prejudice.**

Under Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the crime charged.*" *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) (quoting *United States v. Yazzie*, 59 F.3d 807, 811 (9th Cir.1995)) (emphasis in original) Where the Government seeks to admit evidence of slight probative value "it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) (quoting *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir.1992)).

Here, the minimal probative value of the evidence showing Mr. and Mrs. Hunters' financial circumstances is substantially outweighed by the danger of unfair prejudice to Mr. Hunter because presenting the jury with such evidence is far more likely to negatively affect the jury's attitude about Mr. Hunter than assist the jury with determining whether he converted campaign funds to his personal use. In addition, the evidence threatens to confuse the jury about the actual expenditures at issue in this case by focusing their attention on perfectly valid (if ill-advised) expenditures incurred by the Hunters using non-campaign funds. Furthermore, the voluminous nature of all the

Hunter's personal bank records over a six year period is needlessly cumulative and risks wasting substantial time by distracting the jury with information that is ultimately not relevant to determining whether Mr. Hunter used campaign funds for personal purposes.

Thus, just as the *Mitchell* court declined to admit the Government's proffered evidence of the defendant's impecunious financial circumstances because the danger of unfair prejudice substantially outweighed the probative value, the Court here should deny the Government's request to submit evidence of Mr. Hunter's poor financial circumstances. *See*, *Mitchell*, 172 F.3d at 1108-1110.

### III.   CONCLUSION

For the foregoing reasons, Mr. Hunter respectfully requests the Court deny the Government's motion to admit evidence of Hunter's personal financial circumstances.

Dated: June 28, 2019            SELTZER CAPLAN McMAHON VITEK
                                A Law Corporation

                                By:   *s/ Gregory A. Vega*
                                      Gregory A. Vega
                                      Ricardo Arias
                                      Philip B. Adams
                                Attorneys for Defendant, DUNCAN D. HUNTER