Gregory A. Vega, Esq. (CABN 141477)
Ricardo Arias, Esq. (CABN 321534)
Philip B. Adams, Esq. (CABN 317948)
SELTZER CAPLAN McMAHON VITEK
750 B Street, Suite 2100
San Diego, California 92101-8177
Telephone: (619) 685-3003
Facsimile: (619) 685-3100
Email: vega@scmv.com; arias@scmv.com
padams@scmv.com

Attorneys for Defendant DUNCAN D. HUNTER

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### (HON. THOMAS J. WHELAN)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DUNCAN D. HUNTER,<br><br>　　　　Defendant. | Case No. 18-CR-3677-W<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF USE OF CAMPAIGN FUNDS TO PURSUE PERSONAL RELATIONSHIPS**<br><br>DATE:　　　　　July 1, 2019<br>TIME:　　　　　10:00 a.m.<br>COURTROOM:　3C<br>JUDGE:　　　　Hon. Thomas J. Whelan |

Defendant DUNCAN D. HUNTER ("Mr. Hunter"), by and through his attorneys, Gregory A. Vega, Ricardo Arias, and Philip B. Adams, hereby submits this response in opposition to the Government's motion to admit evidence of use of campaign funds to pursue personal relationships ("Motion").

## I.　　INTRODUCTION

The Government charges Mr. Hunter with conspiring with Margaret Hunter ("Mrs. Hunter") to convert campaign funds for personal use. As such, the ultimate issue before the Court is whether Mr. Hunter used campaign funds for expenditures that would have existed "irrespective of" his campaign or duties as a Federal officeholder.

The indictment identifies 18 individuals that it claims Mr. Hunter had a personal relationship with and with whom Mr. Hunter allegedly spent campaign funds for non-campaign related purposes. As such, the proper scope of the Government's inquiry with respect to each of these individuals and the alleged expenses incurred in connection with them is the extent to which each relationship served a "political purpose[1]" and whether each expenditure would have existed irrespective of that political purpose. However, rather than engaging in a straightforward analysis of whether certain expenditures lacked a sufficiently political nexus to warrant the use of campaign funds, the Government's Motion seeks permission to focus the jury's attention on Mr. Hunter's infidelity.  As the Court is well aware, the allegations in the Motion are so controversial and prejudicial that merely filing the Motion has tainted the jury pool against Mr. Hunter based on the salacious allegations.

The Government claims, wrongly, that this evidence "is necessary for the jury to consider in evaluating the case" and contends Mr. "Hunter's intimate relationships demonstrate his knowledge and intent to embezzle campaign funds." This is simply untrue. Evidence that some of Mr. Hunter's relationships were "intimate" is neither relevant to whether any expenditure of campaign funds would have existed "irrespective of" Mr. Hunter's campaign, nor necessary (or appropriate) for the jury to consider when evaluating the case. The Government filed its Motion to publicly embarrass Mr. Hunter with evidence that reflects poorly on his character, and the minimal (if any) probative value of this evidence is substantially outweighed by the substantial risk of unfair prejudice.  Accordingly, the Court should deny the Motion and prevent the Government from distracting the jury with this salacious and prejudicial information.

---

[1] The complex realities of modern politics makes it increasingly difficult to determine whether an expenditure warrants the use of campaign funds under the "Irrespective Test" set out in 52 U.S.C. § 30114(b), which is precisely why Congress tasked the FEC (and not the Justice Department) with identifying questionable uses of campaign funds and resolving those issues on a case-by-case basis. *See* 11 C.F.R. § 113.1(g)(1)(ii).

## II. RESPONSE IN OPPOSITION

**A. The Government's Intimacy Evidence is Neither Relevant to The Charges Nor Admissible at Trial.**

Evidence of Mr. Hunter's "intimate affairs" is not directly relevant to the ultimate issue in this case, whether Mr. Hunter knowingly converted campaign funds to his personal use. 52 U.S.C. 30114(a)(6) permits the use of campaign funds "for any [] lawful purpose unless prohibited by subsection (b)" 52 U.S.C. § 30114. Subsection (b) provides the "Irrespective Test," to determine whether the use of Campaign funds constitutes a conversion to personal use:

> [A] contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office, including--
> **(A)** a home mortgage, rent, or utility payment;
> **(B)** a clothing purchase;
> **(C)** a noncampaign-related automobile expense;
> **(D)** a country club membership;
> **(E)** a vacation or other noncampaign-related trip;
> **(F)** a household food item;
> **(G)** a tuition payment;
> **(H)** admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and
> **(I)** dues, fees, and other payments to a health club or recreational facility.

52 U.S.C. § 30114. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which cannot meet this standard is inadmissible. Fed. R. Evid. 402.

Evidence that Mr. Hunter's relationships with individuals 14-18 were intimate relationships has no tendency to make any fact of consequence as to the determination of whether a particular expenditure would have existed irrespective of Mr. Hunter's campaign than it would be if the relationships were strictly platonic.

Unlike intimacy, the fact that an individual's relationship with Mr. Hunter includes a professional aspect that directly, or indirectly, relates to his campaign or duties as a holder of Federal office, is directly relevant to whether Mr. Hunter could properly use campaign funds for an expense in connection with that individual. In its quest to highlight the intimate nature of these relationships, the Government fails to meaningfully consider the fact that, just as with Mr. Hunter's platonic relationships, his friendships often blur the line between personal and professional, which is a widespread occurrence in modern politics. However unpopular the notion of a married man mixing business with pleasure, the Government cannot simply dismiss the reality that Mr. Hunter's relationships with Individual's 14-18 often served an overtly political purpose that would not have existed irrespective of his occupation. Indeed, the Government's stated concern that Mr. "Hunter may suggest he was justified in spending campaign funds on *all* of his 'meetings' with these individuals" because they "worked as lobbyists or congressional staffers" implicitly concedes that Mr. Hunter was justified in spending campaign funds on at least some of his meetings with these individuals.

Rather than address this gray area or quibble over the fundamentally vague application of the irrespective test under such circumstances, the Government's Motion focuses exclusively on Mr. Hunter's intimate relationships for the purpose of publicizing Mr. Hunter's infidelity. For example, while strategically emphasizing the costs incurred in connection with Mr. Hunter's "romantic liaisons" and "intimate affairs" the Government conveniently minimizes the fact that nearly every expense it references in its Motion was incurred in connection with a legitimate political activity.

Moreover, even if the Court determines that such evidence has some slight relevance to the issues in this case, it should still deny the Motion on the grounds that it constitutes impermissible character evidence, the probative value of which is substantially outweighed by the prejudicial impact under Rule 403. *See United States v. Bailey* 696 F.3d 794, 799 (9th Cir. 2012).

**B.     Evidence of Mr. Hunter's Affairs Constitutes Impermissible Character Evidence Under Rule 404(b)**

The Government contends that Rule 404(b) does not preclude this evidence because the Rule does not apply "to evidence of the very acts charged as crimes in the indictment" and "the intimate nature of Hunter's relationships is [] inextricably intertwined with the charged offense." However, the indictment does not charge Mr. Hunter with having intimate relationships, and for the reasons explained above, whether or not Mr. Hunter has an intimate or strictly platonic relationship with a particular individual does not tend to prove any material point in the Government's case.

Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with that character or trait. Fed. R. Evid. 404(a). Similarly, evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b); *See United States v. Romero,* 282 F.3d 683, 688 (9th Cir.2002). Courts within the Ninth Circuit use a four-part test to determine the admissibility of evidence pursuant to Rule 404(b):

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*Id.*; *United States v. Bailey,* 696 F.3d at 799. The Government "has the burden of proving that the evidence meets all of the above requirements." Furthermore, courts must ensure that the purported purpose for which the Government offers evidence is more than just a sham for using it against a defendant as proof of character. *See*, *United States v. Merriweather*, 78 F.3d 1070, 1074–1079 (6th Cir. 1996) (emphasizing the need for a cautious analysis of evidence of uncharged misconduct). Indeed, Rule 404(b) excludes character evidence for good reason:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to

> reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Rule 404, Advisory Committee Notes on Rule 404 (quoting California Law Revision Commission). Notwithstanding the Government's claim that the intimate nature of Hunter's relationships "will not be used to argue anything about Hunter's character" the Court should carefully consider whether this evidence is truly necessary for the Government to present its case or whether the Government is actually offering it for a different purpose: to highlight Mr. Hunter's infidelity. Just as the *Merriweather* court emphasized the need for courts to cautiously analyze evidence of uncharged misconduct, this Court should carefully consider the Government's true purpose for offering evidence of Mr. Hunter's "intimate personal relationships." *See United States v. Merriweather*, 78 F.3d at 1074–1079. Mr. Hunter is not on trial for being an unfaithful husband, yet this evidence invites the trier of fact to punish Mr. Hunter for his infidelity despite what the case shows actually happened. *See* Rule 404, Advisory Committee Notes on Rule 404 (quoting California Law Revision Commission).

Moreover, even if the Government satisfies its burden under Rule 404(b), the Court must preclude this evidence because "the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Bailey*, 696 F.3d at 799.

**C.   The Unfair Prejudice of this Evidence Substantially Outweighs the Probative Value.**

Under Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Courts regularly exclude evidence and argument focusing on character or controversial behavior when such evidence is prejudicial and not directly relevant to the charged offense. *See, e.g. United States v. Corsmeier*, 617 F.3d 417, 420 (6th Cir. 2010). "Evidence is unfairly prejudicial if it makes a conviction more likely because it

provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the crime charged.*" *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) (quoting *United States v. Yazzie*, 59 F.3d 807, 811 (9th Cir.1995)) (emphasis in original). Courts should be hesitant to admit evidence of a criminal defendant's marital infidelity due to the "risk [] that the jury will be distracted from whether he committed the charged crimes and will convict [the defendant] because they do not approve of his morals." *U.S. v. Young*, 702 F.Supp.2d 11 at 15 (D. Me. 2010). Where the Government seeks to admit evidence of slight probative value "it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) (quoting *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir.1992)).

In support of its contention that "the probative value of the evidence [showing Mr. Hunter's intimate relationships] is high," the Government cites *Old Chief v. United States*, 519 U.S. 172, 184 (1996) ([T]he Rule 403 'probative value' of an item of evidence … may be calculated by comparing the evidentiary alternatives.") However, the Government had no issue finding evidentiary alternatives with respect to its description of Mr. Hunter's relationship to the other thirteen individuals referenced in the indictment. Indeed, the Government provided a sufficiently detailed description of Mr. Hunter's relationship with every other person mentioned in the indictment without the need to clarify whether or not Mr. Hunter was "intimate" with them. For example, the Government managed to describe Mr. Hunter's relationship with Individual 1A ("1A") (who has both personal and professional ties to Mr. Hunter) without describing whether or not the relationship was ever "intimate." Additionally, at trial, the Government is expected to argue that Mr. Hunter's use of campaign funds to pay for a round of golf with 1A constituted a personal use of campaign funds without mentioning whether or not Mr. Hunter ever engaged in any intimate activities with 1A.

Similarly, the Government is perfectly capable of describing the nature Mr. Hunter's relationship with individuals 14-18 and presenting its case as to why the related expenditures constituted a personal use of campaign funds without informing the jury that Mr. Hunter also "engaged in intimate personal activities" with these individuals. While this salacious evidence provides welcomed fodder for the media, as evidenced by the attention this Motion received from both national and local news outlets, its questionable probative value is substantially outweighed by the unquestionable danger of unfair prejudice to Mr. Hunter. *See, McCoy v. Kazi*, 2010 WL 11465179 at *3 (C.D. Cal. 2010) (excluding evidence of defendant's extramarital affairs even if it were relevant, because the "jurors, feeling disgust and hostility toward [the defendant], may determine the outcome of the trial on those sentiments and not the facts of th[e] case.") As evidenced with Individuals 1-13, the Government can undoubtedly describe Mr. Hunter's relationship with Individuals 14-18 as both "personal and professional," and still manage to properly present its case.

Accordingly, the Court should note admit evidence of Mr. Hunter's marital infidelity due to the substantial risk of unfair prejudice.

### III.   CONCLUSION

For the foregoing reasons, Mr. Hunter respectfully requests the Court deny the Government's motion to admit evidence of use of campaign funds to pursue personal relationships.

Dated: June 28, 2019

SELTZER CAPLAN McMAHON VITEK
A Law Corporation

By:   *s/ Gregory A. Vega*
Gregory A. Vega
Ricardo Arias
Philip B. Adams
Attorneys for Defendant, DUNCAN D. HUNTER