DAVID D. LESHNER
Attorney for the United States
Acting under Title 28, U.S.C. Section 515
EMILY W. ALLEN (Cal. Bar No. 234961)
W. MARK CONOVER (Cal. Bar No. 236090)
PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
BRADLEY G. SILVERMAN (D.C. Bar No. 1531664)
Assistant United States Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-9738
emily.allen@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DUNCAN D. HUNTER,<br><br>Defendant. | Case No. 18CR3677-W<br><br>RESPONSE AND OPPOSITION OF THE UNITED STATES TO DEFENDANT DUNCAN D. HUNTER'S MOTION TO DISMISS COUNTS 45-57 |

The United States, by and through its counsel, David D. Leshner, Attorney for the United States, and Emily W. Allen, W. Mark Conover, and Phillip L.B. Halpern, Assistant U.S. Attorneys, hereby responds to Defendant's Motion To Dismiss Counts 45-57.

# I

# INTRODUCTION

On August 21, 2018, Congressman Duncan D. Hunter ("Hunter" or "the defendant") and his wife, Margaret Hunter, were indicted and charged with one count of conspiracy to commit an offenses, in violation of 18 U.S.C. § 371; 43 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; 13 counts of falsification of records related to campaign finance, in

1

violation of 18 U.S.C. §§ 1519 and 2, and three counts of prohibited use of campaign contributions, in violation of 52 U.S.C. §§ 30109(d) and 20114(b)(1) and 18 U.S.C. § 2. On June 13, 2019, Margaret Hunter entered a guilty plea to Count One of the indictment, pursuant to a plea agreement. Trial against Hunter is set to begin on September 10, 2019.

In Counts 45-57 of the Indictment, the United States alleged that the defendant "knowingly concealed, covered up, falsified, and made a false entry" in thirteen different Federal Election Committee ("FEC") Form 3 Reports of Receipts and Disbursements, with the "intent to impede, obstruct, and influence the investigation and proper administration of matters within the jurisdiction of the Federal Election Commission and the Federal Bureau of Investigation, and in relation to and in contemplation of such matters." Doc. 1, ¶ 28. Each of the thirteen counts specifies the precise date and title of each of the allegedly falsified reports.

## II

## LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 7, an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment or information is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Huping Zhou, 678 F.3d 1110, 1113 (9th Cir. 2012) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). "A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (quoting United States v. Mann, 517 F.2d 259, 267 (5th Cir.1975)). In ruling on a motion to dismiss an indictment for failure to state an offense, like those brought by defendant in this case, "the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).

# III

# ANALYSIS

Under a number of headings and subheadings, defendant mounts three increasingly impotent attacks against Counts 45-57 which allege violations of 18 U.S.C. § 1519.[1]  To support his arguments, defendant recites only a supposed litany of harms and paradoxical results that might befall our Republic should these Counts remain in the Indictment, while ignoring the inconvenient truth: Courts have repeatedly upheld the use of Section 1519 to address fraud and false statements in FEC reports, and have repeatedly rejected the preemption and vagueness arguments raised by his motion.  United States v. Singh, 924 F.3d 1030, 1047-53  (9th Cir. 2019) (affirming convictions of both FECA and Section 1519); United States v. Benton, 890 F.3d 697, 710-11 (8th Cir. 2018) (affirming convictions under 18 U.S.C. § 1519 for false financial reports to the FEC); United States v. Rowland, 826 F.3d 100, 107 (2d Cir. 2016) (affirming convictions under 18 U.S.C. § 1519 for false contracts created in order to avoid reporting requirements to the FEC); United States v. Prall, 19CR13, 2019 WL 1643742, at *2-*3 (W.D. Tex. April 16, 2019) (Slip Opinion) (denying motion to dismiss indictment, and rejecting argument that FECA preempts 18 U.S.C. § 1519 where defendant allegedly used political committee funds for personal expenses and then falsely informed treasurer of political committees that the funds were spent on legitimate political committee expenditures, knowing that they would be falsely reported to the FEC); United States v. Lundergan, 18CR106, 2019 WL 1261354, at *4-*5 (E.D. Ky. March 18, 2019) (Slip Opinion) (denying motion to dismiss indictment, and rejecting argument that 18 U.S.C. § 1519 does not apply to campaign finance violations where defendants allegedly had vendors and consultants perform services for a candidate and political committee and then had payment rendered by various companies in

---

[1] The defendant's arguments parallel those from United States v. Schock, 16CR30061, 2017 WL4780614, at *15-16 (C.D. Ill. Oct. 23, 2017).  In a well-reasoned and persuasive opinion, the district court in Schock roundly rejected each of those arguments, id., and this Court should, likewise, reject them here.

order to hide those payments from the FEC); <u>United States v. Schock</u>, 16CR30061, 2017 WL4780614, at *15-*16 (C.D. Ill. Oct. 23, 2017) (denying motion to dismiss Indictment and rejecting arguments that charges should have been brought under FECA rather than 18 U.S.C. § 1519 and that 18 U.S.C. § 1519 is unconstitutionally vague, where congressman was alleged to have made false FEC filings).  This Court should follow suit and deny defendant's Motion to Dismiss Counts 45-57.

### A. **FECA Does Not Preempt Prosecution Under 18 U.S.C. § 1519**

It is well settled that when an act violates more than one criminal statute, the United States may prosecute under one or all of the statutes, and defendant can be convicted of violating more than one statute. <u>United States v. Batchelder</u>, 442 U.S. 114, 123–24 (1979); <u>United States v. Duncan</u>, 693 F.2d 971, 975 (9th Cir. 1982).  The only exception to this general precept is where Congress clearly intended that one statute supplant the other.  Here, the defendant's illegal acts violated FECA as well as 18 U.S.C. § 1519, the statute criminalizing the "destruction, alteration, or falsification of records" in federal matters, and because both statutes comfortably co-exist without irreconcilable conflict, the United States has properly charged and the defendant can be convicted for violating both statutes.

The preemption doctrine generally applies to circumstances not present here, where a state statute conflicts with a federal regulatory scheme. <u>See, e.g.</u>, <u>Rice v. Norman Williams Co.</u>, 458 U.S. 654, 659 (1982) ("As in the typical pre-emption case, the inquiry is whether there exists an irreconcilable conflict between the federal and state regulatory schemes."). Preemption among purely federal statutes implicates none of these constitutional concerns; thus, the implied preemption of one federal statute by another is exceedingly rare and must be evidenced by unambiguous congressional intent for one law to partially or completely repeal another. <u>Posadas v. National City Bank of New York</u>, 296 U.S. 497, 503 (1936) ("The amending act just described contains no words of repeal . . . . The cardinal rule is that repeals by implication are not favored."). "Where there are two acts upon the same subject, effect should be given to both if possible. <u>Id.</u> Absent express repeal – a contention defendant does not advance -- there are only two scenarios justifying constructive preemption: (1) the

provisions in two statutes are in irreconcilable conflict or (2) a later statute covers the whole subject of an earlier statute and is <u>clearly intended</u> as a substitute, i.e., occultation. <u>Prall</u>, 19CR13, 2019 WL 1643742, at *2-*3. However, in the absence of some affirmative showing of an intention to supplant and repeal, the only permissible justification for repeal by implication is when the earlier and later statutory provisions are in irreconcilable conflict. <u>Tenn. Valley Auth. v. Hill</u>, 437 U.S. 153, 190 (1978).

While arguing, as a matter of law, that FECA forecloses charging the defendant with violations of 18 U.S.C. § 1519 for knowingly submitting false campaign expenditures, defendant provides no basis in law for this contention. Confoundingly, he cites no preemption law in his brief, nor does he claim that any particular provision of FECA stands in irreconcilable conflict with 18 U.S.C. § 1519.[2] Instead, in arguing that applying Section 1519 to defendant's false campaign filings "would displace Congress's tailor-made [campaign finance] scheme," defendant appears to be invoking the general principle of substitution, i.e., that Congress clearly intended FECA as a substitute for any and all other criminal statutes when dealing with campaign expenditures. Doc. 45-1 at 18-21. Defendant supports his substitution argument by outlining a litany of purportedly ill-directed policy outcomes and "paradoxical results" of applying both FECA and Section 1519, but what defendant does not do is point to any affirmative showing in the text of FECA or elsewhere that Congress intended

---

[2] Defendant does not argue "irreconcilable conflict" between any provision of FECA and Section 1519 because there is no such conflict. The only FECA provision defendant cites, 52 U.S.C. § 30109, is a penalty provision which does not conflict with Section 1519. <u>Prall</u>, 19CR13, 2019 WL 1643742, at *2, 6 n.2 (rejecting contention that FECA's penalty provision, 52 U.S.C. § 30109 preempted Section 1519). Though not mentioned by the defendant, the United States recognizes that Section 1519 (and Section 1001) and FECA's reporting requirements, 52 U.S.C. § 30104(b), do, to a limited extent, address the same subject matter – the reporting of campaign expenditures – but the provisions are, in effect, complimentary, and in no way stand in irreconcilable conflict. <u>Id.</u> at *3 (noting overlap but finding no conflict between Section 1519 and 52 U.S.C. § 30104(b)). Not surprisingly, preemption in this specific context has, thus, been universally rejected. <u>Prall</u>, 19CR13, 2019 WL 1643742 at *3-4 (quoting <u>Hopkins</u>, 916 F.2d at 219) (holding "the offenses under Title 18 thus stand wholly apart and separate from any violation of the federal election laws").

FECA to repeal Section 1519 (or any other criminal statute) or for that matter cite to any authority supporting his preemption by substitution contention. These omissions are not surprising because there is no such authority for preemption in this context.[3] United States v. Hopkins, 916 F.2d 207, 218 (5th Cir. 1990) ("There is no indication in the federal election laws that Congress intended them to supplant the general criminal statutes found in Title 18."); see also, Benton, 890 F.3d at 711 (rejecting contention that FECA preempted § 1519); United States v. Hsia, 176 F.3d 517, 525 (D.C. Cir. 1999) (specifically rejecting the argument that "FECA constitutes a pro tanto repeal of §§ 2 and 1001"); United States v. Curran, 20 F.3d 560, 565-66 (3d Cir. 1994) (rejecting argument that "because it targets specific conduct, the Election Campaign Act supersedes the more general criminal provisions of Title 18"); United States v. Duncan, 693 F.2d 971, 975 (9th Cir. 1982) ("There is no reason that Duncan cannot be charged and convicted under 18 U.S.C. § 1001 simply because another statute [31 U.S.C. §1058] is also applicable."). Certainly if Congress had intended to supplant and repeal all of Title 18 in the campaign expenditure context it would have said so, either in the passage of FECA, or its subsequent amendments, or it would have noted the exclusion in the passage of the broad catch-all obstruction of justice statutes, like Section 1519. Prall, 19CR13, 2019 WL 1643742, at *2-*3. ("Further the Court finds in the text of the FECA no affirmative showing of an intention to repeal any other criminal statute").

Indeed, notwithstanding defendant's meritless arguments to the contrary, the production of false financial records by a political campaign fits comfortably within the framework of conduct criminalized by Section 1519. S. Rep. No. 107-146, 14 (describing Section 1519 as being "meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the [requisite] intent"). As explicated in Lundergan, under the plain language of the statute, Section 1519 applies to violations of FECA. "Regulation of campaign finances rests in the proper administration of the FEC, an agency of the United States.

---

[3] That defendant has neglected to cite any of the federal cases discussing the relationship between FECA and Section 1519 bears witness to the fact that the unanimous weight of authority in this country resoundingly rejects his legal position.

Financial disclosures are records typically used in the regulation of such finances. Intentionally altering, destroying, mutilating, concealing, covering up, falsifying or making a false entry in those disclosures would impede, obstruct or influence the proper administration of regulation within the FEC. Lundergan, 18CR106, 2019 WL 1261354 at *4. Likewise, in Benton, 890 F.3d at 711, the Eighth Circuit rejected the argument that "applying Section 1519 to false reports of campaign expenditures would render [FECA] superfluous." In that case, as in Lundergan, the court held that the production of false financial records by a political campaign fits squarely within the framework of conduct criminalized by Section 1519.[4] Id.

In passing, defendant suggests that the First Amendment dictates that FECA impliedly preempted all other statutes policing campaign expenditures. Doc. 45 at 12-13 ("In this sensitive area, Congress crafted an intricate statutory scheme in the FECA to regulate federal election campaigns."). But, as Prall recently recognized, the First Amendment does not shield fraud, see, e.g., Riley v. National Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 800 (1988) (holding in the context of a First Amendment challenge to prior restraints on charitable solicitations that "the State may vigorously enforce its antifraud laws to prohibit professional fundraisers from obtaining money on false pretenses or by making false statements."); Illinois, ex rel. Madigan v. Telemarketing Assoc., Inc., 538 U.S. 600, 624 (2003) ("Consistent with our precedent and the First Amendment, States may maintain fraud actions when fundraisers make false or misleading representations designed to deceive donors about how their donations will be used."), and there is no constitutional value in false statements of fact, particularly as a matter of campaign finance law. Prall, at *3.[5] Defendant's attempts to find support for preemption in the First Amendment is, therefore, meritless.

---

[4] Reliance on Yates v. United States, 135 S. Ct. 1074, 1079 (2015), to support defendant's preemption argument is misplaced. In Yates, the Court concluded that a "tangible object" as set forth Section 1519 must be one used to record and preserve information. An undersized fish was not such a tangible object in Yates, but a false campaign finance record certainly is. Benton, 890 F.3d at 711; Lundergan, 18CR106, 2019 WL 1261354 at *4.

[5] Finally, defendant's contention that there is no "established practice of applying Section 1519 to police false and fraudulently made campaign disclosure reports, Doc. 45-1 at

7

Ultimately, exactly as Congress envisioned, Hunter was charged with violating multiple statutes, each criminalizing different aspects of his conduct.[6] Now a jury will decide. Duncan, 693 F.2d at 975 (noting a defendant can be convicted of violating more than one statute).

### B. Regulation of Campaign Finances and Investigations of Campaign Finance Irregularity Rests in the Proper Administration of the Federal Election Commission and the Federal Bureau of Investigations

Section 1519 criminalizes a false entry in a record or document made with the intent to impede, obstruct, or influence the investigation or proper administration of justice of a matter within the jurisdiction of any department or agency of the United States. As alleged in the Indictment in this case, regulation and "enforce[ment of the] campaign finance laws in United States federal elections" and "investigat[ions of] the potential improper use of campaign funds by candidates and elected Members of Congress" are matters within the jurisdiction of the Federal Election Commission and the Federal Bureau of Investigations, respectively, Doc. 1 ¶¶ 1-5, and Hunter violated Section 1519 by, among other things, concealing, falsifying, and making false entry in a record or document with the intent to impede, obstruct, or influence the investigation or proper administration of justice of a matter within the jurisdiction of the FEC and FBI, ¶¶ 27-28, all in violation of 18 U.S.C. § 1519 and 18 U.S.C. § 2

---

21, is irrelevant as a matter of law, but also fundamentally in err. See, e.g., Benton, 890 F.3d at 710-11; Rowland, 826 F.3d at 107; Prall, 19CR13, 2019 WL 1643742, at *2-*3; Lundergan, 18CR106, 2019 WL 1261354, at *4-*5; Schock, 16CR30061, 2017 WL4780614, at *15-16.

[6] Hunter's contentions that differing mens rea and penalty schemes should sway the Court's decision were foreclosed by the Supreme Court in Batchelder. "The prosecutor's discretion extends to cases involving statutes with different proof requirements and penalties. Indeed, "just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he shall be sentenced. Batchelder, 442 U.S. at 125. The district court in Schock, likewise, resoundingly rejected this argument. 16CR30061, 2017 WL4780614, at *17 ("Based on precedent outlined in Batchelder, the court cannot concern itself with the many options available to the Government in a criminal prosecution nor with the fact that one option may have a greater proof requirement and a more serious penalty.").

Defendant contends, however, that the Indictment is fatally deficient because it "fails to specify 'the matter'[7] that Hunter intended to impede, obstruct, or influence through the routine filing of [false] campaign disclosures identified in Counts 45-57." Doc. 45-1 at 21. In Counts 45-57, the Indictment on its face, which incorporates ¶¶1-5 by reference, and which correctly recites the text of Section 1519, is properly pled, and the district court "must accept the truth of the allegations in analyzing whether a cognizable offense has been charged.

The Ninth Circuit has, moreover, very recently rejected precisely this argument. In Singh, the Ninth Circuit squarely held that investigations of violations of FECA are matters within the jurisdiction of the FBI. Singh, 924 F.3d at 1052. Regulation and enforcement of the campaign finance laws are, likewise, matters within the jurisdiction of the FEC. Benton, 890 F.3d at 711, Lundergan, 18CR106, 2019 WL 1261354 at *4.

Much of Hunter's remaining stray commentary deals with issues of fact for trial. Even then, however, Hunter need not have intended to impede, obstruct of influence an actual ongoing investigation; instead, the mere fact that Hunter, as a multi-term congressman, contemplated the prospect of regulation, enforcement, or investigation of the campaign finance laws satisfies the element. Singh, 924 F.3d at 1052 (citing United States v. Gonzalez, 906 F.3d 784, 793-796 (9th Cir. 2018). In Singh, for example, the evidence was sufficient to sustain defendant's conviction where he had a long history of involvement in campaigns and elections, was warned about campaign reporting requirements, limited his paper trail, and used code names and admonished those talking about campaign contributions in email. Id. at 1052. Similar evidence will be introduced against Hunter which will prove beyond a reasonable doubt his intent to impede and obstruct matters within the jurisdiction of the FEC and FBI. See also Schock, 16CR30061, 2017 WL4780614, at *19-*20.

---

[7] Defendant's references to United States v. McDonnell, 136 S. Ct. 2355, 2372 (2016) and United States v. Marinello, 138 S. Ct. 1101, 1104 (2018), get him nowhere, for those cases address different statutes, different terms, and different contexts. Relevant to this issue are the cases, including binding precedent, uniformly interpreting Section 1519. See, e.g., Singh, 924 F.3d at 1052; Benton, 890 F.3d at 711; Lundergan, 18CR106, 2019 WL 1261354 at *4.

## C. Section 1519 Is Not Unconstitutionally Vague

Finally, this Court should reject defendant's contention that Section 1519 is unconstitutionally vague as applied. A statute is unconstitutionally vague <u>as applied</u> if it "failed to put a defendant on notice that his conduct was criminal." <u>United States v. Kilbride</u>, 584 F.3d 1240, 1257 (9th Cir. 2009); <u>United States v. Mincoff</u>, 574 F.3d 1186, 1201 (9th Cir. 2009) (noting statute is impermissibly vague if it "fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement"). "[V]agueness ... rest[s] on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." <u>Pest Comm. v. Miller</u>, 626 F.3d 1097, 1111 (9th Cir. 2010). Similarly, a statute is unconstitutionally vague <u>on its face</u> if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." <u>United States v. Harris</u>, 705 F.3d 929, 932 (9th Cir. 2013).

### 1. <u>Hunter Has Not Made An As Applied Vagueness Claim</u>

Hunter does not claim that he personally lacked notice that his conduct was criminal, nor that the Indictment is insufficiently clear as to what he is alleged to have done. The Indictment tracks the language of the statute, and clearly alleges that Hunter "knowingly concealed, covered up, falsified, and made a false entry" in the 13 listed FEC reports, and that he did so, "with the intent to impede, obstruct, and influence the investigation and proper administration of matters within the jurisdiction of the [FEC] and the [FBI]." Hunter similarly does not allege that the statutory language is unclear. His "as applied" challenge therefore fails, because he does not claim that he was not on notice that <u>his</u> conduct was criminal. Nor could he because 18 U.S.C. § 1519 "rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or document (3) with intent to impede or influence a federal investigation." <u>United States v. Hunt</u>, 526 F.3d 739, 743 (11th Cir. 2008) ("Nothing here suggests [Section 1519] is, in the context before us, vague."); <u>United States v. Moyer</u>, 674 F.3d 192, 212 (3d Cir. 2012) ("Because a defendant will be convicted for violating § 1519 only for an act knowingly done with the purpose of doing that which the

10

statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law."); Lundergan, at *6 (rejecting hypothetical vagueness concerns and upholding Section 1519 against vagueness challenge).

### 2. Hunter's Facial Vagueness Challenge Fails

Hunter instead appears to mount a <u>facial</u> challenge to the statute, claiming that Section 1519 allows arbitrary and discriminatory enforcement because "all political committees must file FEC reports" and therefore "there will likely be many errors that could support a prosecution on the government's theory in this case." Doc. 45 at 25. Hunter further claims that the application of Section 1519 in the context of FEC reporting would "chill core political speech." Id. at 26. Although, "ordinarily a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others," the courts have "relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." Kilbride, 584 F.3d at 1258 (quoting United States v. Williams, 553 U.S. 285, 304 (2008)). However, "[e]ven when a challenger brings a facial challenge to a statute that is claimed to interfere with the challenger's right of free speech or of association where a more stringent vagueness test should apply, speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended application." United States v. Evans, 883 F.3d 1154, 1166 (9th Cir. 2018) (internal citations and quotations omitted).

#### a. There Are No First Amendment Protections for Fraud

Section 1519 does not regulate any "protected speech." Period. At issue is not "political speech," but rather lies, fraud, and deception: in Counts 45-57, the Indictment alleges that Hunter repeatedly filed false FEC reports. The Supreme Court is clear that "the First Amendment does not shield fraud." Madigan, 538 U.S. at 612; see also United States v. Alvarez, 567 U.S. 709 (2012) ("Where false claims are made to effect a fraud or secure moneys or other valuable considerations . . . it is well established that the Government may restrict speech without affronting the First Amendment."); Gertz v. Robert Welch, Inc., 418

11

U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact."). Thus, Section 1519 as applied in the present case and the majority of cases does not chill political speech, but rather prevents fraud on the FEC, the taxpayers, and the political system. The First Amendment therefore does not apply, and Hunter's facial challenge fails.

As it is clear that Section 1519 does not regulate any protected political speech, the defendant may only challenge the statute as applied to himself and the facts of his case, Holder v. Humanitarian Law Project, 561 U.S. 1, 18-19 (2010); Lundergan, 18CR106, 2019 WL 1261354 at *6, and this Court should not consider defendant's invitation to speculate about Section 1519's application to future hypothetical defendants. Lundergan, 18CR106, 2019 WL 1261354 at *6 ("Any additional concern over future prosecution is a hypothetical situation which cannot establish unconstitutional vagueness.").

### b. Section 1519 Is Not Subject to Arbitrary or Discriminatory Enforcement[8]

Even if the Court reaches the merits of the defendant's facial challenge, it still fails. The plain language of the statute only criminalizes actions by individuals who act "knowingly" and with the intent to "impede, obstruct, or influence." 18 U.S.C. § 1519. The statute does not criminalize mere mistakes made in good faith, but rather knowing falsehoods made for the purpose of impeding and obstructing mattes within the jurisdiction of the FEC or FBI. See Lundergan, 18CR106, 2019 WL 1261354 at *6 (rejecting vagueness challenge where defendants were accused of concealing expenditures from the FEC "because the jury is required to find [the defendants'] specific intent in order to return a guilty verdict, any concern that [Section] 1519 . . . could result in a conviction for [defendants'] 'innocent conduct' is misplaced."). Indeed, precisely because Section 1519 requires "proof of a specific intent to impede, obstruct, or influence a federal matter, [it] provides sufficient notice of what conduct is prohibited, and is not subject to arbitrary or discriminatory enforcement." United States v.

---

[8] The defendant does not mount the other possible aspect of the facial challenge -- that 18 U.S.C. § 1519 "fails to provide a person of ordinary intelligence fair notice of what is prohibited," likely because he cannot, as the statute is clear in its proscriptions. See Harris, 705 F.3d at 932; Hunt, 526 F.3d at 743; Moyer, 674 F.3d at 212.

Stevens, 771 F. Supp. 2d 556, 562 (D. Md. 2011); see United States v. Moyer, 674 F.3d 192, 211-12 (3d Cir. 2012) ("Scienter requirements in criminal statutes alleviate vagueness concerns because a mens rea element makes it less likely that a defendant will be convicted for an action committed by mistake.").[9]  Perhaps unsurprisingly, it appears that every court that has considered a vagueness challenge to Section 1519 has rejected it.[10]  United States v. Kernell, 667 F.3d 746, 756 (6th Cir. 2012) (holding Section 1519 is not unconstitutionally vague); Moyer, 674 F.3d at 211 (same); United States v. McRae, 702 F.3d 806, 838 (5th Cir. 2012) (same); Hunt, 526 F.3d at 743 (same); Stevens, 771 F. Supp. 2d at 562 (same); Lundergan, 18CR16, 2019 WL 1261354, at *6 (same); United States v. Fumo, 628 F. Supp. 2d 573, 597 (E.D. Pa. 2007) (same); Schock, at *17-*19 (same).[11]

Though the defendant makes a half-hearted effort to claim that he has been arbitrarily chosen for prosecution, as even a cursory review of the Indictment reveals, this is not a case

---

[9] Section 1519 is therefore entirely unlike the California statute at issue in Kolender v. Lawson, 461 U.S. 352, 359-60 (1983), which required that individuals who loitered or wandered on the streets provide a "credible and reliable" identification to police to account for their presence, and provided that a failure to do so would be cause for arrest. In that case, the Supreme Court found that the statute "contain[ed] no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification" and therefore the statute vested "virtually complete discretion" regarding the determination of the violation of the statute "in the hands of the police." Id. A violation of Section 1519, by contrast, requires knowledge and proof of a specific intent to impede, obstruct, or influence a federal matter, all of which are well defined legal standards, not subject to the vagaries of individual prosecutors as claimed by the defendant. Doc. 44 passim.

[10] The defendant's citation of instances where mistakes in FEC reporting were handled by the FEC are irrelevant, Doc. 44 at 25-27, and the consistency of interpretation by the courts fatally undercuts the defendant's claims of "divergent applications of law." Id.

[11] The statutory language is clear, and thus, this Court may reject the defendant's reliance on the legislative history to provide a base for his vagueness argument. Hunt, 526 F.3d at 744 (finding that the defendant in that case "[could not] avoid the result compelled by the plain language by selectively citing legislative history"). Moreover, contrary to the defendant's contention, "the production of false financial records by a political campaign" falls within the "financial-fraud" framework contemplated by Congress. Benton, 890 F.3d at 711; cf. Yates, 135 S. Ct. 1074 (finding fish are not a "tangible object" as contemplated by Section 1519, because they cannot be used to "record or preserve information.").

in which the defendant was making good faith efforts to comply with the FEC regulations. As alleged over the course of hundreds of overt acts, defendant was, instead, engaged in an effort to thwart the FEC regulations (and any resulting FBI investigation) by hiding the nature of his misappropriation of donors' contributions for his personal use. Although Hunter may intend to defend against the allegations at trial by claiming that any campaign reporting mistakes he made were innocent ones, his defense does not render Section 1519 unconstitutionally vague on its face; rather, "[t]he problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." Williams, 553 U.S. at 306.

### 3. The Rule of Lenity Does Not Apply

Finally, this Court should reject the defendant's claim that the rule of lenity prevents the application of Section 1519 to FECA violations. The rule of lenity provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," United States v. Singh, 924 F.3d 1030, 1046 (9th Cir. 2019). But there is no ambiguity in the application of Section 1519 to false financial reporting to the FEC or to impeding or obstructing an investigation of campaign finance impropriety by the FBI. The plain language of Section 1519 reaches knowingly concealing, falsifying, or making a false entry in any "record, document, or tangible object," like FEC reports. The Eighth Circuit in Benton found that the "production of false financial records by a political campaign" clearly fell within the framework envisioned by Congress when it passed Section 1519. 890 F.3d at 711.

Contrary to Hunter's assertions, the United States is not alleging that Section 1519 applies to "any misstatement related to anything that might be regulated by the federal government," but rather that Section 1519 criminalizes Hunter's falsification of his FEC Form 3 Reports, as set forth in Counts 45-57 of the Indictment. Benton, 890 F.3d at 711.

Accordingly, as set forth above, Section 1519 provides a person of ordinary intelligence fair notice of what is prohibited and is not subject to arbitrary or discriminatory enforcement. In particular, the Indictment tracks the language of the statute, and clearly alleges that Hunter "knowingly concealed, covered up, falsified, and made a false entry" in the 13 listed FEC reports, and that he did so, "with the intent to impede, obstruct, and influence the investigation

and proper administration of matters within the jurisdiction of the [FEC] and the [FBI]." Hundreds of overt acts support the allegations. Any additional concerns raised by Hunter over future prosecutions are precisely the type of unmoored "hypothetical situation[s] which cannot establish unconstitutional vagueness." Lundergan, 18CR106, 2019 WL 1261354 at *6. For these reasons, Hunter's vagueness challenge to Section 1519 must be rejected.

## IV
## CONCLUSION

This Court should deny defendant's Motion To Dismiss Counts 45-57.

DATED: June 28, 2019

                                Respectfully submitted,

                                DAVID D. LESHNER
                                Attorney for the United States

                                */s/ Emily W. Allen*
                                EMILY W. ALLEN
                                W. MARK CONOVER
                                PHILLIP L.B. HALPERN
                                BRADLEY G. SILVERMAN
                                Assistant U.S. Attorneys