DAVID D. LESHNER
Attorney for the United States
Acting under Title 28, U.S.C. Section 515
EMILY W. ALLEN (Cal. Bar No. 234961)
W. MARK CONOVER (Cal. Bar No. 236090)
PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
BRADLEY G. SILVERMAN (D.C. Bar No. 1531664)
Assistant United States Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-9738
emily.allen@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 18CR3677-W |
|---|---|
| v. | RESPONSE AND OPPOSITION OF THE UNITED STATES TO DEFENDANT DUNCAN D. HUNTER'S MOTION TO DISMISS COUNTS 58–60 |
| DUNCAN D. HUNTER, | |
| Defendant. | |

The United States, by and through its counsel, David D. Leshner, Attorney for the United States, and Emily W. Allen, W. Mark Conover, and Phillip L.B. Halpern, Assistant U.S. Attorneys, hereby respectfully submits its opposition to defendant Duncan D. Hunter's Motion To Dismiss Counts 58-60 of the Indictment. Docs. 44 & 44-1.

Counts 58 through 60 allege straightforward violations of a criminal statute that prohibits converting campaign funds to personal use. Hunter's primary contention that he is shielded from prosecution by the internal rules of the House of Representatives lacks merit because the "House Rules" have no bearing on this case. Hunter's additional contentions that the charging statute is unconstitutionally vague and works an unacceptable "chill" on

1

protected speech, and that charging him violates some unenforceable policy preference for resolving campaign-expenditure violations in a civil setting are similarly meritless.

# I
# INTRODUCTION

On August 21, 2018, Congressman Duncan D. Hunter ("Hunter" or "the defendant") and his wife, Margaret Hunter, were indicted and charged with one count of conspiracy to commit an offenses, in violation of 18 U.S.C. § 371; 43 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; 13 counts of falsification of records related to campaign finance, in violation of 18 U.S.C. §§ 1519 and 2, and three counts of prohibited use of campaign contributions, in violation of 52 U.S.C. §§ 30109(d) and 20114(b)(1) and 18 U.S.C. § 2.  On June 13, 2019, Margaret Hunter entered a guilty plea to Count One of the indictment, pursuant to a plea agreement.  Trial against Hunter is set to begin on September 10, 2019.

Counts 58, 59, and 60 allege that in the years 2014, 2015, and 2016, respectively, Hunter knowingly and willfully converted more than $25,000 per year to his personal use, each in violation of the Federal Election Campaign Act of 1971 ("FECA" or the "Act"), 52 U.S.C. §§ 30109(d) and 30114(b)(1) (and 18 U.S.C. § 2).  In essence the grand jury found that Hunter treated campaign contributions as funds that he could divert to his personal and family life. Seeking now to dismiss Counts 58-60, Hunter contends (i) that prosecution of these counts implicates the internal rules of the House of Representatives (the "House Rules") and so must be barred; (ii) that FECA is unconstitutionally vague; (iii) that prosecution of these counts risks an unacceptable "chill" on First Amendment expression; and (iv) that prosecution of these counts violates a policy preference for civilly adjudicating violations.  None of these contentions has any merit, and defendant's Motion To Dismiss Counts 58-60 should be denied.

# II
# LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 7, an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment or information is sufficient if it 'first, contains the

2

elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Huping Zhou, 678 F.3d 1110, 1113 (9th Cir. 2012) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). "A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (quoting United States v. Mann, 517 F.2d 259, 267 (5th Cir.1975)). In ruling on a motion to dismiss an indictment for failure to state an offense, like those brought by defendant in this case, "the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).

## III

## ANALYSIS

### A.   The House Rules Have No Relevance to this Prosecution

Counts 58 through 60 of the Indictment charge statutory violations of the Act. Each count alleges that for the years 2014 through 2016 Hunter "knowingly and willfully converted $25,000 and more of Campaign funds to [his] personal use by using them to fulfill personal commitments, obligations, and expenses that would have existed irrespective of [his] election campaign or duties as a holder of federal office" in violation of 52 U.S.C. §§ 30109(d) and 30114(b)(1) and 18 U.S.C. § 2. Ind. at 46–47. Notwithstanding the plain language of the Indictment, Hunter seeks to recast these charges as an "attempt to prosecute [him] for a violation of Congress'[s] own internal rules." Doc. 44 at 7. Yet, the House Rules are neither referenced in the Indictment, nor relied upon as the basis of these charges. In fact, the United States does not expect to address the application or interpretation of House Rules during trial. The House Rules are, irrelevant to the straightforward prosecution of Hunter's violations of the Act, and as such, defendant's meritless defense should be denied.

As a general matter, the Rulemaking Clause of the Constitution provides the House of Representatives with the prerogative to set rules governing the conduct of its members. U.S.

3

Const. Art. 1, § 5, cl. 2.  In <u>United States v. Rostenkowski</u>, 59 F.3d 1291, 1305 (D.C. Cir. 1995)—the principal authority cited by Hunter—a congressman was charged with defrauding the United States and the House of Representatives by taking fraudulent advantage of the House Finance Office (a payroll scheme and a vehicle scheme), the House Office Supply Service (a stationary-store scheme), and the House Post Office (a postage scheme). As these schemes directly implicated the defendant's use of congressional services—matters covered by the House Rules—the D.C. Circuit held that the United States would "almost certainly rely upon the House Rules" as evidence of the defendant congressman's state of mind. Proceeding from this premise about the likely trial evidence, the D.C. Circuit held that because the House Rules are committed to the Legislative Branch, separation-of-powers concerns precluded the Judicial Branch from construing them unless they were sufficiently clear. <u>Id.</u> at 1306. The D.C. Circuit then undertook a count-by-count assessment to pare back counts that would have required the use of "non-justiciable" House Rules as evidence. <u>Id.</u> at 1307–13. Based on this analysis, Hunter contends that Counts 58-60 potentially raise the specter of the "House Rules" – without actually citing or referencing them – and so contends that those charges are non-justiciable, like those in <u>Rostenkowski,</u> and should be dismissed.  His contention is wrong.

Assuming some remaining doctrinal vitality of <u>Rostenkowski</u>,[1] Hunter's reliance on it is meritless because he is being prosecuted for a violation of a criminal law, not a House Rule.

---

[1] To be sure, <u>Rostenkowski</u> is an outlier decision that is in tension with Supreme Court precedent permitting the Judiciary to construe the rules of Congress. <u>Yellin v. United States</u>, 374 U.S. 109, 114 (1963) ("It has been long settled . . . that rules of Congress and its committees are judicially cognizable.").  Nor are courts precluded from permitting such congressional rules to be evidence at trial. <u>Id.</u> at 114–24 (reversing conviction for refusing to answer a House committee's questions where the committee did not abide by its own rules regarding non-public hearings); <u>Christoffel v. United States</u>, 338 U.S. 84 (1949) (reversing conviction for perjury before a House committee where the defendant was not allowed to show that the committee lacked a quorum).  Recently, in <u>United States v. Schock</u>, 891 F.3d 334, 336–37 (7th Cir. 2018) (Easterbrook, J.), the Seventh Circuit noted that the holding in <u>Rostenkowski</u> "does not represent established doctrine" and questioned why judicial review of House Rules would be any different from review of enacted legislation or administrative rules promulgated by the

United States v. Diggs, 613 F.2d 988, 1001 (D.C. Cir. 1979) (noting that the Rulemaking Clause "does not immunize a member of Congress from the operation of the criminal laws"). As numerous cases have observed, prosecutions that do not turn on any House Rule, or internal rule of the Senate, are unimpacted by the holding in Rostenkowski. In United States v. Durenberger, 48 F.3d 1239, 1243 (D.C. Cir. 1995), for example, the D.C. Circuit rejected the argument that the Senate's internal rules posed a bar to prosecution of a senator who was accused of making false statements because the proof turned on the statements and the senator's knowledge of their falsity, not the application of any internal rule. Likewise, in United States v. Schock, 16CR30061, 2017 WL 4780164 at *4–13 (C.D. Ill. Oct. 23, 2017), the district court concluded that the House Rules posed no bar to prosecuting a congressman for multiple counts of wire fraud, mail fraud, and false statements because the United States did not need to rely on the House Rules to prosecute violations of those statutes.[2] In United States v. Bowser, 318 F. Supp. 3d 154, 172 (D.D.C. 2018), the district court similarly concluded that the House Rules had no bearing on a false-statements prosecution because the proof had no relationship to the application of any House Rule. See also United States v. Menendez, 831 F.3d 155, 174–75 (3d Cir. 2016) (holding in the context of the Speech and Debate Clause that internal Senate rules did not bar a federal bribery prosecution not implicating such a rule).

Like Hunter's case, each of the foregoing cases—which charged violations of wire fraud, mail fraud, and false statements, among other criminal violations—did not turn on the application or interpretation of any House or Senate Rule, and as such Rostenkowski stood as no obstacle to the criminal prosecution. So too here, for the inapplicability of the House Rules is evident from the four corners of the Indictment. Neither Counts 58 through 60, nor any other allegation in the Indictment, makes reference to any House Rule. Of the hundreds of

---

Executive Branch. The Ninth Circuit has yet to weigh in, and this Court need not either, because, as described below, this case does not implicate any House Rule.

[2] On appeal from the defendant's motion to dismiss, the Seventh Circuit observed: "Neither the separation of powers generally, nor the Rulemaking Clause in particular, establishes a personal immunity from prosecution or trial." Schock, 891 F.3d at 337.

paragraphs of alleged overt acts, none so much as cite a House Rule. Likewise, at trial, the United States expects that the application or interpretation of the House Rules will form no part of the jury instructions.[3] Defendant's protestations to the contrary, the House Rules are irrelevant to this case, as is the decision in Rostenkowski, and for that matter the Rulemaking Clause of the Constitution.

Most tellingly, not even Hunter—who asks to be shielded from prosecution by the House Rules—can cite even a single House Rule in support of his motion. Instead, he confusingly cites an administrative regulation of the FEC, an executive-branch agency. Doc. 44 at 9–11 (citing passim 11 C.F.R. § 113.1(g)(1)). Whatever use Hunter intends to make of FEC regulations at trial, administrative regulations of an executive-branch agency are not House Rules, and Hunter cannot rely on them to protect him from prosecution.[4] Indeed it is implausible that a member of Congress could invoke the Rulemaking Clause to cover any government pronouncement—legislative, executive, or judicial—to shield himself from the law. To accept that premise is to accept the nonsensical idea that Hunter's elected status immunizes him from prosecution. That is not the law. Diggs, 613 F.2d at 268 ("No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.") (quoting United States v Lee, 106 U.S. 196, 220 (1882)). Hunter's failure to invoke a House Rule in his own defense, let alone identify one that is germane to the prosecution by the United States, is fatal to his motion.[5]

---

[3] Instead, the evidence of Hunter's conversion of campaign funds to his personal use will be familiar: communications among co-conspirators, financial records, and testimony of campaign operatives and people familiar with his improper spending.

[4] Given that Hunter has directed this Court to an FEC regulation, his hypothetical arguments applying that regulation to payments to his wife and his golf outings offer no support for his argument that the Rulemaking Clause bars his prosecution in this case.

[5] If the Court finds that Hunter can properly invoke the Rulemaking Clause, he cannot do so in a motion to dismiss, for he is in substance asking this Court to assess the possible evidence against him rather than the legal sufficiency of the Indictment. Jensen, 93 F.3d at 669; Boren, 278 F.3d at 914. Whatever the law on Rule 12(b)(3)(B) may be in the D.C. Circuit,

### B. The Act Poses No Vagueness Problems

Hunter next contends that Counts 58–60 must be dismissed because the Act prohibits him from spending campaign funds for obligations that would exist "irrespective of" his membership in Congress, a standard Hunter argues is unconstitutionally vague. Contrary to Hunter's claim, however, the statutory language of the Act is sufficiently definite to provide a person of ordinary intelligence fair notice of what is prohibited. Accordingly, Hunter's vagueness challenge to FECA (like his challenge to Section 1519) must be rejected.

#### 1. Hunter Cannot Mount a Viable Facial Challenge

Hunter suggests that the Act is facially vague because enforcement "risks a chilling effect on First Amendment activity by legislators across the country." Doc. 44 at 12, 16. Hunter's claim to a "facial challenge" rests on the Supreme Court's admonition that statutes implicating constitutionally protected activity are subject to closer scrutiny. Holder v. Humanitarian Law Project, 561 U.S. 1, 19 (2010); Village of Hoffman Estates v. The Flipside, 455 U.S. 489, 495 (1982). But, the Supreme Court has also explained that in the absence of constitutionally protected activity, vagueness challenges are considered "as applied to the particular facts at issue, for a plaintiff who engaged in some conduct that is clearly proscribed cannot complaint of the vagueness of a law as applied to the conduct of others." Humanitarian Law Project, 561 U.S. at 19. Or as the Ninth Circuit has explained, "[e]ven when a challenger brings a facial challenge to a statute that is claimed to interfere with the challenger's right of free speech or of association where a more stringent vagueness test should apply, speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended application." United States v. Evans, 883 F.3d 1154, 1166 (9th Cir. 2018) (internal citations and quotations omitted); see also United States v. Mazurie, 419 U.S. 544, 550 (1975) ("[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in

---

it is plain from Rostenkowski that the D.C. Circuit undertook a pretrial analysis of likely evidence, trimming the Indictment to reflect its views on potentially applicable House Rules. 59 F.3d at 1307–13. This is impermissible in the Ninth Circuit.

the light of the facts at hand."). Here, Hunter cannot pursue a facial challenge to FECA because he cannot identify a valid First Amendment interest.

Charging Hunter with the conversion of campaign funds infringes no constitutionally protected activity. His argument has been considered and rejected. In Federal Election Commission v. Craig for U.S. Senate, 816 F.3d 829, 848–49 (D.C. Cir. 2016), the D.C. Circuit rejected a former senator's claim that a court order to disgorge funds he had converted to personal use infringed upon the First Amendment, holding that "[t]he court's order does no more than enforce the obligation of a campaign committee to follow laws that are unrelated to the restriction of free expression." The holding in Craig for U.S. Senate echoes the principle espoused by the Supreme Court, that "the First Amendment does not shield fraud."[6] Illinois ex rel. Madigan v. Telemarking Assocs., Inc., 538 U.S. 600, 612 (2003). Indeed, the Court has observed that the Government has long had a "firmly established" power to "protect people against fraud," Donaldson v. Read Magazine, 333 U.S. 178, 198 (1948) (reaffirming validity of mail-fraud statute), and even when it has found untruthful statements to be protected speech, it has taken care to observe that falsity associated with fraud is not so protected. United States v. Alvarez, 567 U.S. 709, 718–19 (2012).

Contrary to Hunter's protestations, the grand jury indicted him because he converted campaign funds to his personal use, not because of any purported expenditures having some connection to a "political purpose." Doc. 44 at 17. Simply put, Hunter is charged with committing fraud by using his campaign's money as though it were his own. The First Amendment has nothing to offer him in the face of that conduct, and so his facial challenge fails.

---

[6] Hunter cites no authority for the suggestion that his conduct is protected speech. He relies on Buckley v. Valeo, 424 U.S. 1 (1976) and Kolender v. Lawson, 461 U.S. 352 (1983), though neither suggests that the conversion of campaign funds is protected speech. Buckley focuses on whether campaign contributions are "speech" and can be regulated, and Kolender focuses on a vagrancy-mitigation statute that has nothing to do with campaign finance, elections, legislating, or any other function relevant to Hunter's speech as a legislator.

### 2. Hunter's Remaining "As-Applied" Challenge Is Meritless

Hunter's remaining as applied challenge is meritless because the Act is clear and definite and contains a significant enforcement standard. In general, "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008); United States v. Wyatt, 408 F.3d 1257, 1260 (9th Cir. 2005) ("[A] statute is void for vagueness if . . . the statute (1) does not define the conduct it prohibits with sufficient definiteness, and (2) does not establish minimal guidelines to govern law enforcement."). Here, the Act provides a straightforward test for assessing whether conversions are improper, which is further supplemented by a list of statutory examples. That the Act imposes liability only for "knowing and willful" violations reinforces its vitality.

#### a. The Act is Clear and Definite

Hunter contends that the Act does not provide "reasonable notice" of the conduct that it prohibits because it uses an "irrespective test" to define improper conversions. Doc. 44 at 16. Yet commonsense alone supplies the meaning: A candidate or office-holder cannot knowingly and willfully use campaign funds for a "commitment, obligation, or expense" that he would incur, were he not a candidate or office-holder. 52 U.S.C. § 30114(b). The Ninth Circuit has taken a pragmatic approach to discerning whether a statute is reasonably clear, see e.g., United States v. Williams, 441 F.3d 716, 724–25 (9th Cir. 2006), and that kind of consideration makes this case an easy one.[7] As alleged in the Indictment, Hunter made patently improper use of his campaign funds for things like vacations, tuition, clothing, food, and entertainment. 52 U.S.C. § 30114(b)(2); see United States v. National Dairy Prods. Corp., 372 U.S. 29, 32–33 (1963) (determining the sufficiency of a statute in the light of the conduct with

---

[7] In Williams, 441 F.3d at 724–25, the Ninth Circuit rejected a challenge to a fraud statute because the defendant, a financial advisor, could reasonably understand that his use of the mails and wires to defraud an old man was unlawful. So too here. Hunter, a congressman, could reasonably understand that donations to his campaign were not his to use as his own.

which a defendant is charged). Hunter had reasonable notice that these conversions of campaign funds were improper, because his use of the funds had no plausible relationship to his status as a candidate or officeholder; or, in other words, that the expenditures were made "irrespective" of his candidacy and membership.

In addition to the plain meaning of the statute, the Act supplements it with a statutory list of commitments, obligations, or expenses that constitute improper conversions. In other contexts, the Ninth Circuit has observed that the presence of supplemental guidance provides legally significant clarity to a statute. United States v. Harris, 705 F.3d 929 (9th Cir. 2013) (rejecting vagueness challenge to the definition of a "dangerous weapon" because the defendant was able to observe signage making clear what was prohibited); United States v. Sandsness, 988 F.2d 970, 971 (9th Cir. 1993) (rejecting vagueness challenge to a federal drug statute that prohibits sales of "drug paraphernalia" because the statute provided factors and examples to identify the items that were prohibited). Here, the Act identifies (i) clothing purchases; (ii) vacations and non-campaign related trips; (iii) household food items; (iv) tuition payments; and (v) sporting or entertainment events as improper conversions. In turn, the Indictment alleges that Hunter converted campaign funds to these uses. 52 U.S.C. § 30114(b)(2). In this case, the statutory list of examples additionally defined the prohibited conduct with sufficient definiteness, thus providing Hunter with adequate notice that his conduct was improper.

### b. The Act Contains Meaningful Standards

In the portion of his brief addressing vagueness, Hunter contends that the Act lacks "sufficient guideline[s] to govern its enforcement." Doc. 44 at 16. But as he elsewhere concedes, the Act contains a "knowing and willful" scienter requirement, which limits enforcement to egregious violations of the Act. Here too, Hunter's contention is meritless.

To begin, the Act requires proof that the conversions comprised more than $25,000, a baseline dollar amount for the United States to prove. From this (as noted above), the Act contains statutory examples that, while not exclusive, provide important context to the Act and likely limit its enforcement to clear-cut examples of Hunter's improper conversions. To

demonstrate Hunter's guilt, the United States must additionally prove he committed these offenses "knowingly and willfully," as the Indictment charges.[8] 52 U.S.C. § 30109(d). The presence of this mens rea requirement undermines any concerns about a lack of a standard, for enforcement is limited to purposeful offenders. Am. Telephone & Telegraph Co. v. United States, 299 U.S.232, (1936) (Cardozo, J.) (rejecting a vagueness challenge and observing that "since the statutes require a specific intent to defraud in order to encounter their prohibitions, the hazard of prosecution which appellants fear loses whatever substantial foundation it might have in the absence of such a requirement"). When a criminal statute contains such a mens rea, the Ninth Circuit has rejected vagueness challenges because enforcement is limited to purposeful offenders. Wyatt, 408 F.3d at 1261 (presence of scienter requirement "can help a law escape a vagueness problem); United States v. Makowski, 120 F.3d 1078, 1081 (9th Cir. 1997) (rejecting vagueness because the language of the statute "leaves little doubt that a defendant will be convicted . . . only where he has the specific intent" to commit the offense); Hanlester Network v. Shalala, 51 F.3d 1390, 1398 (9th Cir. 1995) (anti-kickback statute is not vague because it has a scienter requirement). Taken together, the clear statutory text, the supplemental list of examples, and the scienter requirements provide ample notice of what conduct is condemned and rigorous standards to ensure only culpable conduct is punished.  For these reasons, defendant's vagueness challenge withers.

---

[8] Hunter himself concedes too much. Though he claims that the statute contains no standards and invites arbitrary enforcement, he also admits that "Congress reserved criminal enforcement of the election law only for the most culpable acts by, among other steps, requiring the most demanding mens rea for criminal FECA violations." Doc. 44 at 13. Hunter is correct: Unless the United States can prove that he converted campaign funds knowingly and willfully, it will not be able to prove that he is guilty of violating the Act. But, in turn, that concession confirms the basic point that the Act is far from indiscriminate. Hunter's own characterization of the Act fatally undermines his argument.

### C. There is no Preference for Civil Enforcement of the Act

Finally, Hunter protests prosecution under the Act because, he claims, Congress has expressed a preference for not criminally prosecuting violations of the Act. Contrary to Hunter's contention, there is no "preference" for civil adjudication of violations of the Act.

The Act is agnostic about civil or criminal enforcement. It "imposes substantial civil and criminal penalties for violations of its provisions and contains elaborate enforcement mechanisms leading to their imposition." Martin Tractor Co. v. Fed. Election Comm., 627 F.2d 375, 382 n.26 (D.C. Cir. 1980). On the civil-enforcement side, the FEC works towards "conciliation agreements" with offenders, and may seek penalties through the agreements or subsequent enforcement actions. Id.; see also 52 U.S.C. § 30109(a)(4). On the criminal-enforcement side, the FEC may refer "knowing and willful violations" to the Attorney General for prosecution. Martin Tractor, 627 F.3d at 382 n.26; see also 52 U.S.C. § 30109(a)(5)(B). Or the Department of Justice may simply initiate criminal proceedings. Marcus v. Holder, 574 F.3d 1182, 1184 (9th Cir. 2009); United States v. Int'l Un. of Operating Engs, Local 701, 638 F.2d 1161, 1163 (9th Cir. 1979) ("Nothing in the Act suggests, much less clearly and ambiguously states, that action by [DOJ] to prosecute a violation of the Act is conditioned upon prior consideration of the alleged violation by the FEC."); Fieger v. U.S. Attorney Gen., 542 F.3d 1111 (6th Cir. 2008); Bialek v. Mukasey, 529 F.3d 1267 (10th Cir. 2008). Whether and how to implement these options is up to the FEC and the Department of Justice.

While Hunter couches his argument as the United States contravening a "preference" for civil enforcement, his argument is the same as those advanced in Local 701 and Marcus— that the FEC has enforcement priority over the Department of Justice. It does not. Rather, as these cases hold, the Attorney General has independent discretion to enforce the criminal provisions of the Act, which the Department of Justice has exercised in this case.

# IV
# CONCLUSION

This Court should deny Hunter's Motion To Dismiss Counts 58 through 60.

DATED: June 28, 2019

                                             Respectfully Submitted,

                                             DAVID D. LESHNER
                                             Attorney for the United States

                                             *s/ Emily W. Allen*
                                             EMILY W. ALLEN
                                             W. MARK CONOVER
                                             PHILLIP L.B. HALPERN
                                             BRADLEY G. SILVERMAN
                                             Assistant U.S. Attorneys