DAVID D. LESHNER
Attorney for the United States
Acting under Title 28, U.S.C. Section 515
EMILY W. ALLEN (Cal. Bar No. 234961)
W. MARK CONOVER (Cal. Bar No. 236090)
PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
BRADLEY G. SILVERMAN (D.C. Bar No. 1531664)
Assistant United States Attorneys
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-6763
Email: mark.conover@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DUNCAN D. HUNTER,<br><br>Defendant. | Case No. 18CR3677(1)-W<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO RECUSE THE UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF CALIFORNIA<br><br>Date: July 1, 2019<br>Time: 10:00 a.m. |

Hunter's motion to dismiss the indictment or recuse the U.S. Attorney's Office is an attempt to distract from the evidence against him.  Even if prosecutors had attended a Clinton event to support the then-candidate, Hunter's motion does not establish a rational reason to think any prosecutor harbors inappropriate personal feelings about *him*, or is motivated by anything besides legitimate prosecutorial considerations. Hunter's leap of logic is flawed, and the motion should be denied.

1

# I.
# STATEMENT OF FACTS

In August 2015, the U.S. Secret Service extended a routine invitation to three career federal prosecutors at the U.S. Attorney's Office to attend an event at which the agency was providing protective service. The fundraising event was at a private home for then-candidate for President, Hillary Clinton. Their attendance was spurred and initiated entirely by the Secret Service.[1]

The U.S. Secret Service publicly said it regularly asks federal prosecutors around the country to attend "protective mission events" in case incidents arise for which legal guidance is needed.[2] The Secret Service said it has a "long standing practice of facilitating photograph opportunities [with its protectees] for our emergency service and law enforcement partners which would include the U.S. Attorney's Office." *Id.* [3]

# II.
# ANALYSIS

**A.    Defendant's Motion to Dismiss or, in the Alternative, to Recuse the USAO**

Defense counsel has been fully aware of the circumstances of this Secret Service event throughout his representation of Hunter. Defense counsel has litigated important issues

---

[1] Although there is no evidence to suggest the prosecutors' attendance at this event was for political purposes, defendant argues that simply attending at the request of Secret Service is a partisan political activity. However, the Secret Service invitation was extended without any regard to the political preferences of the U.S. Attorney's Office or the prosecutors who ultimately attended. Indeed, the Secret Service routinely invites prosecutors to attend similar gatherings and events on both sides of the political spectrum.

[2] Kristina Davis, S.D. UNION-TRIB., Secret Service explains why San Diego prosecutors were invited to Clinton fundraiser, Aug. 24, 2018, available at https://www.sandiegouniontribune.com/news/courts/sd-me-secret-service-20180824-story.html.

[3] Hunter's excitement about an email indicating prosecutors were given that photo opportunity, Mtn. 8-9, is strange considering the Secret Service openly said that 11 months ago. Hunter conveniently omits that part of the agency's statement from his motion.

2

relating to attorney conflicts, matters of evidentiary privilege, and the motion to compel subpoena production, all without raising any complaints of bias with the Court.

Without anything other than defendant's own accusation to suggest that the prosecutors in this case are anything but neutral and detached about Hunter, he now says the prosecutors "undeniabl[y]" attended the event as "supporters of celebrity candidate Clinton" which, because Hunter endorsed her opponent and two of the prosecutors have played roles in his case, establishes "a glaring conflict of interest and loss of impartiality" in his prosecution that requires dismissal of the indictment or recusal of the U.S. Attorney's Office. Mtn. 5, 9, 11, 13.

**B.    Legal Standard**

a. Legal Standard Regarding Dismissal of the Indictment

Prosecutors must be "disinterested," *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987), but "need not be entirely 'neutral and detached.'" *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980) ("In an adversary system, [prosecutors] are necessarily permitted to be zealous in their enforcement of the law").

Courts have consistently required a showing of some improper motive before finding a prosecutor has an conflict of interest. The few cases when a prosecutor was not sufficiently disinterested generally had attorneys in civil matters simultaneously prosecuting related criminal cases. *Young*, 481 U.S. at 808; see also *Crowe v. Smith*, 151 F.3d 217, 227-29 (5th Cir. 1998); *United States ex rel. S.E.C. v. Carter*, 907 F.2d 484 (5th Cir. 1990) (special prosecutors for criminal contempt were same SEC attorneys who obtained civil injunction which defendants violated); *Hughes v. Bowers*, 711 F. Supp. 1574, 1581-84 (N.D. Ga. 1989) (special prosecutor also represented victim's family in insurance claim); *Ganger v. Peyton*, 379 F.2d 709, 711-15 (4th Cir. 1967) (prosecutor "represented Ganger's wife in the prosecution of a divorce action which was pending at the time of the criminal trial and was based upon the same alleged assault on Mrs. Ganger").

A few defendants have tried to push the disinterested prosecutor rule beyond actual conflicts or simultaneous representation. They failed. See, e.g., *United States v. Wallach*, 935

F.2d 445, 459-60 (2d Cir. 1991) ("The only case law that defendants rely on ... involves individual prosecutors who were discovered to have had an actual interest in the outcome of a case"; no showing prosecutors biased because investigation encompassed then-Attorney General); see also *United States v. Farias*, 836 F.3d 1315, 1326 (11th Cir. 2016) (involvement of tobacco companies in cigarette trafficking investigation insufficient to show prosecutor biased to help companies); *United States v. Terry*, 17 F.3d 575, 579 (2d Cir. 1994) (Attorney General's commercials touting battle against "anti-abortion extremists" insufficient to establish personal bias against founder of pro-life organization).

      b. Legal Standard for Recusal of the U.S. Attorney's office

Hunter requests "recusal" of the U.S. Attorney's office if dismissal fails. Mtn. 12-13. Yet the only authority he cites is the "United States Attorney's Manual." Mtn. 12 (Now at Justice Manual, 3-1.140.) The manual is Department guidance only, JM 1-1.200, and unenforceable by courts. *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) ("several courts, including this circuit, have consistently held that these guidelines do not create any rights in criminal defendants").[4]

Apart from the Justice Manual, federal appellate courts uniformly have rejected efforts to disqualify entire offices. *United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003) ("every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification"). Even individual disqualification of specific prosecutors, which the motion does not seek, "is a drastic measure [that] a court should

---

[4] For what it is worth, the guidance was followed. Despite knowing for three years that prosecutors were at the Clinton event and litigating or raising several other issues in the interim, Hunter's counsel waited until the eve of indictment to complain to the then-United States Attorney, General Counsel at the Executive Office for United States Attorneys, and the Office of the Deputy Attorney General (ODAG), that the U.S. Attorneys office must be recused—almost as if the request was sought to throw the case off track and not out of real concern for the evenhandedness of the prosecution. Each still considered his complaint. None thought recusal appropriate. The Office of the Attorney General was told of ODAG's decision and the circumstances and declined a fourth level of review.

hesitate to impose … except where necessary." *Id.* (internal quotation marks omitted). The recusal motion should be denied.

### C.     Dismissal is Unwarranted

Hunter moves to dismiss the indictment based on faulty logic that if prosecutors attend a fundraiser for a candidate on one side of the political spectrum, they then are barred from prosecuting a defendant on the other side of the political spectrum.  This unsound thinking driving Hunter's motion to dismiss is contrary to the law.[5]

First, there is no support for Hunter's conclusion that prosecutors in this case supported Clinton. The Secret Service answered Hunter's accusations in the media by publicly saying it "regularly requests representation" by federal prosecutors "around the country during protective mission events." [6]  From the agency's perspective the "in-person representation provides for, and facilitates, real-time direct communications in the event of a protective security related incident where immediate prosecutorial guidance could be necessary." *Id.*  An element of relationship and rapport-building with other agencies doubtless exists too. That is why the Secret Service said it has a "long standing practice of facilitating photograph opportunities [with its protectees] for our emergency service and law enforcement partners which would include the U.S. Attorney's Office." *Id.*

Second, suppose prosecutors had attended a fundraiser to support a candidate. At most that shows they support the candidate. That does not mean they think anything about a different politician with different views much less a lower profile one who is not the candidate's

---

[5] To accept Hunter's argument would mean that no presidentially appointed U.S. Attorney or the office they oversee could prosecute someone of a different political party.  All presidentially appointed U.S. Attorneys at some point meet with the President (and almost always take photographs with the President), are political appointees, and serve at the pleasure of the President.  Hunter's argument would require U.S. Attorneys and their offices to be recused from prosecuting anyone in an opposing party as they would have an even greater "glaring conflict of interest and loss of impartiality that is intended to separate federal prosecutors from politically influenced decisions." Mtn. 9

[6] *See* Kristina Davis, S.D. UNION-TRIB., Secret Service explains why San Diego prosecutors were invited to Clinton fundraiser, Aug. 24, 2018.

election opponent. Politics are not binary or all-encompassing. Reasonable people know support for one does not unavoidably mean or require hostility towards someone else. Even if prosecutors had attended a Clinton event to support the then-candidate (which stripped bare is what Hunter alleges), Hunter's motion does not establish a rational reason to think any prosecutor harbors inappropriate personal feelings about *him*, serves conflicting masters, or is motivated by anything besides legitimate prosecutorial considerations, let alone at a level that requires dismissal of the charges.  The motion to dismiss the indictment should be denied based upon this reasoning alone.

Third, Hunter does not contend the prosecutors in this case also represent clients in related civil matters or have a financial interest in the outcome; they do not.  Hunter block quotes part of *Young* and says his case "comes squarely within th[at] reasoning." Mtn. 11. It is hard to see how. The prosecutors for Young's criminal contempt case were the same private attorneys who obtained the civil injunction that Young violated. The attorneys stood to win liquidated damages in the civil case if the violation was proved which "had the potential to influence whether Young was selected as a target of investigation [in the criminal case], whether he might be offered a plea bargain, or whether he might be offered immunity in return for his testimony." 481 U.S. at 806. Young also had sued the attorney-prosecutors for defamation. That "created the possibility that the [contempt investigation] might be shaped in part by a desire to obtain information useful in the defense of the defamation suit." *Id.* And the contempt investigation "theoretically" could have been used "to gather information of use" in "various civil claims [still] pending." *Id.*

This obviously is not *Young*. The criminal prosecutors there stood to gain financially in related civil proceedings which "at a minimum created *opportunities* for conflicts to arise, and created at least the *appearance* of impropriety." *Id.* The long passage quoted by Hunter's motion assumes that point when speaking about the dangers of an "interested prosecutor." The career prosecutors in this case do not represent other clients who can benefit from Hunter's prosecution. They are not "interested." The cart is before the horse. Hunter's attempt to equate the facts of *Young* to the facts of this case is misplaced.

### D. Recusal in any Form is Unwarranted

Hunter engages in the same logical fallacy that he concocted to seek dismissal of the indictment, in an attempt to manufacture a basis for recusal.[7]

Without citing to any facts, Hunter says the prosecutors are supporters of Clinton which establishes "a glaring conflict of interest and loss of impartiality" in his prosecution that requires recusal of the entire U.S. Attorney's Office. Mtn. 13.

First, again, even assuming prosecutors had attended a Clinton fundraiser to support her as a candidate, that does not mean they harbor inappropriate personal feelings about Hunter or are motivated by anything besides legitimate prosecutorial considerations, let alone to the level that requires recusal of an entire office. Support for one candidate does not create a loss of impartiality against another politician simply because they are a member of a different political party.

Second, as described above, the prosecutors were not there to support Clinton and certainly not because of distaste for Hunter. Attending a political event at the request of Secret Service does not equate to support for the candidate.[8]

---

[7] Hunter sets forth a false dichotomy related to the nexus between Clinton and Hunter. Hunter's argument is that a prosecutor who attends a Clinton event (even at the request of Secret Service) must support Clinton, a Democrat, and therefore must hold animus towards Hunter, a Republican, and therefore can't prosecute Hunter. This logic would require any judge who supported Clinton to recuse from any case involving a Republican, particularly since the recusal standard based on appearance of partiality is more stringent for judges than prosecutors. *See Marshall*, 446 U.S. at 248; Cf. *United States v. Lauersen*, 348 F.3d 329, 334 (2d Cir. 2003) (recusal standard for federal judges based on appearance of partiality is whether "an objective, disinterested observer fully informed of the underlying facts [would] entertain significant doubt that justice would be done absent recusal")

[8] A footnote in the motion says Hunter made a FOIA request to the Department of Justice that has gone unanswered. Mtn. 8 n.7. Discovery in federal criminal cases is dictated by Fed. R. Crim. P. 16. FOIA does not supplement or override the rule. Hunter is not entitled to more than he could get through Rule 16. *United States v. U.S. Dist. Court, Cent. Dist. Of Cal.*, 717 F.2d 478 (9th Cir. 1983).

A second footnote in the motion requests "the entire un-redacted email" quoted in Hunter's motion (which he obtained through FOIA), as well as "all internal Department of Justice notes, memorandums or communications either written or oral between members of

7

the United States Attorney's Office." Mtn. 11-12 n.8. Hunter cites no authority for this request. That is reason enough to reject it. Cf. *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

    Fed. R. Crim. P. 16(a)(1)(E)(i) seems to be the only authority that superficially could cover this. The provision requires disclosure of documents "material to preparing the defense." But the rule runs into three problems here. One is materiality. For the reasons described above, papers establishing prosecutors attended to support Clinton would not make Hunter's point. A second is the Supreme Court says "defense" in this Rule means information bearing on "'shield' claims, which refute the Government's arguments that the defendant committed the crime charged." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). "Defense" does not "include[] any claim that is a 'sword,' challenging the prosecution's conduct of the case." *Id.* (rejecting Rule 16 as a basis for ordering discovery related to selective-prosecution argument); *but compare United States v. Soto-Zuniga*, 837 F.3d 992, 1000-01 (9th Cir. 2016) ("In our view, the holding of *Armstrong* applies to the narrow issue of discovery in selective-prosecution cases.") *with United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000) (applying *Armstrong* to deny discovery request under Rule 16 outside selective prosecution context). Hunter seeks the information for the second (banned) purpose, not the first. The third obstacle is Fed. R. Crim. P. 16(a)(2). That subsection trumps 16(a)(1)(E) and excludes from discovery "internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case"—in other words, anything written covered by the latter part of Hunter's request demanding documents and communications between government attorneys about this issue. For all of these reasons, this request should be denied.

## III.

## CONCLUSION

Defendant has failed to establish any actual or apparent conflict of interest or loss of impartiality, and his motion to dismiss the indictment or, in the alternative, to recuse the United States Attorney's Office should be denied.

DATED: June 28, 2019

                                                    Respectfully submitted,

                                                  DAVID D. LESHNER
                                                  Attorney for the United States

                                                  *s/ W. Mark Conover*
                                                  EMILY W. ALLEN
                                                  W. MARK CONOVER
                                                  PHILLIP L.B. HALPERN
                                                  BRADLEY G. SILVERMAN
                                                  Assistant U.S. Attorneys