```
1                    THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF CALIFORNIA
2

3                       HONORABLE THOMAS J. WHELAN
                    UNITED STATES DISTRICT JUDGE PRESIDING
4

5      ------------------------------------------------------------

6      UNITED STATES OF AMERICA,       )
                                       )
7                      PLAINTIFF,      )  NO. 18-CR-3677-W
                                       )
8      VS.                             )  JULY 8, 2019
                                       )
9      DUNCAN D. HUNTER,               )  MOTION HEARING
                                       )
10                     DEFENDANT.      )

11     ------------------------------------------------------------

12

13     APPEARANCES:

14

15     FOR THE PLAINTIFF:        W. MARK CONOVER
                                 EMILY ALLEN
16                               U.S. ATTORNEY'S OFFICE
                                 SOUTHERN DIST. OF CALIFORNIA
17                               CRIMINAL DIVISION
                                 880 FRONT STREET, SUITE 6293
18                               SAN DIEGO, CA  92101

19

20     FOR THE DEFENDANT:        GREG A. VEGA
                                 PHILIP B. ADAMS
21                               RICARDO ARIAS
                                 SELTZER CAPLAN MCMAHON VITEK
22                               2100 SYMPHONY TOWERS
                                 750 B STREET
23                               SAN DIEGO, CA  92101

24

25     THE COURT REPORTER:       GAYLE WAKEFIELD, RPR, CRR
```

1       JULY 8, 2019

2                           MORNING SESSION

3               THE COURT:  MATTER NUMBER 21 ON THE CALENDAR,

4       18-CR-3677, UNITED STATES OF AMERICA VS. DUNCAN HUNTER.

5               MS. ALLEN:  GOOD MORNING, YOUR HONOR, EMILY ALLEN AND

6       MARK CONOVER FOR THE UNITED STATES.

7               MR. CONOVER:  GOOD MORNING, YOUR HONOR.

8               MR. VEGA:  GOOD MORNING, YOUR HONOR, GREGORY VEGA,

9       RICARDO ARIAS AND PHILIP ADAMS FOR MR. HUNTER, WHO IS PRESENT

10      BEFORE THE COURT ON BOND.

11              THE COURT:  THE MATTER IS ON CALENDAR FOR THE COURT TO

12      RULE ON THE REMAINING MOTIONS THAT WE DIDN'T GET TO LAST WEEK.

13      IN THAT REGARD, I'VE HAD AN OPPORTUNITY TO READ AND CONSIDER

14      THE DEFENSE MOVING PAPERS ALONG WITH THE ATTACHMENTS, THE

15      GOVERNMENT'S RESPONSE ALONG WITH THEIR ATTACHMENTS.

16              I'LL DO THEM IN CALENDAR ORDER, NUMERIC ORDER.  WE'LL

17      START WITH 36-1.  36-1 IS THE DEFENSE MOTION TO DISMISS OR IN

18      THE ALTERNATIVE TO REVIEW THE UNITED STATES ATTORNEY'S OFFICE

19      OF THE SOUTHERN DISTRICT OF CALIFORNIA.  WITH REGARD TO THAT,

20      AS THE PARTIES -- JUST BY WAY OF BACKGROUND, AS THE PARTIES ARE

21      AWARE, THE DEPARTMENT OF JUSTICE HAS AN INTERNAL PROCEDURE FOR

22      RESOLUTION OF RECUSAL ISSUES.

23              THE PARTIES ARE ALSO AWARE THAT PRIOR TO THE INDICTMENT

24      IN THIS CASE DEFENSE COUNSEL SOUGHT TO RECUSAL OF THE LOCAL

25      U.S. ATTORNEY'S OFFICE BASED ON THE FACT THAT THE U.S.

1    ATTORNEYS ATTENDED A POLITICAL FUNDRAISER, AT THAT TIME IT WAS

2    FOR PRESIDENTIAL CANDIDATE HILLARY CLINTON.  IT'S MY

3    UNDERSTANDING THAT THE FUNDRAISER WAS HELD IN THE LA JOLLA

4    SECTION OF SAN DIEGO, CALIFORNIA, AND THAT BASICALLY IT WAS A

5    LUNCHEON ARRANGEMENT.

6        THAT REQUEST WAS REVIEWED AND DENIED BY THE GENERAL

7    COUNSEL FOR THE EXECUTIVE OFFICE OF THE UNITED STATE'S ATTORNEY

8    IN WASHINGTON, D.C.  THE DENIAL BY THAT GENTLEMAN WAS BASED

9    UPON A FINDING THAT THE EVENT THEY ATTENDED WAS IN THEIR

10   OFFICIAL CAPACITY -- OR I SHOULD SAY THEY ATTENDED THE EVENT IN

11   THEIR OFFICIAL CAPACITY AS ASSISTING LAW ENFORCEMENT.  I WOULD

12   NOTE THAT THE PARTIES AGREE THAT THE PEOPLE ATTENDING DID NOT

13   PAY ANYTHING FOR THEIR ATTENDANCE.

14       THE FINDING BY THE GENERAL COUNSEL HAS BEEN

15   SUBSEQUENTLY CONFIRMED BY THE SECRET SERVICE -- PUBLICLY

16   CONFIRMED, I SHOULD SAY, BY THE SECRET SERVICE, AND THE AGENCY

17   ALSO CONFIRMED THAT THEY HAVE A LONGSTANDING PRACTICE OF

18   FACILITATING PHOTO OPPORTUNITIES WITH THEIR PROTECTEE -- THE

19   PROTECTEE IN THIS CASE BEING MS. CLINTON -- FOR SUCH ATTENDEES.

20       THE DEFENDANT CONTENDS THAT A RECENTLY-OBTAINED EMAIL

21   FROM THE SECRET SERVICE REGARDING A PHOTO OPPORTUNITY

22   ESTABLISHES THAT ATTENDANCE WAS IN FACT FOR PERSONAL RATHER

23   THAN IN THEIR OFFICIAL CAPACITY AND, THEREFORE, THAT CONFIRMS

24   THAT THE DEFENDANT'S INVESTIGATION BY THE LOCAL OFFICE WAS

25   INITIATED AS A RESULT OF HIS SUPPORT FOR THEN PRESIDENTIAL

1     CANDIDATE DONALD TRUMP.

2         NOW, THE LAW IN THIS AREA IS FAIRLY STRAIGHTFORWARD.

3     THE SUPREME COURT HAS HELD THAT THE DECISION BY THE -- THE

4     DECISION TO PROSECUTE IS BASICALLY ILL-SUITED FOR JUDICIAL

5     REVIEW; HOWEVER, THE COURTS DO HAVE A DUTY TO ENSURE PUBLIC

6     CONFIDENCE IN THE CRIMINAL JUSTICE SYSTEM.

7         THE COURTS, AS A GENERAL RULE, WOULD NOT INTERFERE IN

8     THE RECUSAL DECISION OF A PROSECUTORIAL OFFICE ABSENT A

9     PROVABLE CONFLICT OF INTEREST.  IN DECIDING WHETHER OR NOT

10     THERE'S A CONFLICT OF INTEREST, THE COURT HAS TO REVIEW THE

11     EVIDENCE -- OR THE FACTS I SHOULD SAY HOW THEY WOULD LOOK TO AN

12     OBJECTIVE OBSERVER RATHER THAN SOMEONE WITH A SPECULATIVE,

13     SUSPICIOUS TYPE OF PERSON.

14         NOW, THE FACTS IN THIS CASE, QUITE FRANKLY, I HAVE HAD

15     TO READ AND DECIDE THE FACTS FROM SOME OF THE OTHER FILINGS ON

16     THIS MORNING'S CALENDAR JUST TO SEE WHAT THE UNDISPUTED FACTS

17     REALLY ARE.  THERE SEEMS TO BE NO QUESTION THAT THIS INCIDENT

18     ALLEGEDLY CAME TO LIGHT,  THE FIRST VIOLATION, I SHOULD SAY, IN

19     EARLY 2016 AS A RESULT OF THE FEDERAL ELECTION COMMISSION

20     SENDING A LETTER TO MR. HUNTER'S CAMPAIGN TREASURER REGARDING

21     DISBURSEMENT OF CAMPAIGN FUNDS FOR SCHOOL AND A VIDEO GAME

22     COMPANY.  THAT PARTICULAR INQUIRY RECEIVED NATIONAL ATTENTION

23     ALMOST IMMEDIATELY.

24         THE NEXT THING THAT HAPPENED IS LATER IN 2016 THE

25     OFFICE OF CONGRESSIONAL ETHICS ISSUED A REPORT REGARDING

1     POSSIBLE MISUSE OF CAMPAIGN FUNDS FOR NON-CAMPAIGN PURPOSES.

2     THAT ALSO WAS NATIONALLY REPORTED ON.  THERE'S NO QUESTION THAT

3     THE DEFENDANT RESIDES IN THIS DISTRICT, AND THERE'S NO QUESTION

4     THAT HE HAS AN OFFICE IN THIS DISTRICT.  THE COURT WASN'T ABLE

5     TO DETERMINE EXACTLY WHEN THE GOVERNMENT STARTED THEIR

6     INVESTIGATION FROM THE DOCUMENTS FILED, BUT I CLEARLY COULD

7     DETERMINE THAT THERE WASN'T A SEARCH WARRANT EXECUTED SEEKING

8     EVIDENCE OF THE ALLEGED VIOLATIONS UNTIL FEBRUARY OF 2017.

9         WITH THAT, THE COURT WOULD FIND THAT AN OBJECTIVE,

10    REASONABLE PERSON WOULD FIND THAT THE U.S. ATTORNEY DID HAVE

11    PROBABLE CAUSE TO INITIATE AN INVESTIGATION, REGARDLESS OF WHY

12    ANYONE ATTENDED A FUNDRAISER FOR ANY PARTY MEMBER.

13        THE SUBJECT OF THE EMAIL, BY THE WAY, BASICALLY SETS

14    FORTH THE PROCEDURE TO HAVE A PHOTO TAKEN.  THE SUBJECT OF THE

15    EMAIL IN NO WAY ADDRESSES WHY THE ATTENDEES WERE THERE, AND IT

16    DOESN'T REFUTE THE GENERAL COUNSEL'S FINDING THAT THEY WERE IN

17    FACT THERE IN THEIR OFFICIAL CAPACITY, NOR DOES IT REFUTE THE

18    SECRET SERVICE'S PUBLIC STATEMENT THAT THEY OFTEN INVITE LOCAL

19    ATTORNEYS TO ATTEND IN THEIR OFFICIAL CAPACITY TO ASSIST LAW

20    ENFORCEMENT.  THEREFORE, THERE'S NO INDICATION THAT THE U.S.

21    ATTORNEY'S OFFICE HERE IN THE DISTRICT -- SOUTHERN DISTRICT OF

22    CALIFORNIA HAS A CONFLICT OF INTEREST.

23        AND THE SEMINAL SUPREME COURT CASE IN THIS AREA REALLY

24    IS THE *YOUNG* CASE, AND I'M NOT GOING TO GO THROUGH ALL THE

25    THINGS THAT *YOUNG* SAYS, BUT I HAVE READ IT.  AND IN *YOUNG*

1    BASICALLY THE SUPREME COURT HAS INDICATED THAT THE COURT

2    SHOULDN'T FIND ANY CONFLICT WITH REGARD TO ANY PARTICULAR ORDER

3    IN THE OFFICE UNLESS THERE'S BASICALLY SOME FINANCIAL OR

4    POTENTIAL FINANCIAL GAIN.  THERE'S NO EVIDENCE WHATSOEVER THAT

5    ANY ASSISTANT U.S. ATTORNEY ASSIGNED TO THIS OFFICE HAS ANY

6    POTENTIAL FOR FINANCIAL GAIN; THEREFORE, I WOULD ALSO DENY IT

7    ON THAT BASIS.

8    SO MY TENTATIVE WOULD BE TO DENY THE MOTION TO DISMISS

9    OR IN THE ALTERNATIVE TO RECUSE THE U.S. ATTORNEY'S OFFICE FOR

10   THE SOUTHERN DISTRICT OF CALIFORNIA.  BY WAY OF TENTATIVE, I'LL

11   LISTEN TO ANYBODY THAT WANTS TO BE HEARD.

12   MR. VEGA:  I DO, YOUR HONOR.

13   THE COURT:  GO AHEAD.

14   MR. VEGA:  YOUR HONOR, I FILED THAT MOTION AFTER GIVING

15   IT MUCH THOUGHT BECAUSE, AS THE COURT IS WELL AWARE, IT IS THE

16   PERCEPTION OF THE LOSS OF IMPARTIALITY THAT IS THE ISSUE HERE.

17   IT IS UNDISPUTED THAT THREE ASSISTANT UNITED STATES ATTORNEYS

18   ATTENDED THE HILLARY CLINTON FUNDRAISER.  IT IS ALSO CLEAR,

19   YOUR HONOR, THAT THEY DIDN'T PAY.  AND IT IS ALSO CLEAR THAT

20   WHEN AN INQUIRY WAS MADE TO THE EXECUTIVE OFFICE FOR UNITED

21   STATES ATTORNEYS, THE RESPONSE WAS THEY WERE NOT THERE AS

22   SUPPORTERS OF CANDIDATE CLINTON, RATHER, THEY WERE THERE IN

23   THEIR OFFICIAL CAPACITY ASSISTING LAW ENFORCEMENT.  THAT WAS

24   THE RESULT FROM JAY MACKLIN, THE GENERAL COUNSEL OF THE

25   EXECUTIVE OFFICE FOR U.S. ATTORNEYS.

1          NOW, I BELIEVE MR. MACKLIN WOULD NOT HAVE WRITTEN THAT

2     REASON WITHOUT CONTACTING THE UNITED STATES ATTORNEY'S OFFICE

3     HERE, AND SPECIFICALLY THE THREE UNITED STATES ATTORNEYS THAT

4     ATTENDED THAT FUNDRAISER.  BY SAYING THEY WERE THERE IN THEIR

5     OFFICIAL CAPACITY AT THAT TIME, I BELIEVED IT.  I HAD NO BASIS

6     TO NOT BELIEVE IT.

7          HOWEVER, I THEN FILED A FREEDOM OF INFORMATION ACT

8     REQUEST, WHICH I'VE ATTACHED AS AN EXHIBIT TO MY MOTION, AND IN

9     THAT RESPONSE FROM THE SECRET SERVICE -- IT WAS A REDACTED

10    EMAIL -- IT IS CLEAR, YOUR HONOR, THAT THEY WERE NOT THERE IN

11    THEIR OFFICIAL CAPACITY ASSISTING LAW ENFORCEMENT.  THE EMAIL

12    MAKES IT ABUNDANTLY CLEAR THAT THEY WERE THERE FOR A PHOTO, A

13    PHOTO OP.  THE SUBJECT LINE WAS "PHOTO."

14         NOW, WHAT'S INTERESTING ABOUT THAT EMAIL, TOO, YOUR

15    HONOR, IS THAT THAT EMAIL WAS SENT BY THE SECRET SERVICE TO TWO

16    OR THREE ASSISTANT U.S. ATTORNEYS HERE, AND THAT INFORMATION

17    WAS REDACTED.  NOW, YOU HAVE TO ASK, WHY WOULD THE SECRET

18    SERVICE SEND IT TO THREE SPECIFIC ASSISTANT U.S. ATTORNEYS IF

19    IT WAS -- CLEARLY, IT WAS THE ASSISTANT U.S. ATTORNEYS

20    REQUESTING OF THE SECRET SERVICE, "CAN YOU GET US IN.  WE WANT

21    TO MEET AND SEE HILLARY CLINTON."  THE EMAIL MAKES IT CLEAR.

22         THE OTHER FACT, YOUR HONOR, THAT CAME FROM THAT EMAIL,

23    THAT WAS JUST RECEIVED JUNE 12TH, WAS THE FACT THAT "YOU DON'T

24    HAVE TO BRING ANYTHING.  MEET ME OUTSIDE, AND I WILL TAKE YOU

25    TO THE PHOTO OP ROOM."  YOUR HONOR, IT IS CLEAR THAT THAT FALSE

1    INFORMATION WAS PROVIDED TO THE DEFENSE AT THE TIME OF THE

2    INITIAL MOTION TO RECUSE, AND I'M SURE THESE ASSISTANT UNITED

3    STATES ATTORNEYS HOPED THAT THAT EMAIL FROM THE SECRET SERVICE

4    WOULD NEVER SEE THE LIGHT OF DAY, BUT IT DID.

5         AND, YOUR HONOR, IF YOU LOOK AT THAT EXHIBIT, THE

6    BOTTOM PORTION HAS THE EMAIL, AND "COME FOR THE PHOTO OP.  YOU

7    DON'T HAVE TO BRING ANYTHING."  NOW, IF THEY WERE REALLY THERE

8    TO ASSIST LAW ENFORCEMENT, THEY WOULD HAVE BROUGHT THEIR

9    CRIMINAL CODE WITH TITLE 18.  THEY WOULD HAVE BROUGHT A LEGAL

10   PAD.  THEY WOULD HAVE BROUGHT SOMETHING, AND THEY DIDN'T.  I

11   THINK I KNOW A LITTLE BIT ABOUT THAT OFFICE, YOUR HONOR, AND

12   THEY DON'T GO ANYWHERE WITHOUT TAKING THEIR CRIMINAL CODE.

13        SO IT STRAINS THE TRUTH TO SAY WITH A STRAIGHT FACE

14   THAT THEY WERE THERE TO ASSIST LAW ENFORCEMENT.  THEY WENT FOR

15   ONE REASON AND ONE REASON ONLY, AND THAT WAS BECAUSE OF THEIR

16   DESIRE TO MEET CANDIDATE CLINTON.

17        NOW, YOUR HONOR, THAT ALONE SHOULD CAUSE THE COURT

18   PAUSE BECAUSE IN THEIR RESPONSE THE GOVERNMENT REALLY NEVER

19   ADDRESSES THE ISSUE ON WHY THEY WERE THERE.  THEY NEVER ADDRESS

20   THE ISSUE WHY THE DEPARTMENT OF JUSTICE PROVIDED THE DEFENSE

21   WITH FALSE INFORMATION.  THEY DON'T ADDRESS IT.  THEY'RE JUST

22   HOPING THAT THEY COULD SWEEP THAT UNDER THE RUG.

23        YOUR HONOR, THE SUBSEQUENT CONDUCT OF THE LEAD

24   PROSECUTOR IN THE CASE SHOWS THAT IN FACT THERE WAS A LOSS OF

25   IMPARTIALITY.  WITHIN MONTHS OF THAT FUNDRAISER THAT THEY

1    ATTENDED, WHICH I WOULD SUGGEST COULD BE A HATCH ACT VIOLATION,

2    IT COULD BE A THEFT OF GOVERNMENT PROPERTY, IF THEY WERE THERE

3    GETTING PAID AND DIDN'T TAKE ANNUAL LEAVE, BUT WITHIN MONTHS OF

4    THAT POLITICAL FUNDRAISER MY CLIENT IS ONE OF TWO CONGRESSMEN

5    TO BE THE FIRST TO ENDORSE THE CANDIDACY OF DONALD TRUMP, AND

6    SHORTLY THEREAFTER THE INVESTIGATION BEGAN.

7            NOW, YOUR HONOR, I MEAN, IT HAS TO BE MENTIONED THAT

8    ONE OF THE PEOPLE THERE WAS THE FIRST ASSISTANT U.S. ATTORNEY,

9    AND I DON'T THINK IT'S ANY COINCIDENCE THAT THAT PERSON WANTED

10   TO MEET CANDIDATE CLINTON IN THE HOPES THAT CANDIDATE CLINTON

11   WOULD WIN AND THAT PERSON WOULD THEN HAVE AN OPPORTUNITY TO

12   POSSIBLY BECOME THE UNITED STATES ATTORNEY.  BUT YOU LOOK AT

13   THE SUBSEQUENT CONDUCT, AND YOU HAVE A -- CONDUCT THAT SHOWS

14   THE LOSS OF IMPARTIALITY.

15           THE FIRST IS TAKING AWAY THE MATTER FROM THE FEC.  IT'S

16   UNDISPUTED THAT THE FEC IS THE PRIMARY REGULATORY BODY THAT HAS

17   RESPONSIBILITY FOR REVIEWING CAMPAIGN EXPENDITURES, AND THE

18   GOVERNMENT TOOK THAT AWAY FROM THE FEC.  THE FEC, UNDER THEIR

19   RULES, THEY REVIEW EACH ALLEGATION ON A CASE-BY-CASE BASIS, AND

20   THEY WERE BEST SUITED TO HAVE REVIEWED THE CONDUCT -- THE

21   ALLEGED CONDUCT, BUT THE GOVERNMENT HERE TOOK IT AWAY FROM

22   THEM.

23           WHAT YOU ALSO HAVE IS THIS INVESTIGATION GOES ON FOR

24   TWO YEARS AND THE GOVERNMENT BRINGS THE INDICTMENT, YOU KNOW,

25   JUST 76 DAYS BEFORE THE ELECTION, AND WHY?  IT WAS TO TRY TO

1    FLIP A RED SEAT TO A BLUE SEAT, ONE OF THE FEW HERE IN THE

2    STATE OF CALIFORNIA.

3         YOUR HONOR, THE PUBLIC HERE SHOULD EXPECT MORE FROM ITS

4    DEPARTMENT OF JUSTICE.  IT SHOULD EXPECT THE DEPARTMENT OF

5    JUSTICE TO TELL THE TRUTH, TO NOT TRY TO COVER SOMETHING UP,

6    AND THAT, YOUR HONOR, IS THE MAIN FOCUS OF WHAT WE HAVE HERE.

7    WE HAVE A LOSS OF IMPARTIALITY, AND, AS YOU MENTIONED THE *YOUNG*

8    CASE, AND LIKE YOU I READ IT ALSO, BUT WHAT THE INTERESTING

9    LANGUAGE IN THE *YOUNG* CASE IS, IT DOESN'T MATTER WHAT THE

10   EVIDENCE EVENTUALLY SHOWS, IT MATTERS WHAT HAPPENS AT THE

11   BEGINNING.

12        AND IN THIS CASE, AT EVERY FORK IN THE ROAD IN THIS

13   INVESTIGATION, THE GOVERNMENT TOOK THE ONE THAT WAS THE HARDEST

14   ON MY CLIENT.  THEY COULD HAVE LET THE FEC HANDLE IT, BUT, NO,

15   THEY'RE MAKING IT -- UNDER 1519 THEY'RE MAKING IT A 20-YEAR

16   FELONY.  COUNSEL FOR THE GOVERNMENT AT THE INITIAL HEARING

17   SAID, "OH, IT'S A SIMPLE EMBEZZLEMENT CASE."  IT COULD HAVE

18   BEEN BROUGHT, YOU KNOW, YEARS BEFORE THE INDICTMENT, BUT THEY

19   -- AGAIN, THEY WAITED UNTIL RIGHT BEFORE THE ELECTION.

20        NOW, AS IT TURNS OUT HE STILL WON, BUT, YOUR HONOR, THE

21   PUBLIC SHOULD BELIEVE FROM ITS DEPARTMENT OF JUSTICE THAT

22   DECISIONS ARE MADE IMPARTIALLY, MADE FAIRLY, AND IN THIS CASE,

23   YOUR HONOR, IT IS THE PERCEPTION OF THE TREATMENT OF

24   CONGRESSMAN HUNTER, AND THE CONDUCT OF THE GOVERNMENT, YOUR

25   HONOR, WE AT A MINIMUM, AT A MINIMUM, THE COURT SHOULD ORDER

1       THE GOVERNMENT TO PROVIDE ALL OF THE INTERNAL EMAILS THAT WENT

2       BACK AND FORTH REGARDING THIS MATTER.

3           I MEAN, BUT FOR THE FREEDOM OF INFORMATION ACT REQUEST,

4       YOUR HONOR, WE WOULD NOT HAVE KNOWN THE TRUTH.  A FREEDOM OF

5       INFORMATION ACT REQUEST, AS I SAID, WAS MADE TO THE DEPARTMENT

6       OF JUSTICE, AND WE HAVEN'T GOTTEN A RESPONSE YET.  YOUR HONOR

7       HAS THE INHERENT POWER TO ORDER THE GOVERNMENT TO PRODUCE THESE

8       -- ALL COMMUNICATIONS BETWEEN THE U.S. ATTORNEY'S OFFICE HERE

9       IN SAN DIEGO AND THE DEPARTMENT OF JUSTICE IN WASHINGTON,

10      BECAUSE WITHOUT THAT, JUDGE, IT IS CLEAR THAT SOMEONE GAVE

11      FALSE INFORMATION, AND SO I WOULD ASK AT A MINIMUM THE COURT

12      ORDER THE PRODUCTION TO THE DEFENSE OF ALL COMMUNICATIONS

13      RELATED TO THIS MATTER.

14          THE COURT:  THANK YOU.

15          MR. CONOVER.

16          MR. CONOVER:  YOUR HONOR, THE DEFENDANT'S MOTION WITH

17      REGARD TO ANYTHING THE PROSECUTORS DID IN THIS CASE THAT WAS

18      NOT MOTIVATED ENTIRELY BY PROPER PROSECUTORIAL MOTIVATIONS IS

19      NOTHING BUT SMOKE AND MIRRORS, NOTHING BUT SMOKE AND MIRRORS,

20      AND A DISTRACTION FROM THE OVERWHELMING EVIDENCE IN THIS CASE.

21          THE FACTS ARE VERY CLEAR.  CAREER PROSECUTORS WERE

22      INVITED BY THE SECRET SERVICE IN 2015.  IN A ROUTINE MATTER,

23      THE SECRET SERVICE INVITES PROSECUTORS, OTHER LAW ENFORCEMENT

24      OFFICERS, TO ATTEND THESE SORT OF EVENTS AROUND THE ENTIRE

25      COUNTRY WITHOUT REGARD TO POLITICAL AFFILIATION REGULARLY, AND

1       THEY SAID SO OVER A YEAR AGO IN A PUBLIC STATEMENT.

2               IN THAT SAME PUBLIC STATEMENT THEY STATED THAT PART OF

3       THAT ROUTINE INVITATION IS PHOTOGRAPHIC OPPORTUNITIES WITH THE

4       DIGNITARIES AND THE CANDIDATES.  THERE'S NOTHING BEING HIDDEN

5       HERE.  THERE'S NOTHING THAT HASN'T BEEN HAPPENING IN THIS EXACT

6       SAME FASHION FOR YEARS.  THE FACTS ARE VERY CLEAR.

7               THE IRONY OF THIS CASE, YOUR HONOR, THE IRONY OF THE

8       LOGIC THAT BECAUSE PROSECUTORS ATTENDED AN EVENT FOR HILLARY

9       CLINTON, THEREFORE, THEY MUST BE BIASED AGAINST MR. HUNTER, OF

10      COURSE, IS A LOGICAL FALLACY, BUT THE IRONY IS THAT THE

11      DEFENDANT'S LAWYER, MR. VEGA, WAS AT THAT EXACT SAME

12      FUNDRAISER, THAT EXACT SAME DAY WITH THE PROSECUTORS, AND GOT A

13      PHOTO WITH MS. CLINTON.  THE DIFFERENCE IS HE WAS THERE TO

14      SUPPORT MS. CLINTON AND HE DONATED TO BE THERE.  THE

15      PROSECUTORS WERE THERE AT THE REQUEST OF SECRET SERVICE.

16              NOW, THE DEFENDANT'S LOGIC IS THAT IF YOU ATTEND A

17      HILLARY CLINTON FUNDRAISER AS A SUPPORTER THEN YOU HAVE TO BE

18      BIASED AGAINST HIM WOULD MEAN THAT MR. VEGA IS BIASED AGAINST

19      HIS OWN CLIENT.  OF COURSE, THE UNITED STATES WOULD NEVER MAKE

20      SUCH AN ABSURD ARGUMENT, BUT THAT'S THE ARGUMENT THAT'S BEING

21      MADE HERE IS THAT ATTENDANCE AT AN EVENT OF ONE CANDIDATE OF A

22      PARTY MAKES YOU BIASED AGAINST ANY OTHER CANDIDATE OF THE

23      OPPOSING PARTY.

24              OF COURSE, THE FACTS DON'T SUPPORT THAT, AND THE LAW

25      CERTAINLY DOESN'T SUPPORT THAT.  THE LAW IN THIS CASE IS VERY

```
1      CLEAR.  THE COURT'S TENTATIVE IS SPOT ON ON ALL FOUR CORNERS.

2      THIS IS NOTHING BUT A DISTRACTION.  BUT EVEN IF YOU WERE TO

3      TAKE THE LOGIC AND THE FACTS AS MR. VEGA PUT THEM, EVEN IF YOU

4      WERE TO ASSUME THAT THE PROSECUTORS ATTENDED THIS EVENT BECAUSE

5      THEY WERE SUPPORTERS, WHICH THEY WERE NOT, AND THERE IS NO

6      EVIDENCE, BUT EVEN IF YOU WERE TO TAKE THAT FACT TO BE TRUE,

7      ATTENDING A FUNDRAISER FOR ONE CANDIDATE DOES NOT MEAN THAT YOU

8      THEN HAVE POLITICAL ANIMUS AGAINST ANOTHER CANDIDATE,

9      ESPECIALLY A CANDIDATE OF MUCH LESSER IMPORTANCE IN A

10     COMPLETELY DIFFERENT DISTRICT THAT'S NOT EVEN RUNNING AGAINST

11     THAT CANDIDATE.  THAT LOGIC DOESN'T FOLLOW, AND IT WOULD

12     REQUIRE RECUSAL AND DISMISSAL OF INDICTMENTS ACROSS THIS

13     COUNTRY IN MANY DIFFERENT WAYS, SO THE LAW IN THIS CASE IS

14     CLEAR.

15          THE ARGUMENTS REGARDING THE EMAIL COVERUP, MR. VEGA

16     LEFT THE PORTION OF THE SECRET SERVICE PUBLIC STATEMENT FROM A

17     YEAR AGO ABOUT THE PHOTOGRAPHIC OPPORTUNITIES OUT OF HIS

18     MOTION.  THE SECRET SERVICE MADE IT CLEAR THERE ARE DUAL

19     MOTIVES; ONE, HAVING PROSECUTORS THERE TO ASSIST.  AND, TWO,

20     RAPPORT BUILDING, WHERE THEY HAVE OPPORTUNITIES FOR LAW

21     ENFORCEMENT, FIREFIGHTERS, POLICE, PROSECUTORS TO TAKE PHOTOS.

22          SO THE FACT THAT ALMOST A YEAR LATER, IN A FREEDOM

23     INFORMATION ACT, THERE'S EMAILS ABOUT A PHOTOGRAPHIC

24     OPPORTUNITY SHOULD BE OF NO SURPRISE TO ANYONE WHEN THE SECRET

25     SERVICE A YEAR AGO SAID THAT.  THIS IS A FRIVOLOUS MOTION, AND
```

1      I WOULD ASK THE COURT TO DENY IT.  THANK YOU.

2          THE COURT:  WELL, AS I STATED IN MY RULING, MY

3      TENTATIVE RULING, I'M AWARE OF HOW EACH SIDE TRY TO INFER ONE

4      THING OR ANOTHER FROM THE CONTENTS OF THE EMAIL, BUT IT IS

5      CERTAINLY CLEAR THAT THE CONTENTS OF THE EMAIL ONLY DEAL WITH

6      PROCEDURE FOR TAKING A PHOTO.  I GUESS ONE THING YOU COULD

7      LOGICALLY INFER FROM IT WAS THAT THEY WERE GOING TO TAKE PHOTOS

8      BEFORE THEY STARTED THE EVENT, BECAUSE IT SAYS TO BE THERE AT

9      9:00 IN THE MORNING, WHICH WOULD INDICATE THEY DON'T WANT

10     PEOPLE TO BE TAKING PHOTOS AFTER THE LUNCHEON MEETING OR EVENT,

11     THEY WERE GOING TO TAKE THEM BEFORE.  THERE'S CERTAINLY NOTHING

12     IN THERE TO INFER ONE WAY OR THE OTHER THAT THE ASSISTANT U.S.

13     ATTORNEYS WEREN'T IN FACT THERE AS PART OF THEIR OFFICIAL

14     CAPACITY.

15         IN ANY EVENT, ONE OF THE REASONS I DIDN'T WANT TO GET

16     INTO THAT PART OF IT IS THE COURT IS SUPPOSED TO LOOK AT WHAT

17     EVIDENCE DID THE GOVERNMENT HAVE IN ORDER TO START THE

18     INVESTIGATION.  I LISTED THAT FOR THE RECORD BECAUSE THEY

19     CLEARLY HAD THE FEC REPORT, THE OCE REPORT.  MR. HUNTER

20     DEFINITELY RESIDES IN THIS DISTRICT, HAS OFFICES IN THIS

21     DISTRICT.  THE SEARCH WARRANT WASN'T EXECUTED UNTIL WELL AFTER

22     THOSE REPORTS OR LETTERS BECAME OF PUBLIC KNOWLEDGE.  THE

23     OBVIOUS LOGICAL AGENCY TO INVESTIGATE ANY POTENTIAL CRIMINAL

24     ALLEGATIONS AS A RESULT OF MISUSE OF CAMPAIGN FUNDS WOULD FALL

25     UPON THE U.S. ATTORNEY'S OFFICE IN THIS DISTRICT, AND MY

1     INDEPENDENT BELIEF IS THAT AN OBJECTIVE OBSERVER WOULD FIND THE

2     GOVERNMENT HAD PROBABLE CAUSE TO START THAT INVESTIGATION

3     REGARDLESS OF WHETHER ANYONE ATTENDED A POLITICAL EVENT SOME

4     TWO YEARS LATER OR HAD THEIR PICTURE TAKEN OR DIDN'T HAVE THEIR

5     PICTURE TAKEN.  THERE'S NO QUESTION THEY DIDN'T PAY TO BE

6     THERE.  EVEN IF THEY WERE THERE STRICTLY FOR TAKING A PHOTO, I

7     DON'T THINK THAT THAT WOULD MEAN THE GOVERNMENT DIDN'T HAVE

8     PROBABLE CAUSE TO START THE INVESTIGATION THAT THEY STARTED.

9     SO I ADOPT MY TENTATIVE.  THE MOTION TO RECUSE OR DISMISS IS

10    DENIED.

11         THAT TAKES US TO THE CHANGE OF VENUE MOTION, THAT'S

12    DOCKET NUMBER 37-1.  IN THAT REGARD, COURTS RECOGNIZE BASICALLY

13    TWO TYPES OF PREJUDICE THAT MAY JUSTIFY A CHANGE OF VENUE,

14    EITHER HAVE PRESUMED PREJUDICE OR ACTUAL PREJUDICE.  WITH

15    REGARD TO PRESUMED PREJUDICE, BASED ON THE INFORMATION IN THE

16    PARTIES' PAPERS, THE COURT WOULD FIND THAT THERE'S AN

17    INADEQUATE SHOWING OF A PRESUMPTIVE PREJUDICE.

18         I NOTE THAT THE DEFENDANT, AS MR. VEGA INDICATED, WAS

19    IN FACT REELECTED TO CONGRESS AFTER THE INDICTMENT WAS

20    RETURNED, AND ALSO AFTER THE EDITORIALS THAT HE RELIES ON,

21    SPECIFICALLY THE "GETTING THE FEDERAL PROBE HE DESERVES" AND

22    THE "ANYONE BUT HUNTER," WERE PUBLISHED.  THEREFORE, IT'S

23    PRETTY CLEAR TO THE COURT THAT THERE ISN'T ANY PRESUMED

24    PREJUDICE.

25         ACTUAL PREJUDICE REALLY CAN'T BE DETERMINED UNTIL WE

1  GET TO JURY SELECTION TO SEE WHETHER OR NOT WE CAN GET A JURY,

2  SO I WOULD INTEND TO DEFER THE QUESTION OF ACTUAL PREJUDICE

3  UNTIL WE GET TO JURY SELECTION.  DOES EITHER PARTY WANT TO BE

4  HEARD ON THE VENUE ISSUE?

5          MR. ARIAS:  YES, YOUR HONOR.  GOOD MORNING, YOUR HONOR.

6          THE COURT:  GOOD MORNING, SIR.

7          MR. ARIAS:  AS TO THE PRESUMPTIVE PREJUDICE ISSUE, THE

8  EDITORIAL, ESPECIALLY FOR THE SAN DIEGO UNION TRIBUNE, HAS

9  CITED SEVERAL INSTANCES WHERE THEY HAVE GONE VERY HARD ON MR.

10  HUNTER IN TERMS OF THE NEGATIVE PUBLICITY AS TO THIS CASE, BUT

11  ALSO AS TO IMPLYING GUILT, AND THIS GOES AS TO THE PREJUDICIAL

12  ASPECT TOWARDS -- OF THE POTENTIAL JURY POOL.

13          IN THE MOVING PAPERS, ACTUALLY THE GOVERNMENT FILED THE

14  *AINSWORTH* CASE NOTES HOW -- IT'S PREJUDICIAL FOR JUST FACTUAL

15  NEWS ARTICLES, BUT IT SPECIFICALLY CITES HOW EDITORIAL MATERIAL

16  CAN BE INFLAMMATORY.  AND IN THIS PARTICULAR CASE, THESE

17  EDITORIAL NEWS ARTICLES, ARE WHAT'S CAUSING THIS INFLAMMATORY

18  NATURE TO RISE TO THE LEVEL OF PRESUMPTIVE PREJUDICE.

19          THE COURT NOTES THAT THE CONGRESSMAN DID WIN HIS

20  REELECTION, BUT THAT HAS NOT STOPPED THESE EDITORIAL ARTICLES

21  TO KEEP COMING, AND IT'S ALMOST A WEEKLY BARRAGE.  WE HAD ONE

22  RIGHT AFTER THIS VERY MOTION WAS FILED, AND WE'LL PROBABLY HAVE

23  ONE RIGHT AFTER THIS HEARING TODAY.

24          HOW THIS PLAYS INTO THIS PRESUMPTION OF PREJUDICE IS

25  BASICALLY HOW PREJUDICIAL AND INFLAMMATORY THE MEDIA PUBLICITY

1    ABOUT THIS CASE IS, AND HOW EVEN THE BEST-INTENTIONED JUROR

2    WILL NOT BE ABLE TO KEEP AN OPEN MIND ABOUT THIS CASE.  I MEAN,

3    EVEN IN OUR FIRST COURT APPEARANCE IN FRONT OF YOUR HONOR HERE

4    WE HAD THE JURY BOX FILLED WITH REPORTERS.

5    IN TERMS OF THE ACTUAL PREJUDICE ARGUMENT, THE COURT IS

6    CORRECT THAT THIS IS DONE ONCE WE CHOOSE A JURY; HOWEVER, IT IS

7    SOMETHING WE CAN ADDRESS TODAY IN THE SENSE OF HOW ANY JUROR

8    THAT SAYS THEY CAN BE UNBIASED WILL BE AFFECTED BY THE CIRCUS

9    THAT IS GOING ON OUTSIDE THIS VERY COURTROOM, AS IT IS TODAY,

10   BUT AS IT WILL BE ONCE TRIAL STARTS.  SO ANY JUROR THAT SAYS

11   THEY CAN BE UNBIASED, EVERY DAY THAT THEY WALK INTO COURT,

12   SEEING SIGNS OF "LOCK HIM UP" OR POINTING TOWARD THE

13   CONGRESSMAN'S PRESUMED GUILT, WILL BREAK DOWN, SO THERE IS THAT

14   THAT THE COURT SHOULD CONSIDER.

15   TAKING INTO ACCOUNT THE SIMILARITIES IN THE *SHEPPARD*

16   CASE, WHERE THERE WERE FRONT -- NEWS EDITORIALS CALLING FOR THE

17   DEFENDANT TO BE LOCKED AWAY, THAT HE WAS GUILTY, ALL THESE

18   OTHER ISSUES, WE HAVE -- IN THIS CASE WE HAVE MR. HUNTER'S

19   POLITICAL OPPONENT GIVING PRESS CONFERENCES RIGHT AFTER HIS

20   ARRAIGNMENT, AND THEN RIGHT AFTER THE LAST COURT HEARING.

21   SO ONCE AGAIN, YOUR HONOR, ANY WELL-INTENTIONED JUROR

22   THERE IS NO WAY THAT THEY WOULD BE ABLE TO REMAIN UNBIASED ONCE

23   TRIAL STARTS, AND ONCE THE JURY IS IMPANELED, SO THERE IS AN

24   ISSUE OF ACTUAL PREJUDICE THAT THE COURT MAY CONSIDER TODAY.

25   IN TERMS OF -- JUST BRIEFLY IN TERMS OF HOW THE VENUE

1  IS PROPER IN THE EASTERN DISTRICT, ONE OF THE GOVERNMENT'S

2  OVERT ACTS -- ACTUALLY IN THE INDICTMENT, IN PARAGRAPH 22, ONE

3  OF THE FIRST OVERT ACTS MENTIONS LAKE TAHOE, WHICH IS IN EL

4  DORADO COUNTY IN THE EASTERN DISTRICT; THEREFORE, VENUE WOULD

5  BE MORE PROPER IN THE EASTERN DISTRICT BASED ON HOW

6  INFLAMMATORY THE EDITORIAL BOARD, THE SAN DIEGO UNION TRIBUNE,

7  THE PRESS COVERAGE HAS BEEN LOCALLY HERE IN THE SOUTHERN

8  DISTRICT OF CALIFORNIA.  THANK YOU, YOUR HONOR.

9          THE COURT:  WELL, LET ME JUST RESPOND TO THAT BRIEFLY.

10  AS A GENERAL RULE, IF THERE WAS A CHANGE OF VENUE, AND I'M NOT

11  SAYING THERE IS EVEN CLOSE TO BEING ONE -- I'VE HANDLED MANY

12  HIGH-PUBLICITY CASES IN MY CAREER -- IN ANY EVENT, EVEN IF IT

13  WAS, AS A GENERAL RULE WE WOULD TRANSFER IT TO A JOINT

14  DISTRICT.  WE DON'T LET THE PARTIES PICK WHERE IT'S TRANSFERRED

15  TO, JUST SO YOU'RE AWARE OF THAT.

16          DOES THE GOVERNMENT WANT TO RESPOND?

17          MR. CONOVER:  NO, YOUR HONOR, THANK YOU.

18          THE COURT:  I WOULD JUST INDICATE, COUNSEL, I'M AWARE

19  OF THE DIFFERENCE BETWEEN THE ACTUAL AND PRESUMPTIVE PREJUDICE,

20  AND MY POINT WITH A PRESUMPTIVE PREJUDICE IS THAT THERE'S

21  ABSOLUTELY NO QUESTION THAT YOUR CLIENT HAD TWO NEGATIVE

22  EDITORIALS PRIOR TO THE ELECTION, PLUS BEING INDICTED PRIOR TO

23  THE ELECTION, AND HE STILL WON THE ELECTION PRETTY EASILY, SO

24  THAT DOESN'T INDICATE TO ME THAT THERE'S ANY PRESUMED

25  PREJUDICE.  SO THAT'S JUST -- THE FACTS JUST DON'T SUPPORT THAT

1    AT THIS POINT.

2         AGAIN, I DON'T KNOW WHAT WILL HAPPEN WHEN WE GET TO

3    JURY SELECTION, BUT I CERTAINLY WILL CONSIDER AN ACTUAL

4    PREJUDICE CHANGE OF VENUE IF THAT BECOMES NECESSARY, BUT FOR

5    NOW I ADOPT MY TENTATIVE. A MOTION TO CHANGE VENUE FOR

6    PRESUMED PREJUDICE IS DENIED. THE MOTION TO CHANGE VENUE FOR

7    ACTUAL PREJUDICE IS GOING TO BE DEFERRED UNTIL THE TIME OF

8    TRIAL.

9         THAT TAKES US TO DOCKET NUMBER 38-1, THAT'S A DEFENSE

10   MOTION TO DISMISS THE INDICTMENT FOR VIOLATION OF THE SPEECH

11   AND DEBATE CLAUSE OF THE CONSTITUTION. BACKGROUND WITH REGARD

12   TO THAT IS THE SPEECH AND DEBATE CLAUSE BASICALLY PROTECTS

13   MEMBERS OF CONGRESS FROM INQUIRY INTO THE LEGISLATIVE ACTS OR

14   THEIR MOTIVATION FOR ANY LEGISLATIVE ACT. I REALIZE THAT'S

15   KIND OF A SIMPLE SUMMATION, BUT IN ESSENCE IS WHAT IT'S FOR.

16        THE ISSUE HERE IS THE CHALLENGED CONDUCT BY -- I SHOULD

17   SAY THE CONDUCT THE DEFENDANT IS CHALLENGING DO THEY QUALIFY AS

18   LEGISLATIVE ACTS? THE LAW IN THE AREA IS THAT LEGISLATIVE ACTS

19   DO NOT INCLUDE ALL THINGS THAT IN ANY WAY ARE RELATED TO THE

20   LEGISLATIVE PROCESS, THEY ONLY CAN COVER THOSE THAT ARE DONE IN

21   THE COURSE OF THE PROCESS OF ENACTING LEGISLATION THAT ARE

22   PROTECTED.

23        THE DEFENDANT IN ESSENCE CONTENDS THAT THREE ITEMS OF

24   EVIDENCE THAT APPARENTLY WERE PRESENTED TO THE GRAND JURY

25   INVOLVE LEGISLATIVE ACT MATERIAL, AND THAT THEREFORE THE

1 INDICTMENT HAS TO BE DISMISSED.  THE FIRST IS THE OFFICE OF

2 CONGRESSIONAL ETHICS REPORT WHICH IS -- WHICH WAS ALLEGED THE

3 MISUSE OF CAMPAIGN FUNDS.  THE SECOND BEING TESTIMONY FROM THE

4 DEFENDANT'S PRIOR OR FORMER CHIEF OF STAFF REGARDING HIS

5 RESPONSE TO THAT REPORT.  AND THE THIRD BEING EVIDENCE THAT THE

6 DEFENDANT ATTEMPTED TO SCHEDULE A TOUR OF A NAVY BASE DURING A

7 FAMILY VACATION IN ITALY.

8   MY TENTATIVE -- I'LL GIVE REASONS FOR MY TENTATIVE --

9 WOULD BE TO FIND THAT NONE OF THOSE ITEMS INVOLVED LEGISLATIVE

10 ACTS AND THEREFORE WOULD NOT BE THE BASIS FOR THE COURT TO

11 DISMISS BASED ON A VIOLATION OF THE SPEECH AND DEBATE CLAUSE.

12   WITH REGARD TO THE OCE REPORT, JUST BY WAY OF

13 BACKGROUND, THE OFFICE OF CONGRESSIONAL ETHICS IS A

14 NON-PARTISAN GROUP OR ENTITY OF PRIVATE CITIZENS.  TO BE A

15 MEMBER OF THAT COMMISSION, YOU CANNOT BE A MEMBER OF THE HOUSE.

16 YOU CAN'T EVEN BE AN EMPLOYEE OF THE FEDERAL GOVERNMENT.  THE

17 OCE IS NOT A PART OF THE HOUSE OF REPRESENTATIVES.  IT REVIEWS

18 ALLEGATIONS OF ALLEGED MISCONDUCT BOTH BY HOUSE MEMBERS AND BY

19 STAFF OF HOUSE MEMBERS, AND IT SUBMITS THOSE REPORTS -- OR AT

20 LEAST I SHOULD SAY THOSE REPORTS TO THE PUBLIC.

21   THE OCE REPORT IN THIS CASE DOES NOT REFLECT WHAT ANY

22 HOUSE MEMBER SAID OR DID OR HOW THEY VOTED ON ANY PROPOSED

23 LEGISLATION.  IT'S NOT RELATED TO THE PROCESS OF ENACTING ANY

24 LEGISLATION.  THE REPORT CONCERNS THE OCE'S FINDINGS REGARDING

25 THE DEFENDANT'S ALLEGED MISCONDUCT IN USING HIS CAMPAIGN FUNDS.

1    BECAUSE THE REPORT DOESN'T INVOLVE PROPOSED LEGISLATION, THE

2    DEFENDANT AND STAFF'S RESPONSES ARE NOT AN INTEGRAL PART OF THE

3    DELIBERATIVE AND COMMUNICATION PROCESS BY WHICH MEMBERS

4    PARTICIPATE IN HOUSE PROCEEDINGS, AND REGARDING -- OR REGARDING

5    THE CONSIDERATION OF PROPOSED LEGISLATION; THEREFORE, IN THE

6    COURT'S VIEW, THE RESPONSES TO THAT WERE NOT LEGISLATIVE ACTS

7    AND WERE MORE IN THE NATURE OF A NEWS RELEASE OR POLITICAL

8    RESPONSE TO THE ITEMS CONTAINED IN THE REPORT.

9        WITH REGARD TO THE THIRD ALLEGATION, THE UNITED STATES

10   SUPREME COURT HAS STATED THAT GENERALLY THE MAKING OF AN

11   APPOINTMENT WITH A GOVERNMENT AGENCY IS NOT PROTECTED UNDER THE

12   SPEECH AND DEBATE CLAUSE, AND THEREFORE THAT -- THE FACT OF HIM

13   MAKING AN APPOINTMENT WOULD NOT QUALIFY AS FOR PROTECTION.

14       NONE OF THE COMMUNICATIONS WHICH THE COURT HAS READ,

15   BETWEEN THE DEFENDANT, HIS CODEFENDANT AND HIS CHIEF OF STAFF,

16   REVEALED ANYTHING ABOUT ANYTHING ABOUT PROPOSED LEGISLATION

17   CONCERNING THE NAVY BASE.  THE EXHIBITS SHOW THAT THE

18   DEFENDANTS BEGAN PLANNING THEIR VACATION TO ITALY SOMETIME IN

19   APRIL OF 2015.  THE EMAIL CONCERNING THE POSSIBLE VISIT TO THE

20   BASE WAS SENT ON NOVEMBER 2ND, 2015, INDICATING THEY WERE

21   LOOKING AT A POSSIBLE VISITATION ON NOVEMBER 25TH OR 26TH.

22       IT ALSO CONFIRMS -- THE EMAIL I SHOULD SAY ALSO

23   CONFIRMS THAT THE VACATION WAS GOING TO GO FORWARD REGARDLESS

24   OF WHETHER OR NOT THEY COULD BE ACCOMMODATED FOR A VISIT TO THE

25   NAVY BASE.  EVEN THOUGH THE NAVY BASE APPARENTLY WAS ABLE TO

1    ACCOMMODATE A VISIT ON NOVEMBER 25TH, FOR WHATEVER REASON THE

2    DEFENDANTS DECIDED NOT TO MAKE THE VISIT.

3         ASSUMING FOR THE SAKE OF ARGUMENT THAT THE VISIT, HAD

4    IT BEEN MADE, WOULD HAVE BEEN A LEGISLATIVE ACT, THE FACT OR

5    PROMISE TO MAKE A VISIT IS NOT PROTECTED AND IS NOT A

6    LEGISLATIVE ACT.  THE COMMUNICATIONS TO SCHEDULE A POSSIBLE

7    VISIT TO THE BASE IN ITALY WERE NOT LEGISLATIVE ACTS.

8         I NOTE THAT THE DEFENDANT'S RELIANCE ON THE *EILBERG*

9    CASE -- AND FOR MY REPORTER'S SAKE THAT'S SPELLED

10   E-I-L-B-E-R-G -- THAT CASE IS DISTINGUISHABLE, IN THE COURT'S

11   MIND, BECAUSE THAT CASE INVOLVED THE ETHICS COMMITTEE OF THE

12   HOUSE OF REPRESENTATIVES.  IN THIS CASE -- THE OCE IS NOT A

13   CONGRESSIONAL COMMITTEE, AND IN FACT IT EVEN INVESTIGATES

14   REFERRALS THAT ARE GIVEN TO IT BY THE PUBLIC.  BECAUSE NONE OF

15   THE ITEMS CONTESTED BY THE DEFENSE, IN THE COURT'S MIND,

16   CONSTITUTE LEGISLATIVE ACTS, THEY ARE NOT PROTECTED BY THE

17   SPEECH AND DEBATE CLAUSE AND MY TENTATIVE WOULD BE DENIAL OF

18   THE DEFENSE MOTION, TO DENY THE DEFENSE MOTION TO DISMISS BASED

19   ON A VIOLATION OF THE SPEECH AND DEBATE CLAUSE.

20        I'LL CERTAINLY LISTEN TO ANYBODY THAT WANTS TO BE

21   HEARD.

22        MR. VEGA:  JUST BRIEFLY, YOUR HONOR.  AS WE MAKE

23   NOTE -- I MEAN, WE'RE AWARE OF THE *RENZI* CASE IN THE NINTH

24   CIRCUIT.  WE CITE IT.  WE ACKNOWLEDGE IT, BUT WE DO BELIEVE

25   THAT THE LEGISLATIVE FACT FINDING PROCESS DOES COME WITHIN THE

1    SPEECH OR DEBATE CLAUSE, AND MR. HUNTER'S ATTEMPTS TO VISIT THE

2    SIXTH FLEET NAVY BASE IN ITALY, AND THE COMMUNICATIONS WITH THE

3    DEPARTMENT OF THE NAVY, WOULD COME WITHIN THAT, AND WE WOULD

4    JUST NOTE FOR THE RECORD THAT WOULD BE OUR OBJECTION TO THE

5    COURT'S RULING.

6         THE COURT:  I UNDERSTAND YOUR POSITION.  I RESPECTFULLY

7    DISAGREE.

8         GOVERNMENT WANT TO BE HEARD?

9         MS. ALLEN:  YOUR HONOR, I THINK IT'S TELLING THAT THE

10   NAVAL BASE VISIT WAS SET UP BY MR. HUNTER'S WIFE AND CAMPAIGN

11   MANAGER, AND IT WASN'T A REQUEST TO TOUR THE SIXTH FLEET NAVAL

12   BASE BUT ANY BASE IN OR AROUND NAPLES, WHERE THE FAMILY

13   HAPPENED TO BE ON THEIR FAMILY VACATION.

14        SO I THINK -- THE GOVERNMENT'S ASKED THE COURT FOR A

15   FINDING FOR A COUPLE OF REASONS; FIRST, BECAUSE OF THE

16   PRIVILEGE THAT WOULD APPLY AGAINST INTRODUCING EVIDENCE AT

17   TRIAL, AND ALSO BECAUSE OF THE RIGHT THAT DEFENDANTS HAVE IN

18   THIS CONTEXT TO AN INTERLOCUTORY APPEAL, AND THE NINTH CIRCUIT

19   REVIEW OF THIS COURT'S FACTUAL DETERMINATIONS, WE'VE ASKED FOR

20   THE COURT TO MAKE A SET OF FINDINGS TO ASSIST THAT REVIEW.  I

21   HAVE A PROPOSED ORDER HERE, IF THE COURT WOULD LIKE FOR ME TO

22   PASS THAT UP OR I CAN SUBMIT IT LATER VIA ECF.

23        THE COURT:  WELL, WHY DON'T YOU SUBMIT IT LATER BUT

24   SHOW IT TO DEFENSE COUNSEL BEFORE YOU SUBMIT IT.

25        MS. ALLEN:  ABSOLUTELY.

1          THE COURT:  AND I CAN ADDRESS THAT LATER.

2          MS. ALLEN:  OKAY.

3          THE COURT:  I'LL ADOPT MY TENTATIVE.  I UNDERSTAND MR.

4     VEGA'S POSITION.  AS I READ THE CURRENT STATE OF THE LAW, MY

5     RULING IS ACCURATE, BUT THAT'S WHY WE HAVE COURTS OF APPEAL.

6          THAT TAKES US TO DOCKET NUMBER 40-1, THAT'S A MOTION TO

7     DISCLOSE OR PRODUCE GRAND JURY MATERIAL.  SPECIFICALLY, THE

8     DEFENSE SEEKS TO THE DISCOVERY MATERIAL PRESENTED TO THE GRAND

9     JURY BASICALLY FOR TWO REASONS; FIRST WAS THAT THEY NEED IT

10    BECAUSE OF STAFF MEMBERS TESTIMONY REGARDING HIS RESPONSE TO

11    THE OCE REPORT.  HE NEEDS THAT TO SUPPORT HIS MOTION TO DISMISS

12    THE INDICTMENT BASED ON VIOLATION OF THE SPEECH AND DEBATE

13    CLAUSE.  SINCE I'VE JUST FOUND THAT THE OCE REPORT AND THE

14    DEFENDANT'S RESPONSE DID NOT INVOLVE LEGISLATIVE ACTS THAT ARE

15    PROTECTED BY THE SPEECH AND DEBATE CLAUSE, THAT REQUEST WOULD

16    BE DENIED.

17         THE SECOND REASON HE SEEKS IT IS THAT THE GRAND JURY

18    MATERIAL HE STATES IS NEEDED BECAUSE THE INDICTMENT'S VAGUE

19    REFERENCE TO FEDERAL LAW REGARDING WHAT IS A REGULAR DISCLOSURE

20    OF CAMPAIGN FINANCE EXPENDITURE.  THE DEFENDANT, IN ESSENCE,

21    CONTENDS THAT BECAUSE OF THE VAGUE REFERENCE IT'S UNCLEAR

22    WHETHER THE GRAND JURY WAS PROPERLY INSTRUCTED ON THE LAW THAT

23    APPLIES.  IN RESPONSE TO THAT, WHILE THE INDICTMENT DOES

24    MENTION FEDERAL -- A VIOLATION OF FEDERAL LAW IN PARAGRAPH 4,

25    IT THEN PROCEEDS TO TRACK ALMOST VERBATIM THE LANGUAGE OF TITLE

1    52, SECTION 3104; THEREFORE, THE COURT DISAGREES THAT IT'S

2    UNCLEAR WHETHER THE GRAND JURY WAS PROPERLY INSTRUCTED.

3         I WOULD ALSO NOTE THAT DISMISSAL WOULD ONLY BE

4    APPROPRIATE IF THE DEFENDANT ESTABLISHED AN ERROR IN THE GRAND

5    JURY PROCEEDINGS THAT SUBSTANTIALLY INFLUENCED THE DECISION TO

6    INDICT.  THEREFORE, IN THE COURT'S MIND, ANY MISSTATEMENT AS TO

7    WHETHER SECTION 3104 OR SOME OTHER FEDERAL LAW IMPOSED THE

8    OBLIGATION REALLY IS NOT -- IS IMMATERIAL BECAUSE IT JUST HAS

9    NOTHING TO DO WITH THE ELEMENTS OF THE CONSPIRACY, THE WIRE

10   FRAUD, THE ALLEGED FALSIFICATION OF RECORDS OR THE EMBEZZLEMENT

11   CHARGES THAT ARE CONTAINED IN THE INDICTMENT, SO FOR THOSE

12   REASONS I WOULD FIND THAT THE DEFENSE HAS NOT MADE A

13   PARTICULARIZED SHOWING OF A NEED FOR DISCLOSURE OF THE GRAND

14   JURY MATERIALS.  MY TENTATIVE WOULD BE TO DENY THE MOTION.

15   I'LL CERTAINLY LISTEN TO EVERYBODY.

16        MR. VEGA:  NO.

17        MS. ALLEN:  NO, YOUR HONOR.

18        THE COURT:  NEXT IS DOCKET NUMBER 44-1, THAT'S THE

19   DEFENSE MOTION TO DISMISS COUNTS 58 TO 60.  BY WAY OF

20   BACKGROUND WITH REGARD TO THAT MOTION, DOCKET NUMBERS -- COUNTS

21   58 TO 60 ALLEGE VIOLATIONS OF THE FEDERAL ELECTION CAMPAIGN

22   ACT, COMMONLY REFERRED TO AS THE FECA, WHICH PROHIBITS THE

23   CONVERSION OF CAMPAIGN FUNDS TO PERSONAL USE.  THE DEFENDANT'S

24   POSITION IS THAT PROSECUTION IS BARRED BECAUSE THE COUNTS OF --

25   THREE COUNTS, NUMBER 1, THEY IMPLICATE THE NECESSITY FOR THE

1        COURT TO INTERPRET HOUSE RULES.  SECOND, THE STATUTE IS VAGUE.

2        AND THIRD, THE STATUTE IMPEDES FIRST AMENDMENT ACTIVITY.  AND

3        ACTUALLY THERE'S A FOURTH ALSO, THEY ALSO CONTEND THAT THERE'S

4        A POLICY OR PREFERENCE TO RESOLVE CAMPAIGN EXPENDITURES USED

5        VIA CIVIL PROCEEDINGS RATHER THAN CRIMINAL PROCEEDINGS.

6              THE COURT WOULD FIND THAT WITH REGARD TO THE FIRST

7        ALLEGATION THAT THE DEFENDANT IS BEING PROSECUTED FOR VIOLATION

8        OF A CRIMINAL STATUTE, NOT A HOUSE RULE, SO I DON'T SEE WHERE

9        THERE'S GOING TO BE ANY NEED AT ALL FOR THE COURT TO APPLY OR

10       INTERPRET ANY HOUSE RULE.

11             WITH REGARD TO THE SECOND CONTENTION, THE COURT WOULD

12       FIND THAT THE IRRESPECTIVE TEST IN THE ACT IS NOT VAGUE.  THE

13       IRRESPECTIVE TEST AND I'LL HAVE TO DO THIS BASICALLY OFF THE

14       TOP OF MY HEAD AND, I REALIZE THIS IS NOT COMPLETELY ACCURATE,

15       BUT IN ESSENCE WHAT THEY'RE REFERRING TO IS THE ACT SAYS THAT

16       CONTRIBUTIONS ARE CONSIDERED TO BE CONVERTED IF THE USE -- IF

17       THEY'RE USED TO FULFILL AN EXPENSE OR OBLIGATION THAT WOULD

18       OTHERWISE BE INCURRED IRRESPECTIVE OF THE PERSON'S CAMPAIGN

19       FUND OR OTHER FEDERAL DUTIES.

20             THE COURT FINDS THAT THE IRRESPECTIVE TEST, THE ACT, IS

21       NOT VAGUE.  THE COURTS ARE SUPPOSED TO USE THE COMMON SENSE

22       APPROACH IN ASSUMING -- DETERMINING THE CONSTITUTIONAL

23       CHALLENGE WAS BASED ON VAGUENESS.  HERE THE COMMON SENSE

24       READING, IN THE COURT'S MIND, OF THE STATUTE WOULD CLEARLY

25       ESTABLISH THAT THE STATUTE DOES NOT -- EXCUSE ME, THAT A

1      CONSTITUENT, I SHOULD SAY, OR CANDIDATE WOULD VIOLATE THE ACT

2      WHEN HE OR SHE KNOWINGLY OR WILLFULLY USED CAMPAIGN FUNDS FOR

3      AN EXPENSE THAT WOULD OCCUR REGARDLESS OF THE CANDIDACY.  IN

4      OTHER WORDS, THE DEFENDANT HERE I BELIEVE COULD REASONABLY

5      UNDERSTAND THAT USING CAMPAIGN FUNDS FOR SCHOOL TUITION OR

6      VACATION OR CLOTHING, ETC., WOULD NOT PASS THE IRRESPECTIVE

7      TEST BECAUSE THOSE EXPENSES EXIST IRRESPECTIVE OF HIS CANDIDACY

8      OR ANY DUTY AS A FEDERAL OFFICE HOLDER.

9          WITH REGARD TO THE THIRD CONTENTION THAT THE STATUTE IS

10     FACIALLY VAGUE BECAUSE IN SOME HYPOTHETICAL SITUATION IT COULD

11     IMPEDE A FIRST AMENDMENT ACTIVITY, THAT ALLEGATION FAILS

12     BECAUSE OF NINTH CIRCUIT LAW.  THE NINTH CIRCUIT HAS HELD THAT

13     SPECULATION ABOUT POSSIBLE VAGUENESS IN A HYPOTHETICAL

14     SITUATION IS NOT SUFFICIENT TO FIND A STATUTE FACIALLY VAGUE ON

15     THE GROUNDS THAT THE STATUTE IS VALID IN MOST OF ITS CUSTOMARY

16     SITUATIONS, AND THEREFORE IT CANNOT BE FOUND FACIALLY VAGUE.

17         FOR ALL OF THOSE -- I GUESS THERE'S ONE MORE.  THE

18     FOURTH ONE WAS THAT THERE WAS A PREFERENCE FOR USING CIVIL

19     PROCEDURES RATHER THAN A CRIMINAL PROCEDURE TO ENFORCE

20     VIOLATIONS OF THE ACT.  THE DEFENSE IS CORRECT THAT THE FEDERAL

21     ELECTION COMMISSION CAN USE WHAT THEY CALL A CONCILIATION

22     AGREEMENT, I BELIEVE IS THE TERM, FOR A VIOLATION.  THERE ISN'T

23     ANY REQUIREMENT AT ALL THAT THEY DO SO.

24         ALSO, THE FEDERAL ELECTION COMMISSION DOESN'T HAVE

25     PREEMPTIVE ENFORCEMENT OVER THE DEPARTMENT OF JUSTICE.  I'D

1      NOTE THAT THE NINTH CIRCUIT TRADITIONALLY HELD THAT THE

2      ATTORNEY GENERAL OR, I.E., THE DEPARTMENT OF JUSTICE DOES NOT

3      NEED PERMISSION FROM THE FEC TO PROSECUTE AN FEC VIOLATION,

4      THEREFORE, MY TENTATIVE WOULD BE TO DENY THE MOTION TO DISMISS

5      COUNTS 58 TO 60.

6           I'LL CERTAINLY LISTEN TO ANYBODY THAT WANTS TO BE HEARD

7      ON THAT ISSUE.

8           MR. ADAMS:  GOOD MORNING, YOUR HONOR.

9           THE COURT:  GOOD MORNING, SIR.

10          MR. ADAMS:  YOUR HONOR, WE WOULD REQUEST THAT THE COURT

11     RECONSIDER ITS TENTATIVE DECISION TO DISMISS THESE COUNTS ON

12     TWO MAIN BASES; ONE, IN ATTEMPTING TO PROVE TO THE COURT'S

13     CLAIM EARLIER THAT THE GOVERNMENT WILL NOT IN ANY WAY RELY ON

14     HOUSE RULES, SPECIFICALLY HOUSE RULE 23, CLAUSE 6, WHICH SETS

15     OUT WHAT CONSTITUTES A PERMISSIBLE USE OF THE CANDIDATE'S

16     CAMPAIGN FUNDS.  IN ATTEMPTING TO PROVE THAT MR. HUNTER

17     VIOLATED SECTION 30114(B), THE COURT WILL NECESSARILY NEED TO

18     INTERPRET HOUSE RULE 23, CLAUSE 6, BECAUSE THE CONGRESSMAN'S

19     UNDERSTANDING OF WHAT CONSTITUTES A PERMISSIBLE USE OF HIS

20     CAMPAIGN FUNDS IS DIRECTLY SHAPED BY HIS UNDERSTANDING OF THAT

21     RULE.

22          INDEED, THE HOUSE ETHICS RULE STATES SPECIFICALLY THAT

23     A CANDIDATE'S USE OF CAMPAIGN FUNDS IS NOT PERMISSIBLE UNLESS

24     IT COMPLIES WITH BOTH FECA, 30114(B) SPECIFICALLY, AND THE

25     HOUSE RULES.  SO IN ORDER TO EVEN -- FOR THE CONGRESSMAN TO

1    UNDERSTAND WHAT CONSTITUTES A PERMISSIBLE USE OF HIS CAMPAIGN

2    FUNDS, HE WOULD NECESSARILY HAVE TO RELY ON THAT HOUSE RULE,

3    WHICH IS THE EXACT SAME THING AS HIS UNDERSTANDING OF WHAT

4    CONSTITUTES A PERMISSIBLE USE OF CAMPAIGN FUNDS IN ACCORDANCE

5    WITH 30114(B).

6          NOW, WITH RESPECT TO THE COURT'S POSITION THAT THE

7    IRRESPECTIVE TEST ITSELF IS NOT VAGUE, AND THE GOVERNMENT'S

8    CONTENTION IN ITS OBJECTION TO THIS MOTION THAT COMMON SENSE

9    ALONE INFORMS AND SUPPLIES A BASIS FOR UNDERSTANDING THE

10   IRRESPECTIVE TEST, THE FEC HAS ISSUED DOZENS OF ADVISORY

11   OPINIONS EXPLAINING WHAT CONSTITUTES THE PERSONAL USE OF

12   CAMPAIGN FUNDS IN ANY GIVEN CIRCUMSTANCE.

13         I WOULD SUBMIT TO THE COURT THAT IF COMMON SENSE ALONE

14   DID INDEED SUPPLY A CLEAR-CUT ANSWER IN EVERY FACTUAL

15   CIRCUMSTANCE AS TO WHAT CONSTITUTES A PERSONAL USE OF CAMPAIGN

16   FUNDS, THERE WOULD BE NO NEED FOR THE FEC TO ISSUE DOZENS OF

17   ADVISORY OPINIONS EXPLAINING HOW UNDER CERTAIN CIRCUMSTANCES

18   THERE COULD BE A PERMISSIBLE USE OF CAMPAIGN FUNDS.

19         I USE AN EXAMPLE THAT IS APPLICABLE TO THIS CASE.  IF

20   THE CONGRESSMAN WERE TO GO GOLFING WITH INDIVIDUAL 1A, WHICH IS

21   SPECIFICALLY ALLEGED IN THE INDICTMENT, AND INDIVIDUAL 1A WAS

22   INTRODUCED TO THE CONGRESSMAN AS A CAMPAIGN VOLUNTEER, AND THE

23   CONGRESSMAN BELIEVED THAT HIS MAINTAINING A RELATIONSHIP WITH

24   INDIVIDUAL 1A HAD SUBSTANTIAL BENEFIT AND VALUE TO HIS FUTURE

25   CAMPAIGNS.  NOW, IF THE CONGRESSMAN GOES GOLFING WITH

1      INDIVIDUAL 1A AND USES CAMPAIGN FUNDS FOR THE ROUND OF GOLF,

2      FOR THE PURPOSE OF MAINTAINING THAT RELATIONSHIP, AND HE WRITES

3      "GOLF" DOWN AS A CAMPAIGN -- AS THE EXPLANATION FOR THE USE OF

4      THOSE CAMPAIGN FUNDS, IT'S EXTREMELY VAGUE AS TO WHY THE

5      CONGRESSMAN WOULD NOT BE ABLE TO USE CAMPAIGN FUNDS FOR THE

6      PURPOSE OF PLAYING THAT ROUND OF GOLF, ESPECIALLY BECAUSE HIS

7      RELATIONSHIP WITH INDIVIDUAL 1A WOULD NEVER HAVE EXISTED TO

8      BEGIN WITH IRRESPECTIVE OF HIS CAMPAIGN OR DUTIES AS A FEDERAL

9      OFFICE HOLDER.

10          FOR THOSE REASONS, WE WOULD ASK THAT THE COURT

11     RECONSIDER ITS DECISION, ESPECIALLY IN LIGHT OF THE FACT THAT

12     THE CONGRESSMAN COULD NOT HAVE REASONABLY KNOWN WHETHER OR NOT

13     -- AT WHAT JUNCTURE HIS RELATIONSHIP WITH INDIVIDUAL 1A WAS

14     SUFFICIENTLY DISTANCED FROM THE INITIAL CAMPAIGN VOLUNTEER AND

15     HIS ONGOING BENEFIT TO THE CAMPAIGN, GIVEN THAT HE BEGAN THE

16     ENTIRE RELATIONSHIP WITH INDIVIDUAL 1A AS A CAMPAIGN VOLUNTEER

17     AND MAINTAINS A GOOD FAITH BELIEF THAT THERE IS ONGOING BENEFIT

18     IN USING CAMPAIGN FUNDS TO MAINTAIN HIS RELATIONSHIP WITH THAT

19     INDIVIDUAL.

20          THE COURT:  WELL, LET ME JUST ASK YOU THIS, HOW IS THAT

21     AN ISSUE THAT THE COURT HAS TO DECIDE?  I MEAN, THAT REQUIRES

22     THE COURT TO INTERPRET A HOUSE RULE.  I CAN SEE HOW A JURY MAY

23     HAVE TO LOOK AT IT, BUT HOW DOES THE COURT HAVE TO INTERPRET A

24     HOUSE RULE WITH REGARD TO THE ELEMENTS OF THE OFFENSE?

25          MR. ADAMS:  IN ORDER FOR THE GOVERNMENT TO SHOW THAT

1    MR. HUNTER KNOWINGLY USED CAMPAIGN FUNDS FOR PURPOSES THAT

2    CONSTITUTED PERSONAL USE, THE COURT WILL HAVE TO UNDERSTAND

3    BOTH FECA AND THE HOUSE RULES SPECIFICALLY GOVERNING THAT USE,

4    BECAUSE IN ORDER FOR HIS USE OF CAMPAIGN FUNDS TO BE

5    PERMISSIBLE, HE HAS TO SATISFY BOTH OF THOSE REQUIREMENTS.

6    DOES THAT ANSWER THE COURT'S QUESTION?

7             THE COURT:  I UNDERSTAND.

8             MR. ADAMS:  THANK YOU, YOUR HONOR.

9             THE COURT:  YOU'RE WELCOME.

10            GOVERNMENT WANT TO BE HEARD?

11            MS. ALLEN:  YES, YOUR HONOR.  THE HOUSE RULES AND THE

12   CRIMINAL STATUTE AT ISSUE HERE ARE NOT COEXTENSIVE WITH ONE

13   ANOTHER.  THE HOUSE RULES APPLY TO MEMBERS OF CONGRESS.  THE

14   CRIMINAL STATUTE AT ISSUE HERE APPLIES TO ANY CANDIDATE FOR

15   FEDERAL OFFICE, AND THE CONSEQUENCES OF VIOLATIONS OF THOSE TWO

16   SEPARATE SETS OF RULES ARE DIFFERENT.  THE ONLY RULE THAT IS AT

17   ISSUE IN THIS CASE IS THE CRIMINAL STATUTE, AS THE COURT HAS

18   POINTED OUT.

19            THE DEFENSE HASN'T EVEN IDENTIFIED A HOUSE RULE IN

20   THEIR PLEADINGS THAT WOULD BE SUBJECT TO INTERPRETATION BY THE

21   COURT OR BY THE JURY.  YOUR HONOR'S QUESTION IS SPOT ON THAT

22   THE SITUATION THAT COUNSEL POINTED OUT IS REALLY A QUESTION OF

23   FACT FOR THE JURY TO DETERMINE.  IT'S THE GOVERNMENT'S BURDEN

24   TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT KNOWINGLY

25   AND WILLFULLY CONVERTED CAMPAIGN FUNDS TO PERSONAL USE, WHETHER

1    THAT CAME IN THE FORM OF A ROUND OF GOLF WITH HIS CLOSE

2    PERSONAL FRIEND OR A VACATION WITH HIS FAMILY OR GROCERY RUNS

3    OR WHAT HAVE YOU.

4         SO THE FACT THAT THEY HAVE NOT IDENTIFIED ANY HOUSE

5    RULE THAT IS REFERENCED IN THE INDICTMENT OR COULD BE SUBJECT

6    TO INTERPRETATION BY THE COURT AS PART OF THIS CASE RENDERS

7    THIS MOTION TOTALLY NON-COLORABLE.

8         AND BECAUSE THERE IS A QUESTION AMONG THE CIRCUITS AS

9    TO WHETHER THE DEFENDANT HAS THE POTENTIAL FOR AN INTERLOCUTORY

10   APPEAL ON THIS MATTER, THE GOVERNMENT'S ASKING THE COURT TO

11   MAKE A FINDING THAT THE ARGUMENT THAT THE SEPARATION OF POWERS

12   PRINCIPLES OR THAT THE RULE MAKING CLAUSE OF THE UNITED STATES

13   CONSTITUTION APPLIES HERE AND FORECLOSES PROSECUTION FOR THESE

14   THREE COUNTS DOES NOT RAISE ANY COLORABLE CLAIMS AND IS WHOLLY

15   WITHOUT MERIT.  I THINK THAT WILL HELP THE NINTH CIRCUIT'S

16   REVIEW OF ANY POSSIBLE INTERLOCUTORY APPEAL OF THIS MATTER.

17        THE COURT:  WELL, I WOULD MAKE THAT FINDING.  I DON'T

18   SEE THAT THE SEPARATION OF POWERS WOULD HAVE ANYTHING TO DO

19   WITH IT, PERIOD.

20        MS. ALLEN:  THANK YOU.

21        THE COURT:  I'LL ADOPT MY TENTATIVE, THE MOTION TO

22   DISMISS COUNTS 58 THROUGH 60 IS DENIED.

23        WITH REGARD TO THE NEXT DOCKET NUMBER 45-1, THAT'S THE

24   DEFENSE MOTION TO DISMISS COUNTS 45 TO 57 ON THE BASIS THAT

25   THEY FAIL TO STATE AN OFFENSE.  BY WAY OF BACKGROUND, COUNTS 45

1    TO 57 ALLEGE THAT THE DEFENDANT MADE FALSE ENTRIES ON HIS

2    FEDERAL ELECTION FORMS OR FEC FORMS IN VIOLATION OF TITLE 18

3    UNITED STATES CODE 1519.  THE DEFENDANT CONTENDS, FIRST, THAT

4    THE FEDERAL ELECTIONS CAMPAIGN ACT PREEMPTS THE STATUTE,

5    SPECIFICALLY THAT IT PREEMPTS SECTION 1519.  HE SECONDLY

6    CONTENDS THAT THE CHARGES FAIL TO SPECIFY THE "MATTER" THAT THE

7    DEFENDANT INTENDED TO IMPEDE OR OBSTRUCT OR INFLUENCE.  AND

8    THIRDLY, THAT SECTION -- STATUTE, I SHOULD SAY, 1519 IS VAGUE

9    AS APPLIED TO THE CAMPAIGN FINANCE VIOLATIONS.

10        WITH REGARD TO THE FIRST CONTENTION, THE COURT WOULD

11   NOTE, FIRST OF ALL, THAT THE DEFENDANT DOESN'T CITE ANY

12   AUTHORITY FOR HIS POSITION THAT CONGRESS INTENDED TO PREEMPT

13   THE PROSECUTION UNDER SECTION 1519, AND NO AUTHORITY FOR THE

14   PROPOSITION THAT AN ACT THAT VIOLATES MORE THAN ONE CRIMINAL

15   STATUTE CAN'T BE PROSECUTED UNDER EITHER ONE OR ALL OF THE

16   STATUTES.

17        IN FACT, THAT ARGUMENT HAS BEEN RECENTLY FORECLOSED BY

18   A NINTH CIRCUIT CASE.  THE NINTH CIRCUIT CASE EARLIER THIS YEAR

19   IS *UNITED STATES VS. SINGH*, THAT'S S-I-N-G-H.  IT'S AT 924 F.3D

20   AT 1030.  THAT CASE SPECIFICALLY HELD THAT A CONVICTION -- THAT

21   IT UPHELD, I SHOULD SAY, THE CONVICTION OF A DEFENDANT THAT WAS

22   CHARGED UNDER BOTH THE FEC AND STATUTE 1519.

23        WITH REGARD TO THE SECOND CONTENTION, THE COURT FINDS

24   THE INDICTMENT IS SUFFICIENT.  IT DOES CONTAIN THE ELEMENTS OF

25   THE CHARGED OFFENSES AND IS SPECIFIC ENOUGH TO ALLOW THE

1    DEFENDANT TO ASSERT A -- SHOULD THERE BE AN ATTEMPT FOR FUTURE

2    PROSECUTION, ASSERT A DEFENSE THAT IT'S THE SAME CONDUCT, IN

3    OTHER WORDS, ASSERT A DOUBLE JEOPARDY DEFENSE.

4         SPECIFIC INFORMATION REGARDING THE "MATTER" THAT HE

5    OBJECTS TO IS VIOLATED IS SET FORTH IN PARAGRAPHS 1 THROUGH 5

6    AT THE BEGINNING OF THE INDICTMENT AND THEN INCORPORATED BY

7    REFERENCE INTO COUNTS 45 TO 47, SO THE MATTER IS ABUNDANTLY

8    CLEAR.

9         WITH REGARD TO THE THIRD CONTENTION, SECTION 1519 IS

10   NOT UNCONSTITUTIONALLY VAGUE AS APPLIED TO HIM BECAUSE HE DOES

11   NOT CLAIM THAT HE WAS NOT ON NOTICE THAT THIS CONDUCT WAS

12   CRIMINAL.

13        AS WITH REGARD TO THE HYPOTHETICAL POSITION THAT IT MAY

14   BE POTENTIALLY ARBITRARILY ENFORCED, I BELIEVE WAS ONE OF THEM,

15   AND THE OTHER WAS THAT IN SOME HYPOTHETICAL SITUATIONS IT MIGHT

16   NOT APPLY, THAT WOULD BE REJECTED FOR THE VERY SAME REASONS I

17   INDICATED EARLIER THAT A STATUTE ISN'T SUBJECTED TO AN ATTACK

18   FOR FACIAL VAGUENESS BASED ON HYPOTHETICAL SITUATIONS WHEN THE

19   PURPOSE OF THE STATUTE IS NORMALLY VALID WHEN APPLIED TO THE

20   SITUATIONS FOR WHICH IT'S NORMALLY DESIGNED TO APPLY.

21        DOES ANYBODY WANT TO BE HEARD WITH REGARD TO 45-1?

22        MR. ADAMS:  YES, YOUR HONOR.

23        THE COURT:  ALL RIGHT.

24        MR. ADAMS:  YOUR HONOR, I WOULD AGAIN REQUEST THAT THE

25   COURT RECONSIDER ITS DECISION AND DISMISS COUNTS 45 THROUGH 57

1    FOR TWO MAIN REASONS, BUT BEFORE I EVEN ADDRESS THOSE REASONS,

2    I WOULD LIKE TO BRING TO THE COURT'S ATTENTION THE FACT THAT IN

3    ITS OPPOSITION TO THIS MOTION, THE GOVERNMENT DID NOT CITE

4    ONE CASE WHERE AN ALLEGED VIOLATION OF SECTION 30114 SERVED AS

5    THE BASIS FOR A 1519 VIOLATION.  THE COMPLETE ABSENCE OF CASE

6    LAW DIRECTLY ON POINT IN THIS MATTER SUGGESTS THAT IT IS A

7    MATTER OF FIRST IMPRESSION, AND IT ALSO REINFORCES OUR POSITION

8    THAT ALLEGED VIOLATIONS OF 30114(B) ARE BEST RESOLVED BY THE

9    FEC ON A CASE-BY-CASE BASIS.

10        HOWEVER, TO THE EXTENT THAT SECTION 1519 APPLIES IN

11   THIS CASE AT ALL, IT APPLIES ONLY IF THE GOVERNMENT CAN SHOW

12   THAT MR. HUNTER KNOWINGLY MADE A FALSE ENTRY IN AN FEC FORM 3

13   REPORT WITH THE INTENT TO OBSTRUCT AN INVESTIGATION BY THE FBI

14   OR FEC.  AS THE COURT STATED EARLIER, AND WE UNDERSTAND THAT

15   THE FBI DID NOT BEGIN ITS INVESTIGATION UNTIL 2000 -- EARLY

16   2016, MR. HUNTER COULD NOT HAVE KNOWINGLY SUBMITTED A FALSE

17   ENTRY WITHIN FEC FORM 3, WHICH COUNTS 45 THROUGH 54 CONCERN FEC

18   FORM 3 REPORTS FILED BEFORE THE GOVERNMENT BEGAN ITS

19   INVESTIGATION, SO MR. HUNTER CATEGORICALLY COULD NOT HAVE MADE

20   A FALSE ENTRY IN ANY OF THOSE REPORTS WITH THE INTENT OF

21   OBSTRUCTING AN INVESTIGATION THAT DID NOT YET EXIST, AND

22   CERTAINLY NOT ONE THAT HE COULD HAVE REASONABLY CONTEMPLATED.

23        NOW, THAT GOES TO MY SECOND POINT OF THE -- AND I

24   BELIEVE IT WAS THE THIRD ISSUE THAT YOU REFERENCED, THAT THE

25   STATUTE 1519 IS VAGUE AS APPLIED TO MR. HUNTER, WHICH WE

1    BELIEVE IS TRUE BECAUSE NOT ONLY DID IT NOT PUT MR. HUNTER --

2    DID HE NOT HAVE REASONABLE NOTICE THAT HIS CONDUCT WAS

3    CRIMINAL, BUT IT GIVES THE GOVERNMENT FAR TOO MUCH DISCRETION

4    TO INTERPRET WHAT CONSTITUTES A FALSE STATEMENT WITHIN AN FEC

5    FORM 3 REPORT.

6         AGAIN, I WOULD GO BACK TO THAT EXAMPLE OF HE SUBMITS

7    THE ENTRY OF GOLF WITHIN HIS FEC FORM 3 REPORT, THAT IS A

8    FACTUALLY TRUE STATEMENT.  HE WAS GOLFING.  THE ENTRY IS NOT

9    FALSE WITHIN THAT FORM, AND YET THE GOVERNMENT, BASED ON ITS

10   OWN INTERPRETATION OF THE IRRESPECTIVE TEST, UNDER SECTION

11   30114(B), CAN COME IN AND DETERMINE THE TRUTH OR FALSITY OF

12   THAT DISCLOSURE BASED ON ITS UNDERSTANDING OF THE IRRESPECTIVE

13   TEST AND WHETHER OR NOT THERE WAS A SUFFICIENTLY POLITICAL

14   NEXUS IN WARRANTING THE USE OF CAMPAIGN FUNDS IN THAT INSTANCE.

15        BECAUSE OF THAT, MR. HUNTER COULD NOT HAVE REASONABLY

16   KNOWN THAT MAKING A FACTUALLY TRUE REPRESENTATION WITHIN HIS

17   FEC FORM 3 SUBJECTED HIM TO POTENTIALLY 20 YEARS OF

18   IMPRISONMENT.  THIS IS EXACTLY WHY WE WANT TO DISMISS THESE

19   COUNTS, YOUR HONOR, IS BECAUSE IT GIVES THE GOVERNMENT FAR TOO

20   MUCH LEEWAY TO PICK AND CHOOSE WHICH CONGRESSIONAL

21   REPRESENTATIVES IT DISLIKES AND BRING PROSECUTIONS BASED ON

22   FACTUALLY TRUE REPRESENTATIONS THAT DON'T HAVE A SUFFICIENTLY

23   POLITICAL NEXUS WARRANTING CAMPAIGN FUNDS AND BE ABLE TO GO TO

24   MEMBERS OF CONGRESS AND SAY, "LISTEN, YOU'RE LOOKING AT

25   POTENTIALLY 20 YEARS, WHY DON'T YOU SETTLE FOR X?"

1          THE COURT:  WELL, FIRST OF ALL, I DON'T THINK THERE'S

2     ANY SUPPORT AT ALL FOR YOUR STATEMENT THAT THEY PROSECUTE

3     PEOPLE THEY DISLIKE.  I MEAN, THAT'S NOT APPROPRIATE.  THEY'VE

4     GOT A BASIS FOR LEGAL CAUSE HERE.

5          GOVERNMENT?

6          MR. CONOVER:  YOUR HONOR, THE STATEMENTS BY THE DEFENSE

7     REGARDING GOLF ARE QUESTIONS FOR THE JURY, WHETHER OR NOT THESE

8     ARE FACTUALLY TRUE STATEMENTS, THE JURY WILL DECIDE WHETHER OR

9     NOT WHEN THESE STATEMENTS WERE PUT ON THESE FORMS THEY WERE

10    DONE WITH THE INTENT TO DISGUISE PERSONAL EXPENSES AS CAMPAIGN

11    EXPENSES.  NOTHING FURTHER, YOUR HONOR.

12         THE COURT:  DO YOU WANT TO BE HEARD FURTHER?

13         MR. ADAMS:  NOTHING FURTHER, YOUR HONOR.

14         THE COURT:  I'LL ADOPT MY TENTATIVE, THE MOTION TO

15    DISMISS COUNTS 45 TO 57 IS DENIED.

16         BEFORE WE ADJOURN, COUNSEL, COULD YOU BOTH SIDES GO OFF

17    THE RECORD FOR A MINUTE AND GIVE ME AN IDEA ABOUT HOW MANY

18    WEEKS YOU THINK A TRIAL WILL TAKE SO I CAN BLOCK OFF MY TIME IN

19    SEPTEMBER.

20         MS. ALLEN:  YES, YOUR HONOR.  BEFORE WE ADJOURN, I HAVE

21    ONE OTHER MATTER I WOULD LIKE TO REVISIT.  I APOLOGIZE I DIDN'T

22    RAISE THIS EARLIER WHEN WE WERE TALKING ABOUT MOTION NUMBER 38,

23    IF I COULD JUST RAISE ONE OTHER QUESTION.

24         THE COURT:  YES.  GO AHEAD.

25         MS. ALLEN:  JUST TO CLARIFY THE RECORD, BECAUSE, AS I

1      MENTIONED, THIS VERY WELL MAY BE HEARD BY THE COURT OF APPEAL,

2      THE DEFENSE HAS SET OUT THREE EXAMPLES -- THREE SEPARATE ITEMS

3      OF MATERIALS THAT THEY CONSIDER TO BE SPEECH OR DEBATE.  THE

4      COURT HAS DISAGREED AND HAS RULED ON THAT, AND TO THE EXTENT

5      THAT THE DEFENSE STILL MAINTAINS THAT THOSE THREE ITEMS ARE

6      SPEECH OR DEBATE MATERIAL, I WOULD LIKE TO SEE IF THE DEFENSE

7      CAN SPECIFY WHICH COUNTS OF THE INDICTMENT THEY BELIEVE ARE

8      SUBJECT TO -- ARE PROBLEMATIC IN LIGHT OF THE FACT THAT UNDER

9      *SWINDALL*, WHICH THE NINTH CIRCUIT SPECIFICALLY ADOPTED IN THE

10     *RENZI* DECISION, THE REMEDY FOR A SPEECH OR DEBATE VIOLATION, IF

11     A VIOLATION EVEN HAPPENED, IS NOT TO DISMISS THE ENTIRE

12     INDICTMENT AS A WHOLE, BUT TO CHOOSE THOSE COUNTS THAT MIGHT BE

13     AFFECTED BY THAT SPEECH OR DEBATE.

14          OBVIOUSLY HERE WE HAVE A 60-COUNT INDICTMENT.  A NUMBER

15     OF THOSE COUNTS HAVE NOTHING TO DO WITH ANY OF THE THREE PIECES

16     OF EVIDENCE THAT THE DEFENSE HAS POINTED OUT, AND SO TO CLARIFY

17     THE RECORD HERE IN THE DISTRICT COURT, I WOULD LIKE THE

18     DEFENDANT TO SPECIFY WHAT SPECIFIC COUNTS THEY BELIEVE ARE

19     AFFECTED BY THE SPEECH OR DEBATE ISSUES.

20          THE COURT:  MR. VEGA.

21          MR. VEGA:  I'M NOT PREPARED TO DO THAT RIGHT NOW, YOUR

22     HONOR.  I MEAN, IF COUNSEL HAD DISCUSSED THIS WITH ME PRIOR, I

23     WOULD BE ABLE TO RESPOND TO THE COURT, BUT RIGHT NOW I'M JUST

24     NOT, SO I NEED TIME.

25          THE COURT:  THAT'S FINE.

1          MR. CONOVER:  YOUR HONOR, THE PARTIES MET AND CONFERRED

2     BEFORE THIS HEARING AND AGREED ON A RECOMMENDATION TO THE COURT

3     OF FOUR WEEKS TO TIME SCREEN THE JURY.

4          MR. VEGA:  WE DID DISCUSS THAT, AND HOPEFULLY IT WON'T

5     TAKE THAT LONG, BUT OUT OF AN ABUNDANCE OF CAUTION WE THOUGHT

6     THAT MIGHT BE THE SAFE WAY TO GO.

7          THE COURT:  I WOULD RATHER BLOCK OFF MORE TIME THAN

8     WHAT WE MIGHT NEED THAN RUN SHORT.  SO IF YOU'RE BOTH SATISFIED

9     WE CAN GET DONE IN FOUR WEEKS, THAT'S FINE WITH ME.

10          MR. VEGA:  YES.

11          THE COURT:  FOR NOW I'LL CONFIRM THE JURY TRIAL

12     SEPTEMBER 10TH AT 9:00 IN THIS DEPARTMENT.  WE'RE AT RECESS.

13          MR. CONOVER:  THANK YOU, YOUR HONOR.

14          MR. VEGA:  THANK YOU, YOUR HONOR.

15          THE COURT:  YOU'RE WELCOME.

16     (THE HEARING CONCLUDED.)

17

18                    C E R T I F I C A T E

19          I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
20     STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
     ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
21     ABOVE-ENTITLED MATTER ON JULY 8, 2019; AND THAT THE FORMAT USED
     COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES
22     JUDICIAL CONFERENCE.

23

     DATED:  SEPTEMBER 10, 2019     /S/ GAYLE WAKEFIELD
24                                  GAYLE WAKEFIELD, RPR, CRR
                                    OFFICIAL COURT REPORTER
25