Devin Burstein (Ca. 255389)
Warren & Burstein
501 West Broadway, Suite 240
San Diego, Ca., 92101
(619) 234-4433
db@wabulaw.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-cr-3677-W |
| Plaintiff, | |
| v. | Opposition to the government's motion to override Congressman Hunter's right to counsel of choice. |
| DUNCAN D. HUNTER, | |
| Defendant. | November 25, 2019, at 10:30 a.m. |

## Introduction

Congressman Hunter respectfully requests the Court deny the government's disqualification motion.

First, there is no actual conflict. The subject witnesses are not adverse to Congressman Hunter. They are exculpatory. All three support the defense's position that, while mistakes were made by the campaign, Congressman Hunter did not act with criminal intent.

Second, even if there were an actual conflict, under binding Ninth Circuit precedent, it is waivable. And it has been waived. The witnesses have expressly

agreed, *inter alia*, that the defense can vigorously cross-examine them.[1]   And Congressman Hunter has further waived any claim on appeal or collateral attack arising from the alleged conflict.   Moreover, the declarations of counsel make clear that Mr. Pfingst has no confidential information.   Taken together, this is more than sufficient to address any conflict concerns.

Indeed, on this point, the government's legal position is misguided.   The cases it cites conclusively establish disqualification is neither required, encouraged, nor justified when, as here:

(**a**) there is no multiple representation of *defendants*;

(**b**) there are comprehensive waivers from all parties to the alleged conflict addressing the specific concerns;

(**c**) the sole defendant has further waived his right to raise any claim on appeal or collateral attack stemming from the alleged conflict (this alone should be outcome determinative);

(**d**) there has been no sharing of client confidences between the allegedly conflicted lawyers;

(**e**) there is a wall between those attorneys; and

---

[1]   The signed waivers are attached in Appendix ("APP") at pages 1-8. Additionally, Mr. Pfingst and Mr. Rice have provided declarations explaining that they have a wall between them and have not shared client confidences, or even discussed the substance of the case.   APP:9-11.

(**f**) the defendant's lawyer (Mr. Pfingst) need not cross-examine the witnesses at issue – that can be done by a member of the defense team unaffiliated with his firm – a solution numerous courts have found to cure or "moot" similar conflict concerns.

Finally, and perhaps most important, only Congressman Hunter has the constitutional right to counsel of his choice. *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010) ("The Sixth Amendment's right to counsel encompasses . . . a right to choose one's own counsel."). Neither the government nor any witness has a concomitant privilege. Accordingly, because "the trial court must be zealous to protect [not eliminate] the rights of an accused," this Court should honor Congressman Hunter's selection of Mr. Pfingst.[2] *Dennis v. United States*, 339 U.S. 162, 168 (1950).

## Discussion

The standard is clear: "In seeking to disqualify a defendant's chosen counsel, the government bears a heavy burden of establishing that concerns about

---

[2] This is not merely a matter of Congressman Hunter having *a* lawyer he wants, it is *the* lawyer. He and Mr. Pfingst have a special bond because both have successfully run for office. This gives Mr. Pfingst a unique understanding of both his client and this case.

the integrity of the judicial process justify the disqualification." *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986).

## A.    The grand jury testimony favors Congressman Hunter.

Here, the government claims Mr. Young, Ms. Hardison, and Mr. Browning are adverse witnesses and therefore Mr. Pfingst has a conflict. Dckt. 105 at 3-5. But the grand jury testimony proves otherwise. All three were remarkably consistent in explaining that, while Congressman Hunter was busy running for office and representing his constituents, virtually all of the spending issues underlying this prosecution began and ended with Mrs. Hunter.

The following exchange between the prosecutor and campaign treasurer, Bruce Young, tells the story:

Q.    These questions [asked during your grand jury testimony] have been concerned mainly with Margaret's spending; is that correct?

A.    Correct.

Q.    Would it be fair to say that during the time you were treasurer *you didn't have similar problems with the Congressman's spending*?

A.    Talking about Duncan D. Hunter?

Q.    Correct.

A.    *That's correct.*

Q.    So, as far as you could tell, at least on the information presented to you, *the problem with these questionable expenses were limited to Margaret*?

A.    *That's correct.*

***

Q.    I just want to make sure I've got it right that *the problem really with expenses is limited to Margaret, not Duncan Hunter, correct*?

A.    *That's correct.*

Young at 143-44 (emphasis added).

Far from adverse, this testimony is exculpatory.  And the other witnesses provided similar accounts.  Joe Browning explained that Margaret Hunter was "in control" and that Congressman Hunter believed what his wife told him about spending.    Browning at 23.    Ms. Hardison testified that, given his other responsibilities, "[she] did not feel that he [Congressman Hunter] was really paying attention to the financial part."  Hardison at 51.

This aligns with what Congressman Hunter has always maintained.  While he could have – and perhaps should have – kept a closer eye on campaign spending, he did not act with criminal intent.  Accordingly, while Mr. Young, Mr. Browning, and Ms. Hardison are technically government witnesses, they are not adverse because the substance of their testimony favors the defense.

On this basis alone, the Court could deny the government's motion. But ultimately, the substance of the grand jury testimony does not matter. Even if the witnesses were truly adverse, as a practical matter, the proffered conflict is illusory.

**B.     The alleged conflict is at most academic, not actual.**

In the trial context, the danger posed by a conflict is simple – the defendant's lawyer will pull punches as a result of dual loyalty. He or she will not act as a zealous advocate due to a conflict of interests. *See Wheat v. United States*, 486 U.S. 153, 159 (1988) (the "essential aim" of the right to conflict-free counsel is "to guarantee an effective advocate for each criminal defendant."). Here, there is no such concern. Nor has the government offered a plausible scenario in which Mr. Pfingst will do anything other than represent Congressman Hunter to the best of his abilities. And the signed waivers allow him to do just that – no punches pulled.

Additionally, Mr. Pfingst and Mr. Rice have not shared any client communications. APP:9-11. From the outset, they have put a wall between them.[3] Thus, Mr. Pfingst has gained no confidential information as a result of his law partner's representation and has no such information to use against another

---

[3] The government suggests the wall is of "no value now." Dckt. 105 at 20. Not so. Because nothing has ever been shared, the wall was and is entirely effective.

client of his firm.   Moreover, Mr. Rice will not participate in Congressman Hunter's defense.   And in any event, Mr. Rice never received any confidential information that, if disclosed, would adversely impact his clients' testimony. APP:11.

Further, as an added layer of protection, the defense has agreed Mr. Pfingst does not need to cross-examine the subject witnesses.   Another member of the defense team (perhaps the undersigned) unconnected with Mr. Pfingst's firm can do that.   And the defense has also agreed to an internal wall, with no sharing of information as to those witnesses.   Although we believe this is unnecessary given the waivers, the defense is willing to make this further concession if the Court deems it necessary.

Indeed, other courts have found similar arrangements "moot" the potential conflict.   In *United States v. Mogal*, 2018 U.S. Dist. LEXIS 165703, at *12 (N.D. Cal. 2018), the government argued defense counsel's law firm's "prior privileged communication with the co-defendants could potentially be exposed or preclude [it] from effectively cross-examining them at trial."

Despite these concerns, the court noted, "even where an actual or potential conflict exists, a defendant may waive his or her right to conflict-free counsel, so long as the waiver is 'voluntary, knowing, and intelligent.'   For a waiver to meet this test, the client must have waived the right after being made sufficiently aware

of the nature of the actual or potential conflict—that is, the attorney must 'communicate[] information reasonably sufficient to permit the client to appreciate the significance of the matter in question.'" *Id.* at *9-10 (citations omitted).

After reviewing the signed waivers, the court found disqualification unjustified because "the key potential conflict raised by the government—[the law firm's] ability to effectively cross-examine any co-Defendant—is effectively moot. As [the law firm] disclosed at the hearing, [the] waiver includes a contingency plan should any of [the] co-Defendants serve as a government witness such that cross-examination . . . would be necessary. In that case, . . . an independent attorney could handle the cross-examination, such that any arguable conflict raised by [the law firm] conducting cross-examination would be mooted." *Id.* at *16-17; *see also United States v. Decker*, 2017 U.S. Dist. LEXIS 177614, at *9 (D. Nev. 2017) ("the parties explained that to cure the conflict, [unaffiliated co-counsel []] would cross-examine the [former client].").

The same is true here.  And the cases cited by the government do not lead to a contrary conclusion.  None hold that disqualification is appropriate when there is no joint representation of *defendants,* and all parties have waived the alleged conflict:

- *United States v. Henke,* 222 F.3d 633, 636-38 (9th Cir. 2000) (defense counsel moved to withdraw; *no conflict waivers*; no holding that disqualification was

required; joint defense meetings are not "in and of themselves disqualifying.");

- *United States v. Stites*, 56 F.3d 1020, 1024-25 (9th Cir. 1995) (representation of multiple *defendants*; finding waiver invalid only because of mental illness of one defendant);

- *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) (counsel represented defendant and witness; *witness implicated lawyer in grand jury testimony*; no conflict waivers filed; court held that an actual conflict does not require disqualification of counsel);

- *United States v. Kenney*, 911 F.2d 315, 320-322 (9th Cir. 1990) (simultaneous representation of defendant and business associate, where both may cooperate with the government; holding no requirement to disqualify; no valid waiver because business associate absent from the hearing, "making it impossible to look into his waiver and his understanding of it.");

- *United States v. Wheat*, 813 F.2d 1399, 1403-04 (9th Cir. 1987) *aff'd*, 486 U.S. 153, 164 (1988) (single attorney represented three coconspirators; court to use its discretion to determine whether to override a conflict waiver; no holding that disqualification was *required*; "[t]he evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.");

- *Trone v. Smith*, 621 F.2d 994, 996-99, 999 n.4 (9th Cir. 1980) (*civil case*; defendant moved to disqualify plaintiff's counsel because they previously represented the defendant; *no conflict waivers*; the court did "not reach, and therefore express[ed] no opinion upon the 'Chinese Wall' theory[.]");

- *Lockhart v. Terhune,* 250 F.3d 1223, 1229 (9th Cir. 2001) (representation of defendant and suspect to the same homicide; no motion to disqualify; *waiver invalid because counsel did not tell defendant about the murder suspect*);

- *United States v. Penn*, No. 16CR1695-BEN, 2017 WL 4077253 at *5-7 (S.D. Cal. Sept. 14, 2017) (representation of defendant and government witness; court did not hold disqualification *required*; no claim regarding counsel of choice);

- *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996) (representation of husband (defendant) and wife (potential witness); *no conflict waivers*; no holding that disqualification required);

- *United States v. Locascio*, 6 F.3d 924, 932-35 (2d Cir. 1993) (ordering disqualification where counsel represented multiple defendants; counsel was acting as in-house counsel for the mafia and was an unsworn witness; and *no waivers filed;* but noting that *"disqualification is a drastic remedy for conflict problems"*) (emphasis added);

- *United States v. Moscony*, 927 F.2d 742, 747-48 (3d Cir. 1991) (*representation of multiple defendants and multiple witnesses;* three witnesses joined in the government's motion to disqualify; no holding that disqualification required);

- *United States v. Kelly*, 870 F.2d 854, 857-58 (2d Cir. 1989) (lawyer represented both the defendant and the confidential source; defendant not satisfied with counsel, and counsel initially moved to withdraw based on potential conflict; *no waiver from confidential source*);

- *Lightbourne v. Dugger*, 829 F.2d 1012, 1023-24 (11th Cir. 1987) (court rejected petitioner's claim that simultaneous representation of jailhouse informant and defendant by the same public defender's office adversely affected his assistance of counsel);

- *United States v. Martinez,* 630 F.2d 361, 362 (5th Cir.1980) (counsel represented defendant and government witness; defense counsel informed court of potential conflict; *no waiver*);

- *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir. 1978) (*civil case* regarding the scope of an attorney-client relationship and the imputation of knowledge, *no waivers*; no claim regarding counsel of choice; no holding that disqualification required).

Accordingly, on both the facts and the law, the government's disqualification arguments are misguided.

## C.    The conflict waivers are sufficient as a matter of law.

To this end, it bears emphasis that all the parties to the alleged conflict – the clients who hold the associated privileges of the attorney-client relationship – have expressly consented to Mr. Pfingst's representation.  And their waivers specifically address the government's claim about the interplay between the duty of loyalty to witnesses and the duty to represent Congressman Hunter zealously.

For instance, the witnesses acknowledge and agree: "I would be subject to cross-examination by a member of a firm (Mr. Pfingst) that represents me.  I understand Mr. Pfingst will do everything possible to represent Congressman Hunter's interests, even if adverse to mine.  Having discussed these issues at length with Mr. Rice, and having had a chance to seek independent counsel, I knowingly, voluntarily, and intelligently waive any potential or actual conflict. This includes, without limitation, any right not to be cross-examined by Mr. Pfingst, a member of the firm representing me."  APP:1-8.

Given the clients' willing approval of this arrangement, the government should have no cause to complain.  In fact, waivers of far greater conflicts have been routinely approved.

In *United States v. Partin*, 601 F.2d 1000, 1006 (9th Cir. 1979), for instance, while defending one client, the court allowed the same attorney to cross-examine another *current* client who was "called to the witness stand by the

government."   The Ninth Circuit concluded, "we find that [the defendant] knowingly and intelligently waived his right to counsel whose loyalties were undivided. Furthermore, we find that [the district court's] inquiry at trial and the resulting relinquishment by [the witness] of his attorney-client privilege, avoided the occurrence of any actual conflict of interest."  *Id.* at 1007.[4]

Similarly, in *United States v. Martinez*, 143 F.3d 1266, 1269 (9th Cir. 1998) – where a single attorney represented the defendant and previously represented a co-conspirator – the court held: "[the defendant's] waiver of his right to conflict-free counsel was valid and that it applied to all conflicts foreseeable at the time of the hearing, *including the possibility that [the defendant] could be called to testify against [the co-conspirator]*."  (Emphasis added).

The Second Circuit reached a similar conclusion in *United States v. Perez*, 325 F.3d 115 (2d. Cir. 2003).  The court explained, "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, *the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government.*"  *Id.* at 125 (emphasis added).  And "conflicts, such as an attorney's representation of two or more defendants or *his prior*

---

[4]   Here, the defense has no objection to any in-court inquiry of Congressman Hunter or the witnesses, should the Court deem it necessary.

*representation of a trial witness, are generally waivable.*" *Id.* at 127 (emphasis added).[5]

Accordingly, the government is incorrect in asserting the alleged conflict here cannot be waived. It can. And it has.

To be clear, the defense acknowledges the government's legitimate interest in preserving any potential verdict on appeal. For that reason, as noted, Congressman Hunter has not only waived the alleged conflict, but also his right to raise *any* claim on appeal or collateral attack based on that conflict. *See* APP:1-2. This waiver is valid and binding. *See, e.g., Fuller v. United States*, 2012 U.S. Dist. LEXIS 150190, at *2-3 (E.D.N.C. 2012) (defendant validly waived all grounds of ineffective assistance of counsel known to him at the time of his plea); *cf. Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (a valid

---

[5] Also illustrative are *United States v. Pflueger*, 2011 U.S. Dist. LEXIS 141736 (D. Haw. 2011) and *United States v. Razo-Quiroz*, 2019 U.S. Dist. LEXIS 32410 (E.D. Cal. 2019).

In *Plueger*, the government moved to disqualify defense counsel, because he "currently represents several government witnesses that will provide critical testimony at trial implicating [the defendant]." 2011 U.S. Dist. LEXIS 141736, at *3. The court denied the motion, based on the defendant's waiver. *Id.* at *9.

In *Razo-Quiroz*, the court denied the government's motion to disqualify counsel who initially represented three co-defendants in the same case. Along with signed conflict waivers, the court conducted an independent "inquiry of the three codefendants." 2019 U.S. Dist. LEXIS 32410, at *25. The court found the parties "knowingly and intelligently waived any conflict of interest due to the joint representation." *Id.* at *27.

waiver "precludes the defendant from [raising] . . . a claim of ineffective assistance of counsel"). As such, it wholly accounts for the government's interests.

**D.     Practical considerations weigh against disqualification.**

There are two additional considerations weighing against removing Mr. Pfingst. First, as the government acknowledges, disqualification will likely have the unintended consequence of further delaying the trial. A new lawyer cannot be expected to prepare for this trial in less than two months. And denial of a continuance would violate Congressman Hunter's right to a fair trial and effective representation (as would the denial of Mr. Vega's motion to withdraw).

Second, even if the government succeeds in obtaining a conviction, denying Congressman Hunter his choice of counsel would likely result in another trial. Counsel of choice is one of the rare constitutional rights deemed so fundamental that its erroneous denial is structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) ("erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error.") (citation and quotations omitted); *United States v. Brown*, 785 F.3d 1337, 1350 (9th Cir. 2015) ("[t]he denial of a defendant's right to counsel of choice is a structural error, requiring that convictions be vacated even without a showing of prejudice.").

This is not to say courts are devoid of discretion in conflict matters.  Under certain scenarios they are given wide latitude.  But here, as explained, there is no cause for disqualification.  *See Rivera-Corona*, 618 F.3d at 979 ("a defendant who can afford to hire counsel may have the counsel of his choice unless a contrary result is compelled by 'purposes inherent in the fair, efficient and orderly administration of justice.'") (citation omitted).

Mr. Pfingst's declaration is clear.  He is aware of his ethical obligations and does not believe there is any conflict that would or could adversely impact his representation of Congressman Hunter.  *See* APP:9-10.  This further counsels in favor of denying the government's motion: "An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial."  *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980) (internal citations and quotation omitted).

Finally, Congressman Hunter concludes as the government did: "it is critical that the public have no reason to call into question the legitimacy of the jury's verdict[.]"  Dckt. 105 at 23.  The present motion, however, accomplishes the opposite.  Allowing the prosecutors to exercise veto power over Congressman Hunter's choice of counsel will provide a compelling reason to doubt the legitimacy of any verdict.  The motion should be denied.

## Conclusion

Congressman Hunter respectfully requests the Court deny the motion to disqualify Mr. Pfingst.


Respectfully submitted
with consent of all parties,

Dated: November 18, 2019                    /s/ *Devin Burstein*
                                            Devin Burstein
                                            Warren & Burstein

# APPENDIX

**Disclosure and Waiver Regarding Conflict in Representation**

I, Congressman Duncan Hunter, declare the following to be true:

1.  I have retained Paul Pfingst to represent me in *United States v. Hunter*, 18-CR-3677-W. Mr. Pfingst is now lead counsel for the trial. Given his prior experience as an elected official, I feel he is uniquely qualified for my case.

2.  I know that Mr. Pfingst has spent the past several weeks getting up to speed so he can be ready for trial in January.

3.  I understand Mr. Pfingst's law partner, John Rice, represented and continues to represent several individuals the government may call as witnesses against me during trial.

4.  I understand I have a right to conflict-free counsel, and that Mr. Pfingst owes me a duty of loyalty and confidentiality. I understand that my rights and these duties extend to members of his firm, including Mr. Rice. At the same time, I understand Mr. Pfingst owes identical duties to Mr. Rice's clients.

5.  I understand the joint representation in this case by members of the same firm creates the potential for an actual conflict. Specifically, at trial, the witnesses represented by Mr. Rice would be subject to cross-examination by a member of a firm (Mr. Pfingst) that represents me. I understand other conflicts could also arise.

6.  Having discussed these issues at length with Mr. Pfingst, and having sought independent advice from my appellate counsel, Devin Burstein, I knowingly,

1

voluntarily, and intelligently waive any potential or actual conflict. This includes, without limitation, my right to conflict-free counsel.

7.      Further, I knowingly, voluntarily, and intelligently waive my right to raise on appeal or collateral attack any claim or argument arising from a conflict in representation. By way of example, but not limitation, I will not pursue any argument on appeal or collateral attack that I was denied effective assistance of counsel as a result of the conflict.

Dated: _90/29/19_          Client: _____
                                     Duncan Hunter

Dated: _10/30/19_          Attorney: _____
                                     Paul Pfingst

Dated: ___10/30/19___      Attorney: _____
                                     Devin Burstein

2

## Disclosure and Waiver Regarding Conflict in Representation

I, Bruce Young, declare the following to be true:

1.  John Rice represented me in my role as a witness in *United States v. Hunter*, 18-CR-3677-W. I expect that representation will continue if I am called to testify during the trial.

2.  I understand Mr. Rice's law partner, Paul Pfingst, represents Congressman Hunter in the same matter.

3.  I understand I have a right to conflict-free counsel, and that Mr. Rice owes me a duty of loyalty and confidentiality. I understand that my rights and these duties extend to members of his firm, including Mr. Pfingst.

4.  I understand the joint representation in this case by members of the same firm creates the potential for an actual conflict. Specifically, at trial, I would be subject to cross-examination by a member of a firm (Mr. Pfingst) that represents me. I understand Mr. Pfingst will do everything possible to represent Congressman Hunter's interests, even if adverse to mine.

5.  Having discussed these issues at length with Mr. Rice, and having had a chance to seek independent counsel, I knowingly, voluntarily, and intelligently waive any potential or actual conflict. This includes, without limitation, any right not to be cross-examined by Mr. Pfingst, a member of the firm representing me.

6.  Further, although Mr. Rice has told me there will be a wall between him and Mr. Pfingst, such that they have not and will not share any information about this case or their respective clients, I knowingly, voluntarily, and intelligently waive

any prohibition on the sharing of confidential communications between Mr. Rice

and members of Congressman Hunter's defense team, including Mr. Pfingst.

Dated: _10/30/19_        Client: _____
                                                     Bruce Young

Dated: _10/30/19_        Attorney: _____
                                                     John Rice

9327927.1

4

**Disclosure and Waiver Regarding Conflict in Representation**

I, Joe Browning, declare the following to be true:

1.   John Rice represented me in my role as a witness in *United States v. Hunter*, 18-CR-3677-W.  I expect that representation will continue if I am called to testify during the trial.

2.   I understand Mr. Rice's law partner, Paul Pfingst, represents Congressman Hunter in the same matter.

3.   I understand I have a right to conflict-free counsel, and that Mr. Rice owes me a duty of loyalty and confidentiality.  I understand that my rights and these duties extend to members of his firm, including Mr. Pfingst.

4.   I understand the joint representation in this case by members of the same firm creates the potential for an actual conflict.  Specifically, at trial, I would be subject to cross-examination by a member of a firm (Mr. Pfingst) that represents me.   I understand Mr. Pfingst will do everything possible to represent Congressman Hunter's interests, even if adverse to mine.

5.   Having discussed these issues at length with Mr. Rice, and having had a chance to seek independent counsel, I knowingly, voluntarily, and intelligently waive any potential or actual conflict.  This includes, without limitation, any right not to be cross-examined by Mr. Pfingst, a member of the firm representing me.

6.   Further, although Mr. Rice has told me there will be a wall between him and Mr. Pfingst, such that they have not and will not share any information about this case or their respective clients, I knowingly, voluntarily, and intelligently waive

any prohibition on the sharing of confidential communications between Mr. Rice and members of Congressman Hunter's defense team, including Mr. Pfingst.

Dated: _Nov 4, 2019_

Client: _Joe Browning_
Joe Browning

Dated: _11/13/19_

Attorney: _John J. Rice_
John Rice

9327947.1

6

**Disclosure and Waiver Regarding Conflict in Representation**

I, Sheila Hardison, declare the following to be true:

1. John Rice represented me in my role as a witness in *United States v. Hunter*, 18-CR-3677-W. I expect that representation will continue if I am called to testify during the trial.

2. I understand Mr. Rice's law partner, Paul Pfingst, represents Congressman Hunter in the same matter.

3. I understand I have a right to conflict-free counsel, and that Mr. Rice owes me a duty of loyalty and confidentiality. I understand that my rights and these duties extend to members of his firm, including Mr. Pfingst.

4. I understand the joint representation in this case by members of the same firm creates the potential for an actual conflict. Specifically, at trial, I would be subject to cross-examination by a member of a firm (Mr. Pfingst) that represents me. I understand Mr. Pfingst will do everything possible to represent Congressman Hunter's interests, even if adverse to mine.

5. Having discussed these issues at length with Mr. Rice, and having had a chance to seek independent counsel, I knowingly, voluntarily, and intelligently waive any potential or actual conflict. This includes, without limitation, any right not to be cross-examined by Mr. Pfingst, a member of the firm representing me.

6. Further, although Mr. Rice has told me there will be a wall between him and Mr. Pfingst, such that they have not and will not share any information about this case or their respective clients, I knowingly, voluntarily, and intelligently waive

any prohibition on the sharing of confidential communications between Mr. Rice

and members of Congressman Hunter's defense team, including Mr. Pfingst.

Dated: 10-29-19

Client: _____
Sheila Hardison

Dated: 10/29/19

Attorney: _____
John Rice

9327928.1

8

## DECLARATION OF COUNSEL

I, Paul Pfingst, declare the following to be true:

1.     I have been an attorney for 42 years.  I served as the elected District Attorney for the County of San Diego and President of the California District Attorney's Association.  I have conducted over 100 civil and criminal trials, as both a prosecutor and criminal defense attorney.  I am well aware of my ethical obligations and have reviewed the California Rules of Professional conduct.

2.     Congressman Duncan Hunter retained me to represent him at trial in *United States v. Hunter*, 18-CR-3677-W.  I am now lead counsel.  At the onset of my representation of Congressman Hunter I was unaware that another Higgs Fletcher and Mack attorney, John Rice, has provided limited representation to some Grand Jury witnesses.  A routine firm conflict search did not identify a conflict with those witnesses.  Serendipitously I learned of Mr. Rice's representation as I conversed with Mr. Rice about an unrelated matter.  I then reviewed the Rules of Professional conduct and concluded that continued representation was appropriate with full disclosure to Congressman Hunter.  Shortly thereafter the Prosecution brought its concern about a possible conflict to the attention of the defense.  Since on or about October 1, 2019, I have been working diligently to prepare.   I will be ready for trial on January 22, 2019.

3.     I have not discussed the substance of this case with John Rice.  We have not shared any client communications.  In the excess of caution, we have put a wall between us as to this matter.

4.  Based on my years of experience, the specific facts here, and the signed waivers, I do not believe there is *any* realistic scenario in which my ability to represent Congressman Hunter zealously will be adversely impacted by Mr. Rice's representation. And given the wall we have established and the waivers, I will not be hampered by a duty of loyalty to the witnesses.

5.  I have discussed this matter thoroughly with Congressman Hunter as have other attorneys on his defense team. He wants me to continue as his lead trial counsel.

Dated: __11/13/19__

_____
Paul Pfingst

1

2

3

**DECLARATION OF COUNSEL**

I, John Rice, declare the following to be true:

4
5

1.      I have been an attorney for 30 years.  I have conducted dozens of trials.  I am well aware of my ethical obligations.

6
7

2.      I represented three grand jury witnesses in *United States v. Hunter*, 18-CR-3677-W.  If the government calls any of the witnesses at trial, I will continue my representation.

8
9
10
11

3.      I have not discussed the substance of this case with Paul Pfingst.  We have not shared any client communications.  In an excess of caution, we have put a wall between us as to this matter.

12
13
14

4.      Based on my years of experience, the specific facts here, and the signed waivers, I do not believe my ability to represent my clients will be adversely impacted by Mr. Pfingst's representation of Congressman Hunter.

15
16
17
18

5.      I also do not believe there is any realistic scenario in which my duty of loyalty and confidentiality to Congressman Hunter, based on his status as a client of my firm, will adversely impact my ability to represent my clients.

19
20

6.      I have discussed this matter thoroughly with my clients.  They have no objection to Mr. Pfingst representing Congressman Hunter, or to me continuing to represent them.

21

22   Dated:   11/13/19

John J. Rice

23

24

25

26

27

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

11