


DAVID D. LESHNER
Attorney for the United States
Acting under Title 28, U.S.C. Section 515
EMILY W. ALLEN (Cal. Bar No. 234961)
W. MARK CONOVER I (Cal. Bar No. 236090)
PHILLIP L.B. HALPERN (Cal. Bar No. 133370)
Assistant United States Attorneys
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-6964
Email: Phillip.Halpern@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DUNCAN D. HUNTER (1),<br><br>Defendant. | Case No. 18CR3677-W<br><br>**UNITED STATES' REPLY BRIEF TO MOTION TO DISQUALIFY HIGGS FLETCHER & MACK FROM REPRESENTING THE DEFENDANT**<br><br>Date:  November 25, 2019<br>Time: 10:30am |

Faced with the unassailable conclusion that defense counsel must be disqualified where there is an actual conflict (*i.e*., joint representation of witnesses that are adverse to the defendant), Hunter sensibly argues that no actual conflict exists. *See* Hunter's Opposition (Doc. 107) at 1, 4-5.  Unfortunately, this argument appears tenable only because Hunter selectively quotes a mere half dozen sentences out of more than 300 pages of grand jury testimony.   In other words, Hunter simply ignores the entirety of the testimony that proves inconvenient and does not even try to address the numerous examples of adverse testimony set forth in the government's Motion to Disqualify (Doc. 105) at 3-6, 12-14.

Such maneuvers result in Hunter quoting Ms. Hardison's testimony that "[she] did not feel that [Congressman Hunter] was really paying attention to the financial part [of the campaign]," *see* Hardison GJ at 51, while ignoring her testimony that Hunter was aware that Margaret was using her campaign credit card for personal expenses and that it was a crime to do so. *Id.* at 78-79. Similarly, Hunter "cherry picks" a few lines suggesting Mr. Young was principally concerned with Margaret's spending, *see* Young GJ at 143-44, but ignores the testimony that Young told Hunter that Margaret was spending too much money on items that would raise a red flag with auditors who could review the FEC reports. *See e.g.*, Young GJ at 88-89. Hunter again adopts this tactic with Joe Browning by seizing on two words where he indicated that Margaret was "in control," *see* Browning GJ at 23,[1] but omitting damaging testimony regarding, among other things, multiple personal vacations financed with the Campaign's credit cards. *Id.* at 47-48 and 55-56.

Certainly, portions of all three transcripts might, in the hands of experienced defense counsel, be used to argue that Hunter was unaware of his wife's admitted theft of campaign funds. On the other hand, it is undeniable that there are other—far more significant portions—of the grand jury transcripts that demonstrate Hunter was all too painfully aware of (and even encouraged) his wife's improprieties. Those improprieties enabled the Hunters to maintain their comfortable standard of living despite their staggering debt.

This case—where the evidence consists of voluminous, adverse grand jury testimony bearing on the exact question of Hunter's guilt—presents the most profound and striking example of an *actual* conflict of interest unearthed in any prior recorded case. This conclusion cannot be changed by Hunter's refusal to address the adverse grand jury

---

[1] Hunter also fails to acknowledge the inapposite context: Browning was not testifying to Margaret being in control of the family or campaign finances, but only to being "in control" of their personal relationship and noting that the Hunters had significant marital disagreements. *See* Browning GJ at 23-24.

testimony or by his unsupported claim that the "alleged conflict is at most academic, not actual." Hunter Opposition at 6.[2]

Hunter attempts to side-step the obvious need to disqualify Higgs by arguing that the United States is trampling upon Hunter's constitutional right to counsel of his choice. Hunter Opposition at 3 (citing *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010)). He neglects to mention, though, that the right to counsel of choice is "[c]ircumscribed in a number of important respects" and must be balanced against other important interests in the judicial system such as the Sixth Amendment right to conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *United States v. Morrison*, 449 U.S. 361, 365 (1981); *United States v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998).[3] Significantly, he fails to mention that the Ninth Circuit in *Rivera-Corona* specifically acknowledged that "a defendant may not 'demand that a court honor his waiver of conflict-free representation.'" *Id.* at 979 (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006).

Hunter is of course free to choose any of the more than 100,000 practicing trial attorneys in California who are not faced with an actual conflict. Yet he selected one of only four California lawyers that represent likely trial witnesses. And, although Hunter knew of the government's position for at least a month, for some reason he delayed filing Mr. Pfingst's appearance and caused the hearing to be set less than two months before trial.

---

[2] Despite its absurdity, Hunter is forced to maintain this unsupportable position because the case law makes it perfectly clear that once this Court finds the presence of an actual conflict, counsel must be disqualified, and no quantity of waivers, ethical walls, or substitute "cross examination" can cure this problem. *See* United States Motion to Disqualify at 14-16.

[3] *See also Wheat*, 486 U.S. at 153 (the "essential aim of the [Sixth] Amendment is to guarantee an effective advocate," not the attorney preferred by defendant.) A court is entitled to balance a defendant's right to retain counsel of his or her choice against the interests of judicial integrity and efficiency. *Id.* at 162 (court could deny defendant's choice of attorney to maintain integrity of judicial system when defendant selected an attorney with a conflict of interest).

Finally, the government finds distasteful Hunter's attempts to argue that if the Court does not allow him to maintain his conflicted counsel it will likely commit structural error and/or be required to further delay the trial. The removal of a conflicted defense attorney who has only been retained for a matter of a few weeks is clearly not structural error. It is not only the preferable decision, but one that the Supreme Court has made clear will not be questioned by reviewing courts. *Wheat*, 486 U.S. at 162 ("where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that the defendants be separately represented."). And Hunter still has four attorneys in his defense team (including a respected former United States Attorney), three of whom have been ably representing him for more than two years.

For the foregoing reasons, the United States respectfully requests that the Court disqualify Mr. Pfingst and the law firm Higgs Fletcher & Mack from any further representation of Duncan Hunter.

DATED: November 19, 2019.

Respectfully submitted,

DAVID LESHNER
Attorney for the United States

*Phillip L.B. Halpern*
EMILY W. ALLEN
W. MARK CONOVER I
PHILLIP L.B. HALPERN
Assistant U.S. Attorneys