

April 28, 2016

Omar Ashmawy
Staff Director and Chief Counsel
Office of Congressional Ethics
1017 Longworth HOB
Washington, D.C. 20515

Re: <u>Request for Investigation into Rep. Duncan D. Hunter (R-CA)</u>

Dear Mr. Ashmawy:

Citizens for Responsibility and Ethics in Washington ("CREW") respectfully requests that the Office of Congressional Ethics ("OCE") investigate whether Rep. Duncan D. Hunter (R-CA) violated federal law and House rules by using campaign funds to pay personal expenditures unrelated to any campaign activities.

In recent months, Rep. Hunter's principal campaign committee, Duncan D. Hunter for Congress ("the Hunter Committee"), has acknowledged spending thousands of dollars on purchases not related to campaign activity. The committee spent campaign funds, for example, on video games, an oral surgeon, travel to Hawaii, and Rep. Hunter's children's school tuition, expenses it characterized as "personal" or "mistaken." While Rep. Hunter reimbursed the committee almost $12,000 for these purchases, the spending was not for legitimate campaign expenditures, and the amount and frequency of these improper expenditures warrants a further investigation.

A review of the Hunter Committee's Federal Election Commission ("FEC") disclosure reports further indicates there may be additional non-campaign spending not previously identified or reimbursed. Notably, the committee's most recent report disclosed payments for expenses in Italy during the Thanksgiving holiday week in 2015, including payments to hotels and restaurants in Rome, Florence, and Positano, payments for train tickets, and other travel costs. One particularly suspect expense was reported by the committee as being for "food/beverages," but the payment was made to a jewelry store in Florence. This spending and other evidence suggests the trip was a family vacation.

The Hunter Committee also admitted that more than $2,000 in disbursements it made to Rep. Hunter's wife, Margaret Hunter, were not for campaign purposes and needed to be refunded. In all, however, the committee reimbursed Mrs. Hunter approximately $14,000 in the last six years, and paid her $116,000 for work as a campaign consultant. The improper payments to Mrs. Hunter already acknowledged by the committee indicate that the other expenditures involving her also should be investigated.

Accordingly, OCE should conduct an investigation of Rep. Hunter's campaign spending.

GOVERNMENT EXHIBIT 1 18CR3677-W

455 Massachusetts Avenue, N.W., 6th Floor, Washington, D.C. 20001 | 202.408.5565 phone | 202.588.5020 fax | www.citizensforethics.org

## Factual Allegations

Duncan D. Hunter for Congress is Rep. Hunter's principal campaign committee.[1]

*Acknowledged "Mistaken" and "Personal" Spending*

In 2015, the Hunter Committee's FEC reports began disclosing disbursements labeled as "mistaken charge[s]" for which the committee had been or purportedly would be reimbursed. The Hunter Committee's initial 2015 April Quarterly report, for example, disclosed payments of $530 and $598 to the Aston Kaanapali Shores, a beach resort in Lahaina, Hawaii.[2] Each was described as a "mistaken charge – to be reimbursed."[3] An amended report, filed four hours after the first one, changed the name of the payee to Expedia, removing any reference to Hawaii.[4] Three more payments to Aston Kaanapali Shores totaling $5,160 were similarly disclosed as "mistaken charge[s]" on the Hunter Committee's initial 2015 July Quarterly report, with an added notation asserting they had been reimbursed on June 30, 2015.[5]

The Hunter Committee's 2015 October Quarterly and Year-End reports disclosed another group of mistaken and personal expenditures. The largest group included at least 68 charges totaling more than $1,300 to Steam Games, a video game company.[6] Each was listed as either a "mistaken purchase – to be reimbursed" or a "personal expense – to be paid back."[7] The committee also paid $1,137 to the Center for Oral & Facial Surgery in San Diego in June 2015, listing the expense as a mistaken purchase to be reimbursed,[8] and in September gave $1,650 to the Christian Unified Schools, the schools Rep. Duncan's children attend, describing it as a personal expense to be paid back.[9]

---

[1] Duncan D. Hunter for Congress, FEC Form 1, Statement of Organization, Amended, Jan. 7, 2015, *available at* http://docquery.fec.gov/pdf/488/15970003488/15970003488.pdf.

[2] Duncan D. Hunter for Congress, FEC Form 3, 2015 April Quarterly Report, Apr. 15, 2015 at 6:17 p.m., *available at* http://docquery.fec.gov/pdf/890/15951164890/15951164890.pdf; http://www.astonkaanapalishoresresort.com.

[3] Duncan D. Hunter for Congress, FEC Form 3, 2015 April Quarterly Report, Apr. 15, 2015.

[4] Duncan D. Hunter for Congress, FEC Form 3, 2015 April Quarterly Report, Amended, Apr. 15, 2015 at 10:37 p.m., *available at* http://docquery.fec.gov/pdf/889/15970362889/15970362889.pdf.

[5] Duncan D. Hunter for Congress, FEC Form 3, 2015 July Quarterly Report, July 15, 2015, *available at* http://docquery.fec.gov/pdf/333/201507159000172333/201507159000172333.pdf.

[6] Morgan Cook, FEC Questions Duncan Hunter's Video Game Charges, *San Diego Union-Tribune*, Apr. 5, 2016, *available at* http://www.sandiegouniontribune.com/news/2016/apr/05/hunter-video-games/; Duncan D. Hunter for Congress, FEC Form 3, 2015 October Quarterly Report, Oct. 15, 2015, *available at* http://docquery.fec.gov/pdf/512/201510159003083512/201510159003083512.pdf; Duncan D. Hunter for Congress, FEC Form 3, 2015 Year-End Report, Jan. 31, 2015, *available at* http://docquery.fec.gov/pdf/281/201601319005014281/201601319005014281.pdf.

[7] Duncan D. Hunter for Congress, FEC Form 3, 2015 October Quarterly Report, Oct. 15, 2015; Duncan D. Hunter for Congress, FEC Form 3, 2015 Year-End Report, Jan. 31, 2015.

[8] Duncan D. Hunter for Congress, FEC Form 3, 2015 October Quarterly Report, Oct. 15, 2015. The committee also received a $325 repayment from the oral surgeon in July 2015. *Id.*

[9] Duncan D. Hunter for Congress, FEC Form 3, 2015 Year-End Report, Jan. 31, 2015; Tom Jones and R. Stickney, Congressman Questioned About Campaign Funds Used on Video Games, Child's School, *7 San Diego*, Apr. 6, 2016, *available at* http://www.nbcsandiego.com/news/politics/Congressman-Campaign-Funds-Credit-Card-Video-Games-374816191.html; Olivia Nuzzi, Trump Co-Chair Paid for Kids' School With Campaign Cash, *Daily Beast*,

Noting the personal disbursements on the Hunter Committee's 2015 Year-End report, the FEC's Reports Analysis Division sent the committee a request for additional information about the charges in April 2016 and instructing it to seek reimbursement for any "personal use" spending.[10] In response to the letter and press coverage of the questioned charges, the Hunter Committee amended several earlier reports to disclose additional personal and mistaken disbursements. A note attached to the amended 2015 July Quarterly asserted there had been additional "mistaken" charges to Steam Games and two other video game companies, Blizzard.com and Origin.com, but it did not disclose how much was spent.[11] The committee also amended the 2015 October Quarterly report to disclose that another $3,500 disbursement to Christian Unified Schools was mistaken.[12] A note attached to the amended 2015 Year-End report also asserted that the report provided "clarifying" information about the video game purchases, "specifically a large number of those items were fraudulent charges that have been challenged and refunded."[13]

Along with the amended 2015 reports, the Hunter Committee filed its 2016 April Quarterly report. This report also disclosed numerous "mistaken" charges or transactions.[14] These included a $1,200 disbursement to a garage door repair company, $360 paid to a surf and skate shop, and more than $160 spent at Barnes & Noble.[15] The committee also reported that $2,023 disbursed to Margaret Hunter was mistaken and had been refunded.[16]

According to Rep. Hunter's spokesman, just before the amendments and new report were filed, Rep. Hunter reimbursed his campaign committee nearly $12,000 for charges the committee described as mistaken and personal expenses.[17]

Rep. Hunter and his representatives have provided a series of explanations for the improper spending. According to his spokesperson, at least some of the video games charges resulted from Rep. Hunter's son taking the wrong credit card from the congressman's wallet to

---

Apr. 6, 2016, *available at* http://www.thedailybeast.com/articles/2016/04/06/trump-co-chair-paid-for-kids-tuition-with-campaign-cash.html.

[10] Letter from Bradley Matheson to Duncan D. Hunter for Congress, Apr. 4, 2016, *available at* http://docquery.fec.gov/pdf/712/201604040300040712/201604040300040712.pdf.

[11] Duncan D. Hunter for Congress, FEC Form 3, 2015 July Quarterly Report, Amended, Apr. 15, 2016, *available at* http://docquery.fec.gov/pdf/206/201604159012566206/201604159012566206.pdf.

[12] Duncan D. Hunter for Congress, FEC Form 3, 2015 October Quarterly Report, Amended, Apr. 15, 2016, *available at* http://docquery.fec.gov/pdf/723/201604169012567723/201604169012567723.pdf.

[13] Duncan D. Hunter for Congress, FEC Form 3, 2015 Year-End Report, Amended, Apr. 15, 2016, *available at* http://docquery.fec.gov/pdf/096/201604159012567096/201604159012567096.pdf.

[14] Duncan D. Hunter for Congress, FEC Form 3, 2016 April Quarterly Report, Apr. 15, 2016, *available at* http://docquery.fec.gov/pdf/269/201604159012567269/201604159012567269.pdf.

[15] *Id.*; Morgan Cook, Hunter Repaid Funds Spent on Surf Shop, Garage Door, *San Diego Union-Tribune*, Apr. 19, 2016, *available at* http://www.sandiegouniontribune.com/news/2016/apr/19/hunter-garage-door/.

[16] *Id.*; Duncan D. Hunter for Congress, FEC Form 3, 2016 April Quarterly Report, Apr. 15, 2016.

[17] Morgan Cook, Hunter Repays $12,000 to Campaign, *San Diego Union-Tribune*, Apr. 11, 2016, *available at* http://www.sandiegouniontribune.com/news/2016/apr/11/hunter-repay/.

set up a subscription on a gaming account.[18] Rep. Hunter's spokesman added that several unauthorized charges resulted after he tried to close to the account.[19]

Rep. Hunter's spokesman also provided changing explanations for the $1,650 the committee paid in September 2015 to his children's school. The spokesman first claimed the disbursement was a legal contribution to the school, but the campaign's treasurer mistakenly thought it was tuition and thus it needed to be paid back.[20] However, after a school administrative assistant said the school had not received any contributions from Rep. Hunter or his campaign, the spokesman asserted the contribution was meant for the school's sports fund, but was accidentally diverted to the "general fund" for Rep. Hunter that includes tuition payments.[21] As a result, the payment did go to his children's tuition and needed to be paid back or transferred to a different account.[22] The spokesman later claimed two other charges paid to the school also were intended as contributions but were mistakenly applied as tuition.[23] Only one payment of $3,500, however, appears to have been repaid.[24]

The disbursements to the Hawaii beach resort were supposed to cover Rep. Hunter's lodging at a planned campaign event, his spokesman said.[25] When the campaign event was cancelled, the trip became personal travel, according to the spokesman.[26] Rep. Hunter tried to get charges switched to his personal credit card, but could not, so he reimbursed the campaign.[27]

No explanation has been provided to date for the disbursement to the oral surgeon. Rep. Hunter told a reporter he did know how the oral surgery came to be paid for with his campaign funds, and suggested he did not know who in his family received the oral surgery.[28]

Rep. Hunter's spokesman also said Rep. Hunter, in an abundance of caution, repaid several expenses that might appear personal but were not.[29] The disbursements to Mrs. Hunter were for petty cash to make campaign purchases, the spokesman claimed, and the payment to the surf and skate shop was for items for a community event.[30] The spokesman also said the garage door repair expense was related to an incident that occurred at Rep. Hunter's home, where his campaign is located, "as a result of moving campaign materials on campaign time."[31]

---

[18] Jones and Stickney, *7 San Diego*, Apr. 6, 2016; Nuzzi, *Daily Beast*, Apr. 6, 2016.
[19] *Id.*; Cook, *San Diego Union-Tribune*, Apr. 5, 2016.
[20] Nuzzi, *Daily Beast*, Apr. 6, 2016.
[21] *Id.*
[22] *Id.*; Duncan D. Hunter for Congress, FEC Form 3, 2015 Year-End Report, Amended, Apr. 15, 2016.
[23] Cook, *San Diego Union-Tribune*, Apr. 11, 2016.
[24] Duncan D. Hunter for Congress, FEC Form 3, 2015 October Quarterly Report, Amended, Apr. 15, 2016.
[25] Cook, *San Diego Union-Tribune*, Apr. 11, 2016.
[26] *Id.*
[27] *Id.*
[28] Rep. Duncan Hunter Under Fire Over Spending, *ABC 10News*, Apr. 7, 2016, *available at* https://www.youtube.com/watch?v=xnwjzaUhRpc.
[29] Cook, *San Diego Union-Tribune*, Apr. 19, 2016.
[30] *Id.*
[31] *Id.*

Overall, the Hunter Committee acknowledged it made thousands of dollars in personal and mistaken expenditures that needed to be paid back, and some of its explanations are open to doubt. While the committee reported those disbursements as improper – though some only after the FEC sent its request for additional information and the reports received press attention – the problems with accounting and financial controls highlight the need for a further investigation.

*Potential Additional Disbursements for Personal Use*

Despite the Hunter Committee's attempts to address disbursements it identified as unrelated to campaign expenses, a review of the committee's FEC reports reveals several additional charges that may have been for personal use, further demonstrating the need for an investigation.

Most notably, the committee's 2016 April Quarterly report disclosed thousands of dollars of disbursements related to travel in tourist areas of Italy over the 2015 Thanksgiving holiday. On November 25, 2015, the Hunter Committee paid $213 for "food/beverages" at the Ristorante Il Giubileo in Rome, and two days later paid $248 for "travel tickets" at Rome's Termini Station.[32] That same say, November 27, the committee disbursed $683 to the Hotel L'Ancora in Positano – a resort town on the Amalfi Coast – for "catering and venue," and $294 to the Il Ritrovo Restaurant, also in Positano, for "food/beverages."[33] On November 30, the Hunter Committee spent another $289 on train tickets, this time at Naples' central train station.[34] It also paid Expedia $645 that day for three separate charges described only as "travel."[35] Also on November 30, the committee made two disbursements totaling $145 for "food/beverages" at the Hotel San Gallo Palace in Florence, and another $169 for "travel" at the same hotel.[36]

The Hunter Committee also paid $216 for what it categorized as "food/beverages" to Gioielleria Manetti in Florence.[37] Gioielleria Manetti, however, is a jewelry store.[38]

During this period, the Hunter Committee made several other disbursements that appear related to travel. Between November 24 and December 1, the committee made 20 small payments to First Bankcard for bank fees that may have been foreign transaction fees.[39] On both November 23 and November 30, the Hunter Committee made several disbursements to United Airlines that suggest several people were traveling together. On November 30, for example, the committee made four separate $200 payments to United, which may have been for luggage fees

---

[32] Duncan D. Hunter for Congress, FEC Form 3, 2016 April Quarterly Report, Apr. 15, 2016.
[33] *Id.*
[34] *Id.*
[35] *Id.*; Duncan D. Hunter for Congress, FEC Form 3, 2015 Year-End Report, Amended, Apr. 15, 2016.
[36] Duncan D. Hunter for Congress, FEC Form 3, 2016 April Quarterly Report, Apr. 15, 2016.
[37] *Id.*
[38] *See* http://www.gioielleriamanetti.it/.
[39] Duncan D. Hunter for Congress, FEC Form 3, 2016 April Quarterly Report, Apr. 15, 2016.

or upgrades.[40] Similarly, on November 23, the committee made three $134 payments and one $129 payment to United.[41]

This spending, the timing of the trip over the Thanksgiving holiday, and photographs Rep. Hunter posted on his Facebook page suggest the trip was a family vacation.[42] None of these expenditures, however, has been identified as personal or mistaken.

Other payments by the Hunter Committee also raise questions about whether they were entirely for campaign purposes. As noted, the committee is operated out of Rep. Hunter's home.[43] Before May 2015, the committee had not made any expenditures for Internet or cable service since 2012. Starting that month, however, the Hunter Committee began paying Cox Communications between $277 and $368 every month for the rest of 2015 for "Internet services."[44] The amount of these charges suggest it is possible the committee paid for Internet service for both the campaign and for Rep. Hunter's personal use.

The Hunter Committee further made purchases in 2015 purportedly for contributions to local charitable organizations, including disbursements to Nordstrom, Macy's, Barnes & Noble, and Educational Outfitters, the company that supplies uniforms to Rep. Hunter's children's school.[45] While these disbursements may be legitimate, the committee has acknowledged other contributions to the school and purchases for community events were personal or mistaken.

The Hunter Committee made expenditures in 2015 that may have been for uses unrelated to Rep. Hunter's campaign, further suggesting an investigation is warranted.

*Reimbursements and Payments to Margaret Hunter*

Margaret Hunter is both Rep. Hunter's wife and his campaign manager.[46] As the Hunter Committee has admitted, some payments to her were "mistaken" and needed to be refunded.[47] The committee identified $2,023 in such payments.[48] However, between 2010 and 2016, Mrs.

---

[40] Duncan D. Hunter for Congress, FEC Form 3, 2015 Year-End Report, Amended, Apr. 15, 2016.
[41] Duncan D. Hunter for Congress, FEC Form 3, 2016 April Quarterly Report, Apr. 15, 2016.
[42] *See* Facebook page for Duncan Duane (identifying poster as "Representative CA-50 at United States Congress"), Nov. 26, 2015 post, *available at* https://www.facebook.com/photo.php?fbid=10207803271822583&set=a.3362050052887.154859.1318150197&type=3&theater; *id.*, Nov. 26, 2015 post, *available at* https://www.facebook.com/photo.php?fbid=10207803281302820&set=a.1585543521334.77432.1318150197&type=3&theater.
[43] Cook, *San Diego Union-Tribune*, Apr. 19, 2016.
[44] Duncan D. Hunter for Congress, FEC Form 3, 2015 Reports. Some of these charges are described as "utilities." No charges to Cox were made in January or February 2016, but the committee paid it $293 on March 9, 2016. Duncan D. Hunter for Congress, FEC Form 3, 2016 April Quarterly Report, Apr. 15, 2016.
[45] Duncan D. Hunter for Congress, FEC Form 3, 2015 Reports; http://sandiego.educationaloutfitters.com/find-my-school/christian-unified-schools/.
[46] Cook, *San Diego Union-Tribune*, Apr. 19, 2016.
[47] *Id.*
[48] *Id.*

Hunter was reimbursed approximately $14,000 by the committee for a variety of items.[49] The FEC should examine whether all of these were proper.

Mrs. Hunter also has been paid $116,000 by the Hunter Committee since 2010 for "campaign management services," "campaign consulting," and "salary."[50] The House Ethics Manual warns members to "exercise great care" in paying for services from family members, and directs members to FEC regulations on the issue.[51] Under those regulations, paying a family member a salary is a personal use of campaign funds unless that family member provides *bona fide* services to the campaign and the payment is a fair market value for those services.[52] The payments to Mrs. Hunter may have been for *bona fide* services at a fair market rate, but due to the other questions involving personal and mistaken expenses, any investigation should examine these payments as well.

## Potential Violations

*Personal Use of Campaign Funds – House Rule 23*

House Rule 23, clause 6 prohibits members from converting campaign funds to personal use beyond "reimbursement for legitimate and verifiable campaign expenditures," prohibits the expenditure of funds from campaign accounts "that are not attributable to bona fide campaign or political purposes," and requires members to keep campaign funds separate from personal funds.[53]

The House Ethics Committee has interpreted this provision narrowly to allow campaign funds to be spent only in connection with *bona fide* campaign purposes.[54] A strict construction of this provision is necessary to prevent

> a potentially wide range of abuse . . . [that] could result in situations where campaign moneys were expended for personal enjoyment, entertainment, or economic well-being of an individual without any clear nexus that the funds so expended achieved any political benefit.[55]

With respect to travel expenses, House rules limit the use of campaign funds "to pay travel expenses when the **primary purpose** of the trip is activity that serves a bona fide

---

[49] Duncan D. Hunter for Congress, FEC Form 3, 2010-2016 Reports.
[50] *Id.*
[51] House Comm. on Standards of Official Conduct, House Ethics Manual, at 153, 167, 171 & n.97 (110th Cong., 2d Sess., 2008 ed.).
[52] 11 C.F.R. § 113.1(g)(1)(i)(H). *See also* FEC Advisory Opinion 2001-10 (permitting Rep. Jesse Jackson, Jr. (D-IL) to hire his wife as a consultant as long as she entered a contract to provide bona fide services at a fair market rate).
[53] House Rule 23, cl. 6; House Ethics Manual, at 163.
[54] *See generally id.* at 163-165.
[55] *Id.* at 164.

campaign or political purpose."[56] Determining the "primary purpose" of a trip "must be made in a **reasonable** manner, taking into account all of the activities in which the Member intends to engage during the course of the trip."[57] If the primary purpose of a trip is personal or recreational but involves some campaign activity, campaign funds may not be used to pay for transportation costs, and only may be used to pay the additional meal or lodging expenses from the campaign activity.[58] In addition, the use of campaign funds to pay for any meal when the only individuals present are a member and his or her friends or family "inherently raises concerns of conversion of campaign funds to personal use."[59] To verify that such meals are, in fact, legitimate campaign expenses, the House Ethics Committee has stated that "the maintenance of specific, written records is essential" and when "frequent or extensive" the maintenance of such records is "paramount."[60]

The House Ethics Manual also warns that "under these rules, a Member . . . must take reasonable steps to ensure that any outside organization over which he or she exercises control . . . operates in compliance with applicable law."[61] When a member controls a political organization and has notice of a campaign violation or later ratifies the conduct of the organization, those actions can be imputed to the member.[62]

The Hunter Committee already has admitted that thousands of dollars in 2015 disbursements were for personal use. Even if these payments have been reimbursed or refunded, the spending still was not for legitimate and verifiable campaign expenditures and not attributable to bona fide campaign or political purposes.

Other expenditures not identified or reimbursed by the Hunter Committee also do not appear to be campaign-related. The committee spent thousands of dollars in travel-related costs to tourist areas of Italy over Thanksgiving in 2015, and additional funds on airline costs that may be related to the trip. It does not appear likely that the primary purpose of the trip was for a *bona fide* campaign or political purpose. Rather, it appears the trip was a family vacation. In that case, any transportation costs could not have been paid for by the Hunter Committee under the rules. Furthermore, many of those expenditures were for food and catering at restaurants and hotels. If those meals were not legitimate campaign expenses – verifiable through written records – they may have been an improper personal use of campaign funds.

---

[56] *Id.* at 157 (emphasis in original).
[57] *Id.* at 168 (emphasis in original).
[58] *Id.* at 168-69.
[59] House Ethics Manual, at 169
[60] *Id.* at 168.
[61] *Id.* at 123; *see also* Office of Congressional Ethics, *In the Matter of Representative Michele Bachmann*, Review No. 13-1274, May 31, 2013.
[62] House Comm. on Standards of Official Conduct, *In the Matter of Representatives Tony Coehlo, Edward Feighan and Mike Andrews*, H. Rep. No. 99-277, 99th Cong., 1st Sess. 4, 9 & n.4 (1985).

In addition, one of the payments in Italy was to a jewelry store in Florence, purportedly for "food/beverages." It is unlikely this payment was legitimately campaign-related or that there are written records to verify that it was.

The Hunter Committee also suddenly began paying hundreds of dollars each month for Internet service in May 2015. While this may have been for the committee's Internet service, the OCE should investigate to determine if it also paid for the service used by Rep. Hunter and his family.

OCE also should examine the $14,000 in reimbursements to Mrs. Hunter and the $116,000 in payments to her. The Hunter Committee already has acknowledged some of its reimbursements to her were mistaken. An investigation should review the other reimbursements to her to ensure they were proper and assess if the payments were for *bona fide* campaign services at a fair market rate.

Finally, OCE should examine the Hunter Committee's other disbursements to determine if they were campaign-related. As the committee eventually acknowledged, several of its disbursements to Rep. Hunter's children's school were credited to their tuition. It remains unclear, however, if the committee has properly classified all of the payments to and related to his children's school. Other questionable disbursements supposedly were made for campaign purposes, including payments to Nordstrom, Macy's, Barnes & Noble, a garage door repair company, an oral surgeon, and a surf and skate shop.

Accordingly, Rep. Hunter appears to have violated House rules, and OCE should conduct a further investigation into his campaign spending.

*Personal Use of Campaign Funds – the FECA and FEC Regulations*

The FECA and FEC regulations separately prohibit a candidate for federal office from using campaign funds to pay the personal obligations of the candidate. The FECA states that "a contribution or donation . . . shall not be converted by any person to personal use,"[63] specifying that "a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office."[64]

The statute and regulations specify several types of purchases that constitute personal use. Payments for "a vacation or other noncampaign-related trip" are a personal use,[65] and the FEC evaluates spending on other travel on a case-by-case basis.[66] Salary payments to a member

---

[63] 52 U.S.C. § 30114(b)(1).
[64] 52 U.S.C. § 30114(b)(2).
[65] 52 U.S.C. § 30114(b)(2)(E); 11 C.F.R. § 113.1(g)(1)(i)(J).
[66] 11 C.F.R. § 113.1(g)(1)(ii)(C).

of the candidate's family, unless the family member is providing *bona fide* services to the campaign, also are specified as a personal use.[67] In addition, even if a family member does provide *bona fide* services to the campaign, any salary payment in excess of the fair market value of the services provided is a personal use.[68] Tuition payments, other than those for used to train campaign staff, also are listed as a personal use.[69]

The types of expenditures that constitute personal use, however, are not limited to those identified in the statute and regulations.[70] Any expenditures that would exist irrespective of the candidate's campaign or duties as a federal officeholder are treated as personal. As a result, spending on items unrelated to campaign activity would represent improper personal use of campaign funds.

The Hunter Committee already has admitted that thousands of dollars in 2015 disbursements were for personal use. In addition, as described above, other expenditures not identified or reimbursed by the Hunter Committee also do not appear to be campaign-related. These include disbursements for costs related to the Italy trip, payments and reimbursements to Mrs. Hunter, payments to and related to Rep. Hunter's children's school, and disbursements to Nordstrom, Macy's, Barnes & Noble, a garage door repair company, an oral surgeon, and a surf and skate shop.

### *Conduct Not Reflecting Creditably on the House*

House Rule 23, clause 1 also requires all members of the House to conduct themselves "at all times in a manner that reflects creditably on the House."[71] This ethics standard is considered to be "the most comprehensive provision" of the code.[72] When this section was first adopted, the Select Committee on Standards of Official Conduct noted it was included within the Code to deal with "flagrant" violations of the law that reflect on "Congress as a whole," which might otherwise go unpunished.[73] This rule has been relied on by the committee in numerous prior cases in which the committee found unethical conduct including: the failure to report campaign contributions,[74] making false statements to the committee,[75] criminal convictions for

---

[67] 11 C.F.R. § 113.1(g)(1)(i)(H).
[68] *Id.*
[69] 52 U.S.C. § 30114(b)(2)(G); 11 C.F.R. § 113.1(g)(1)(i)(D).
[70] 11 C.F.R. § 113.1(g)(1)(i) ("personal use includes but is not limited to" the listed uses").
[71] Rule 23, cl. 1.
[72] House Ethics Manual, at 12.
[73] House Comm. on Standards of Official Conduct, *Report Under the Authority of H. Res. 418*, H. Rep. No. 1176, 90th Cong., 2d Sess. 17 (1968).
[74] House Comm. on Standards of Official Conduct, *In the Matter of Representative John J. McFall*, H. Rep. No. 95-1742, 95th Cong., 2d Sess. 2-3 (1978) (Count 1); *In the Matter of Representative Edward R. Roybal*, H. Rep. No. 95-1743, 95th Cong., 2d Sess. 2-3 (1978).
[75] House Comm. on Standards of Official Conduct, *In the Matter of Representative Charles H. Wilson (of California)*, H. Rep. No. 95-1741, 95th Cong., 2d Sess. 4-5 (1978); H. Rep. No. 95-1743 (Counts 3-4).

bribery,[76] accepting illegal gratuities,[77] and accepting gifts from persons with interest in legislation in violation of the gift rule.[78]

Rep. Hunter's campaign has admitted spending thousands of dollars in 2015 disbursements were for personal use, and other expenditures not identified or reimbursed by the Hunter Committee also do not appear to be campaign-related. Accordingly, Rep. Hunter appears to have conducted himself in a matter that does not reflect creditably on the House.

### Conclusion

To ensure that the money raised for political campaigns is not misused, House rules and campaign finance law clearly forbids spending campaign funds on the personal expenses of a candidate or a candidate's family. The Hunter Committee already has admitted it did exactly that, making thousands of dollars in payments for expenditures unrelated to Rep. Hunter's campaign. A review of the committee's disclosure reports further indicates it may have made additional disbursements for personal expenses. The OCE should commence an immediate investigation and forward this matter to the House Ethics Committee for appropriate action.

I am aware that the False Statements Act, 18 U.S.C. § 1001, applies to information submitted to the Office of Congressional Ethics.

Sincerely,

Noah Bookbinder
Executive Director
Citizens for Responsibility and Ethics in Washington
455 Massachusetts Ave., NW, Sixth Floor
Washington, D.C. 20001
(202) 408-5565 (phone)
(202) 588-5020 (fax)

---

[76] House Comm. on Standards of Official Conduct, *In the Matter of Representative Michael J. Myers*, H. Rep. No. 96-1387, 96th Cong., 2d Sess. 2, 5 (1980); *see* 126 Cong. Rec. 28953-78 (Oct. 2, 1980) (debate and vote of expulsion); *In the Matter of Representative John W. Jenrette, Jr.*, H. Rep. No. 96-1537, 96th Cong., 2d Sess. 4 (1980) (member resigned); *In the Matter of Representative Raymond F. Lederer*, H. Rep. No. 97-110, 97th Cong., 1st Sess. 4, 16-17 (1981) (member resigned after Committee recommended expulsion). In another case, the Committee issued a Statement of Alleged Violation concerning bribery and perjury, but took no further action when the member resigned (*In the Matter of Representative Daniel J. Flood*, H. Rep. No. 96-856, 96th Cong., 2d Sess. 4-16, 125-126 (1980)).

[77] House Comm. on Standards of Official Conduct, *In the Matter of Representative Mario Biaggi*, H. Rep. No. 100-506, 100th Cong., 2d Sess. 7, 9 (1988) (member resigned while expulsion resolution was pending).

[78] House Comm. on Standards of Official Conduct, *In the Matter of Representative Charles H. Wilson (of California)*, H. Rep. No. 96-930, 96th Cong. 2d Sess. 4-5 (1980); *see* 126 Cong. Rec. 13801-20 (June 10, 1980) (debate and vote of censure).